**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

COMPUTER & COMMUNICATIONS
INDUSTRY ASSOCIATION, and
NETCHOICE, LLC,

    *Plaintiffs,*

v.                                                                      Case No. 4:24-cv-00438-MW-MAF

ASHLEY BROOKE MOODY, in her
official capacity as Attorney General of
the State of Florida,

    *Defendant.*

_____/

## JOINT REPORT OF RULE 26(f) CONFERENCE

1.      The following persons participated in a Rule 26(f) conference on December 13, 2024, via Microsoft Teams:  James Xi, Kevin Wynosky, Doug Kilby, and Abby Corbett for the Plaintiffs, and Christine Lamia and James Waczewski for Defendant. The following persons participated in a follow up Rule 26(f) conference on December 16, 2024, via Microsoft Teams: James Xi, Kevin Wynosky, and Abby Corbett for the Plaintiffs, and Christine Lamia, James Waczewski, and Anita Patel for Defendant.

2.      **Initial Disclosures.**   Earlier today (January 10, 2025), the parties exchanged initial disclosures as required by Rule 26(a)(1).

**3.** **Discovery Plan.**

**(a)** The parties do not agree about the topics on which discovery will be needed. Their respective positions are set forth below.

**Plaintiffs' Position:**

Plaintiffs maintain that discovery is not necessary in this litigation, as Plaintiffs' claims raise pure questions of law that may be resolved based on facts of which the Court may take judicial notice; the essential facts are widely known and not open to reasonable dispute.

Contrary to Florida's assertion, this case is not analogous to *Moody v. NetChoice*, 603 U.S. 707 (2024). That case involves the constitutionality of Florida Senate Bill 7072, which imposes a slew of requirements that commandeer how "social media platforms" exercise editorial discretion over what third-party content to disseminate (or not disseminate) over their services. Whether S.B.7072 violates the First Amendment on its face turns in part on whether the editorial judgments of the websites covered by the law are "expressive." The Supreme Court explained that when websites like YouTube and Facebook "use their Standards and Guidelines to decide which third-party content those feeds will display, or how the display will be ordered and organized, they are making expressive choices" that "receive First Amendment protection." *Id*. at 740. Thus, when laws like S.B.7072 are applied "to prevent Facebook (or YouTube) from using its content-moderation standards to remove, alter,

organize, prioritize, or disclaim posts in its News Feed (or homepage)," they "prevent[] exactly the kind of editorial judgments this Court has previously held to receive First Amendment protection." *Id.* at 718.

The Court ultimately remanded *Moody*, however, because the Eleventh Circuit did not properly consider "the facial nature of NetChoice's challenge." *Id.* at 717. The Court explained that the Eleventh Circuit "mainly addressed what the parties had focused on" in their briefing and arguments below, i.e., the laws' application to the "curated feeds offered by the largest and most paradigmatic social-media platforms"— such as Facebook and YouTube. *Id.* at 717-18. But the Court expressed concern that "the law[] might apply to, and differently affect, other kinds of websites and apps." *Id.* at 718. And in "a facial challenge, that could well matter," because "the question in such a case is whether a law's unconstitutional applications are substantial compared to its constitutional ones." *Id.* The Court was not certain whether there may be "a sphere of other applications—and constitutional ones—that would prevent the laws' facial invalidation." *Id.* at 726. Because those questions were not the focus of the proceedings below, the Court vacated the Eleventh Circuit's decision and remanded the case for consideration of those issues.

*Moody* is not like this case. Unlike in *Moody*, where the plaintiffs' facial challenge turned on whether the covered websites' decisions about what third-party content to disseminate is expressive, there can be no reasonable dispute that HB3

restricts First Amendment activity in *all* its applications.  The question is not how HB3 impacts a website's editorial discretion, but rather whether HB3 restricts access to speech.  The question is not close:  HB3 on its face restricts minors from accessing "social media platforms," which it defines as "an online forum, website, or application" that "[a]llows users to upload content or view the content or activity of other users"—*i.e.*, a forum, website, or application in which users *engage in speech*. *See Packingham v. N. Carolina*, 582 U.S. 98 (2017).  And whether HB3's restrictions are narrowly tailored to serve Florida's asserted interests is a legal question that can be answered without discovery.  *See FF Cosms. FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1297 (11th Cir. 2017); *Harris v. Mexican Specialty Foods, Inc.*, 564 F.3d 1301, 1308 (11th Cir. 2009).  Even assuming the state's concerns about "social media platforms" are real, rather than hypothetical, HB3 is not even close to narrowly tailored to achieve the state's interests.

In light of this Court's decision to authorize discovery, however, Plaintiffs intend to seek discovery on the following issues, focusing on the terms, text, and legislative purpose of HB3:

- What governmental interest(s) does the State of Florida assert that HB3 furthers?

- What is the state's basis for contending that HB3 furthers these asserted interests?

4

- What, if any, alternative ways of furthering these asserted interests has the state considered?  To the extent that the state believes less-speech-restrictive alternatives would not adequately further its asserted interests, what is the basis for that conclusion?

- Is the state aware of existing tools that allow parents to control and monitor their children's usage of so-called "social media platforms"?  If so, what is the state's basis (if any) for concluding that those existing tools cannot adequately protect its asserted interests?

- Does the state post content on "social media platforms"?  If so, how does the state determine what content to post on "social media platforms"?  What steps (if any) does the state take to limit who can view the content it posts?

- Does the state believe that HB3 will restrict adults' access to "social media platforms"?  If not, what (if anything) is the basis for that belief?

- What research, if any, did the state rely on in formulating HB3's restrictions on minors' access to "social media platforms"?

- Why did the state adopt HB3's definition of "social media platform"? What, if any, research supports restricting access to online services that meet HB3's definition of "social media platform" (but not other websites that offer similar, if not identical, content)?

- Why did the state adopt the list of so-called "addictive features" set forth in

Fla. Stat. §501.1736(1)(e)(4)?  What research, if any, supports the state's decision to restrict access to online services that have one or more of those features?

- What was the state's process for developing regulations to implement HB3?

- How does the state intend to determine which companies are subject to HB3?

- What, if any, state funds have been allocated for the implementation and enforcement of HB3?

**Defendant's Position:**

It is necessary to conduct considerable discovery to ensure that the record is not "underdeveloped" and "incomplete" as it was in *Moody v. NetChoice*, 603 U.S. 707, 726, 734 (2024).  Plaintiffs' sweeping facial and as-applied First Amendment claims, for example, require this Court to determine all the platforms regulated by Section 501.1736 and then "ask[]" whether each application of the law to a particular platform "intru[des] on [the] protected" expression of children and adults. *Id.* at 724–25. That requires an examination of individual platforms' operations and of their users' circumstances. *See id.*

Discovery will be needed on at least these subjects:

- Standing

- Application of Section 1 of HB3 to Plaintiffs' members

6

- Burden or harm to Plaintiffs' members to comply with Section 1 of HB3

- Platforms' use of accounts and other unique identifiers

- Platforms' parental controls

- Children's use of and access to platforms

- Existing compliance with similar laws (COPPA, laws in other countries)

- The degree to which platforms already use age verification

- Details on how HB3 and related regulations affect each of Plaintiffs' members.

Defendant is filing a motion to dismiss on January 13, 2025, which could result in an amendment of the complaint. Because the pleadings have not yet closed, additional subjects may be identified based on changes to the allegations in the pleadings and as discovery develops.

**(b)** Consistent with this Court's initial scheduling order, Dkt.32, discovery has already commenced, and the current deadline for completing discovery is March 14, 2025. By way of a summary:

- On November 26, 2024, Defendant served Plaintiffs with interrogatories, requests for production of documents, and requests for admission. *See* Dkt.39 at 2. Plaintiffs will respond to the interrogatories and requests for admissions on January 10, 2025, and will respond to the requests for production on or before January 16, 2025.

7

- Between December 10 and December 19, 2024, Defendant deposed each of the four individuals who provided a declaration in support of Plaintiffs' motion for preliminary injunction—namely, Bartlett Cleland, David Boyle, Alexandra Veitch, and Matthew Schruers. *See* Dkt.39 at 2.

- On December 23, 2024, Plaintiffs served Defendant with interrogatories, requests for production of documents, and requests for admission. Defendant's deadline to respond to the Request for Admissions and Interrogatories is February 6, 2025, and the deadline to respond to the Request for Production is February 12, 2025.

- Plaintiffs have noticed the depositions of each of Defendant's intended declarants—namely, Adam Alter, Tony Allen, and Dr. Jean M. Twenge—for January 23, 2025 through January 29, 2025. *See* Dkt.39 at 2.

The parties do not agree on the timing and sequencing of further discovery. Their respective positions are set forth below.

**Plaintiffs' Position:**

Plaintiffs respectfully ask the Court to stay merits discovery pending the resolution of their motion for preliminary injunction, including any appeal(s) therefrom.

"First Amendment [s]tandards 'must entail minimal if any discovery, to allow parties to resolve disputes quickly without chilling speech through the threat of burdensome litigation.'" *NetChoice, LLC v. Griffin*, 2024 WL 1262476, at *4 (W.D. Ark. Mar. 24, 2024) (quoting *Fed. Election Comm'n v. Wisc. Right To Life, Inc.*, 551 U.S. 449, 469 (2007) (controlling plurality op. of Roberts, C.J.)).  Here, Defendant has already been afforded a total of 20 hours to depose the four individuals who filed declarations in support of Plaintiffs' motion for preliminary injunction, during which Defendant had "great latitude" to explore a wide-ranging list of 27 topics.  *See* Dkt.35 at 2; Dkt.34 at 4-45.  These depositions gave Defendant an ample opportunity to probe the factual assertions underlying Plaintiffs' claims (as well as many other topics with little, if any, relevance to the legal issues facing this Court).

In addition to these depositions, Defendant has pressed forward with a slew of highly burdensome written discovery requests.  For example, Defendant has requested "[a]ll documents" generated by CCIA, NetChoice or *any* of the fifty entities that collectively make up their membership—including large companies such as Amazon, Apple, eBay, Google, and Meta—"relating to the need to develop" tools that allow parents to supervise their children's online activities.  Def.'s First RFPs to CCIA, ¶9; Def.'s First RFPs to NetChoice, ¶9.  Defendant has likewise requested "[a]ll documents" evidencing *any* CCIA or NetChoice members' "policies and practices to protect minors," *id.* ¶11—even though many CCIA and NetChoice members obviously

are not subject to HB3, and several of them do not even operate in Florida.  On top of that, Defendant has propounded unduly broad interrogatories requesting (for example) a description of "all means" of "open[ing] an account" or "creating a profile" on every "website or application" offered by each company that is a CCIA or NetChoice member; a description of "what method" each of these websites or applications uses to assign "a unique identifier" to its users; and the names of any individual who "drafted" or "developed" any "polic[y]" or "practice[] to protect minors" for Amazon, Apple, eBay, Google, Meta, etc. at any time over the past 11 years.  Def.'s First Interrogatories to CCIA, ¶¶2, 9-11.

Allowing Defendant to forge ahead with such extensive, burdensome discovery during the relatively short time allotted to adjudicate Plaintiffs' motion for preliminary injunction—the hearing is February 28, 2025—would further chill constitutionally protected speech, essentially punishing CCIA and NetChoice members for having the temerity to assert their First Amendment rights.  *See, e.g.*, *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 702 (11th Cir. 2016) (recognizing that litigation costs may burden free speech); *Dorsey v. Nat'l Enquirer, Inc.*, 973 F.2d 1431, 1435 (9th Cir. 1992) (same).  That harm alone provides ample justification for staying or at least limiting the scope of discovery.  *See Griffin*, 2024 WL 1262476, at *4 (denying Defendant's requests for discovery on NetChoice's "standing" to challenge law restricting minors' access to social media and existing parental controls, and authorizing only "minimal"

discovery to avoid undue "hardship to NetChoice's members").

The interests of judicial and litigant efficiency likewise counsel in favor of staying discovery while Plaintiffs' motion for preliminary injunction is litigated. This Court's preliminary-injunction order (and a potential Eleventh Circuit decision reviewing that order) could substantially narrow the number of issues at play in this litigation, narrowing and focusing subsequent discovery, to the extent any is necessary at all. *See, e.g.*, *Beaulieu v. Bd. of Trs. of Univ. of W. Fla.*, 2007 WL 9734885, at *6 (N.D. Fla. July 18, 2007) ("A court has broad inherent power to stay discovery until preliminary issues can be settled which may be dispositive of some important aspect of the case.") (quoting *Feldman v. Flood*, 176 F.R.D. 651, 652 (M.D. Fla. 1997)); *Airbnb, Inc. v. City of New York*, 373 F. Supp. 3d 467, 477 (S.D.N.Y. 2019) (staying discovery pending resolution of preliminary-injunction motion because "[t]he [c]ourt's ruling as to preliminary relief" could "significantly inform the nature and scope of discovery"); *In re JPMorgan Precious Metals Spoofing Litig.*, 2019 WL 6648091, at *1 (S.D.N.Y. Nov. 19, 2019) ("[P]reliminary motions in this case may moot the need for the discovery that the plaintiffs presently seek."); *Riehm v. Engelking*, 2006 WL 2085404, at *2 (D. Minn. July 25, 2006) (similar).

Defendants err in attempting to portray this as a "fact-intensive case." As explained, this case bears little resemblance to *Moody*: No factual development is needed to resolve whether HB3 restricts speech in all its applications, because the

11

enactment does so on its face. And no factual development is needed to resolve whether HB3's restrictions on speech are narrowly tailored to serve Florida's asserted interests. But even setting that aside, this Court's resolution of the preliminary injunction motion may well clarify what discovery is needed at the merits stage of the case. *See Griffin*, 2024 WL 1262476, at *2-4 (allowing only minimal discovery at merits stage after resolving NetChoice's preliminary injunction motion). The most efficient approach is thus to stay merits discovery while Plaintiffs' preliminary-injunction motion is resolved. In all events, the period of merits discovery should remain relatively short—as contemplated by this Court's initial scheduling order, Dkt.32—to limit the risk of Defendant using discovery to chill speech. Moreover, Defendant should not be permitted to use a lengthy discovery period to conduct a fishing expedition in hopes of manufacturing a rationale for HB3. As the Supreme Court has explained, "Government 'justification[s]' for interfering with First Amendment rights 'must be genuine, not hypothesized or invented *post hoc* in response to litigation.' *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 543 (2022) (quoting *United States v. Virginia*, 518 U.S. 515, 533 (1996)). Accordingly, if the Court does not stay merits discovery pending resolution of Plaintiffs' motion for preliminary injunction, then Plaintiffs propose, in the alternative, the following schedule that incorporates a modest extension designed to accommodate the press of other business faced by counsel for both Plaintiffs and Defendant:

| Deadline or Event | Current | Proposed |
|---|---|---|
| Deadline for Discovery Requests | December 29, 2024 | January 18, 2025 |
| Plaintiffs' Expert Disclosures | January 14, 2025 | February 4, 2025 |
| Deadline for Motions to Compel | February 12, 2025 | March 5, 2025 |
| Defendant's Expert Disclosures | February 13, 2025 | March 6, 2025 |
| Close of Discovery | March 14, 2025 | Close of Fact Discovery: April 4, 2025<br><br>Close of Expert Discovery: April 18 |
| Rule 26(e) Supplementation | | April 7, 2025 |
| Dispositive Motions Filed | | Parties to propose a briefing schedule within 21 days either of close of discovery or of final resolution of the PI motion, whichever is later. |
| Responses to Dispositive Motions Filed | | |
| Replies to Dispositive Motions Filed | | |
| Hearing on Dispositive Motions | | |
| Rule 26(a)(3) Submittal of Witness lists, deposition designations and exhibit lists | | Parties to propose a schedule within 21 days of the Court's resolution of dispositive motions, if further proceedings remain necessary. |
| Scheduling hearing | | |
| Trial | | |

**Defendant's Position:**

Two months ago, this Court ordered the parties to commence discovery. DE32 at 1 ("The parties must begin discovery immediately."). Plaintiffs' belated request by way of a Rule 26(f) report—rather than a motion—to halt that order should be denied. A stay of discovery "is an extraordinary remedy that should not be granted as a matter

of course." *GRLPWR, LLC v. Rodriguez*, 2023 WL 11760558, at *1 (N.D. Fla. Aug. 4, 2023). And no basis exists for that extraordinary relief here.

First, even if the burdens of standard discovery practice could justify a stay, Plaintiffs mischaracterize Defendant's discovery requests. Defendant propounded 13 requests for production, 21 requests for admission, and 13 interrogatories. Many of the requests were propounded to obtain information regarding Plaintiffs' standing, which is relevant at all stages of the litigation. These requests were propounded only on Plaintiffs NetChoice and CCIA—not the "fifty entities that collectively make up their membership." *Supra* at 9. Defendants have not yet issued any third-party discovery to Plaintiffs' members. Third-party discovery will require subpoenas to companies in other states, so Defendant is attempting to gather information from Plaintiffs first to limit unnecessary disputes and expenses. Because Defendant's requests are directed at NetChoice and CCIA, they are not "punishing" their members or "chilling" their speech. *See supra* at 9–10. Defendant has a right to serve basic discovery on the trade associations suing them. The limited number of requests is hardly "highly burdensome." *Supra* at 9. Same for the preliminary-injunction depositions—which advanced efficiency by obviating the need for a preliminary-injunction hearing. To the extent Plaintiffs characterize Defendant's discovery requests as "unduly broad," that is a matter to be addressed through the normal process of discovery. It is standard practice to litigate the scope of discovery requests through meet-and-confers and

14

motions practice.

Second, Plaintiffs' requested stay would not achieve any judicial efficiencies. Plaintiffs made the same judicial-economy argument in *Moody v. NetChoice*, 603 U.S. 707 (2024), and the stay there undermined judicial economy. It delayed the litigation and caused duplication. After the preliminary-injunction litigation wound down, and the stay was lifted, the parties had to start the case anew. They had to hold a second 26(f) conference, draft a second Rule 26(f) report, and so on. As a result, despite more than three years passing since Plaintiffs' original complaint, the parties still have not completed discovery. *See* Scheduling Order, *NetChoice v. Moody*, No. 21-cv-220 (N.D. Fla.), ECF No. 177.

As in *Moody*, discovery is critical for this fact-intensive case. Plaintiffs chose to bring both facial and as-applied claims against a variety of statutory provisions. That decision "comes at a cost." *Moody*, 603 U.S. at 723. Assuming First Amendment scrutiny applies, Plaintiffs' First Amendment claims alone require a fact-intensive examination of all the applications of each challenged provision and how each application affects the rights of platform users. The Court will first have to determine the platforms that Section 501.1736 applies to, which depends on the specifics of each platform's operations. *See* § 501.1736(1)(e), Fla. Stat. Then the Court will have to examine the nature of each covered platform, assessing how applying each challenged provision to each platform affects users' First Amendment rights. *See Moody*, 603 U.S.

15

at 724–25, 744. That is a fact-intensive inquiry because "platforms are diverse." *Id.* at 2435 (Barrett, J., concurring). Platforms, for example, have different approaches to "accounts," DE1 ¶ 44, and "parental controls." DE1 ¶ 24. Some platforms might not provide accounts to any users, and others might provide accounts but still allow users to "access" their services without an account. *Supra* at 4.

To ensure that this litigation proceeds in a timely manner, discovery must continue because it will be a lengthy process that will likely require third-party discovery. It is apparent from the depositions of Plaintiffs' declarants that they do not know the specifics of their members' platforms or whether Section 1 of HB3 even applies to their members.

For instance, the deposition of General Counsel and Director of Strategic Initiatives of Plaintiff NetChoice, Bartlett Cleland, revealed that he does not know if any of "[his] members" even satisfy the criteria of section 501.1736(1)(e). Cleland, Tr. 157:18-159:4. CCIA's president and CEO, Matthew Schruers, similarly had little knowledge of CCIA's members' platforms. Schruers Tr. 89:10-132:6.

Discovery should proceed through the preliminary injunction phase. *See Moody*, 603 U.S. at 726, 734. Otherwise, Defendant will be prejudiced in her efforts to defend Florida's law against Plaintiffs' sweeping attack. *See id.* at 772–73 (Alito, J., concurring, joined by Thomas and Gorsuch, J.J.).

16

| Deadline or Event | Initial Scheduling Order | Proposed |
|---|---|---|
| Deadline for Motions to Compel | February 13, 2025 | May 30, 2025 |
| Plaintiffs' Expert Disclosures | January 14, 2025 | July 31, 2025 |
| Defendant's Expert Disclosures | February 13, 2025 | August 30, 2025 |
| Close of Discovery | March 14, 2025 | Close of *Fact* Discovery: June 30, 2025 Close of *Expert* Discovery: October 30, 2025 |
| Rule 26(e) Supplementation | | September 15, 2025 |
| Dispositive Motions Filed | | November 10, 2025 |
| Responses to Dispositive Motions Filed | | December 1, 2025 |
| Replies to Dispositive Motions Filed | | December 8, 2025 |
| Hearing on Dispositive Motions | | Second or third week of December 2025 |
| Rule 26(a)(3) Submittal of Witness lists, deposition designations and exhibit lists | | February 16, 2026 |
| Scheduling hearing | | Week of February 23, 2026 |
| Trial | | Mid-March 2026 (see paragraph 4 (j) below) |

**(c)** The parties agree that a response to an interrogatory shall be due 30 days after the interrogatory was served, unless the parties agree otherwise or the Court orders otherwise. The parties do not agree on the maximum number of interrogatories by each party to another party. Plaintiffs' position is that each "party may serve on any other party no more than 25 written interrogatories, including all discrete subparts." Fed. R. Civ. P. 33(a)(1); *accord* Dkt.32 at 8. Defendant asserts that

17

additional interrogatories will likely be necessary.  Defendant has already served 13 interrogatories and anticipates that it will need more than the remaining 12 interrogatories to complete written discovery, particularly if Plaintiffs object to the interrogatories or provide evasive answers. Therefore Defendant reserves the right to seek leave to serve additional interrogatories in excess of 25 as discovery progresses.

(d)    The parties agree that a response to a request for admission shall be due 30 days after the request for admission was served, unless the parties agree otherwise or the Court orders otherwise.  The parties do not agree on the maximum number of requests for admission by each party to another party.  Plaintiffs propose that, instead of allowing unlimited requests for admission under Rule 36, the Court should limit the number of requests for admission that each party may serve on any other party to 25.  Defendant's position is that the number of request for admissions shall be governed by Fed. R. Civ. P. 36.

(e)    The parties agree that, consistent with Rule 30(a)(2), the maximum number of depositions by each party shall be 10, but the parties do not agree on how that limit should be applied in this case.  Their respective positions are set forth below.

**Plaintiffs' Position:**

Plaintiffs' position is that, just as any interrogatories served during the pendency of preliminary-injunction proceedings should count toward each party's overall interrogatory limit under Rule 33, the depositions that have (or will) be taken

during the pendency of preliminary-injunction proceedings should count toward each party's overall deposition limit under Rule 30. That is all the more because Defendant's depositions of Plaintiffs' declarants have not been strictly confined to issues relevant only to the preliminary-injunction proceedings, but have rather explored broader topics relevant to the ultimate resolution of the case. In all events, consistent with Rule 30(a)(2)(A)(ii), Plaintiffs maintain that any fact witness who has already been deposed in this matter cannot be re-deposed without leave of court.

**Defendant's Position:**

It is Defendant's position that these depositions and any deposition taken for the purposes of the preliminary injunction, do not count towards this limit. The purpose of a deposition taken to oppose a motion for preliminary injunction is different from the purpose of a deposition taken in anticipation of trial. Because parties are not required to prove their entire case at the preliminary injunction stage, the evidence gathered by a deposition for that purpose is less complete. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Indeed, "findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits." *Id*. Therefore, Defendant is entitled to use the ten depositions made available by the Federal Rules of Civil Procedure for the purposes of discovery in anticipation of trial. Furthermore, Defendant anticipates that more than 10 depositions may be needed, including depositions of non-party members, and

19

therefore it reserves the right to seek leave to take additional depositions as discovery progresses.

(f)     The parties do not agree on limits on the length of depositions, in hours. Plaintiffs' position is that, consistent with the Court's prior order, Dkt.35 at 3, the parties should be limited to five hours per deposition.  Defendant's position is that the duration of depositions shall be seven hours as provided by Fed. R. Civ. P. 30.

(g)     The parties do not agree on dates for exchanging reports on expert witnesses.  Plaintiffs' position is that, if discovery is not stayed, Plaintiffs' expert disclosures should be due on February 4, 2025, and Defendant's expert disclosures should be due on March 6, 2025.  Defendant proposes that Plaintiffs' expert disclosures should be due on July 31, 2025, Defendant's expert disclosures should be due on August 30, 2025, and any supplementary disclosure by Plaintiffs shall be due on September 15, 2025.

(h)     The parties do not agree on dates for supplementation under Rule 26(a)(2).  Plaintiffs' position is that the deadline should be April 7, 2025.  Defendant's position is that the deadline to supplement 26(a)(2) disclosures is September 15, 2025.

4.     **Other Items.**  For clarity, the parties set forth their respective positions on other relevant items separately.

**Plaintiffs' position:**

Given the nature of this case, Plaintiffs believe that a settlement is highly

20

unlikely, and do not believe that alternative dispute resolution processes would be helpful in facilitating settlement.

Plaintiffs propose allowing the parties to amend a pleading or to join parties until 21 days after the resolution of Plaintiffs' motion for preliminary injunction (including all appeals). Similarly, Plaintiffs propose that the parties confer in good faith and submit one or more proposed schedules for briefing dispositive motions no later than 21 days after the close of discovery or 21 days after resolution of Plaintiffs' motion for preliminary injunction (including all appeals), whichever is later.

Finally, Plaintiffs do not believe it is advisable to set dates for trial, the pretrial conference, submission of Rule 26(a)(3) witness lists, designations of witnesses whose testimony will be presented by deposition, or exhibit lists at this time because it is unclear how long it will take to resolve Plaintiffs' motion for preliminary injunction through all potential appeal(s), as well as any subsequent dispositive motions. Plaintiffs propose that the parties confer in good faith and submit one or more proposed schedules no later than 21 days after the Court resolves any motions for summary judgment.

**Defendant's position:**

(a)    **A date if the parties ask to meet with the court before a scheduling order:** the week of February 20, 2026.

(b)    **Requested date for pretrial conference**: TBD.

(c)      **Final dates for Plaintiffs to amend pleadings or to join parties:**  Defendant

proposes 21days after ruling on Defendant's Motion to Dismiss.

(d)      **Final date for Defendant to amend pleadings or to join parties:**  TBD

based upon date for Plaintiffs.

(e)      **Final dates to file dispositive motions:**  Defendant proposes November 10,

2025, with responses due December 1, 2025, replies due December 8, 2025, and

hearing set second or third week of December 2025.

(f)      **Anticipated settlement:** Defendant does not anticipate the ability to settle this
case.

(g)      **Alternative dispute resolution:**  Defendant cannot identify any alternative

dispute resolution procedures that may enhance settlement prospects.

(h)      **Final Dates for submitting Rule 26(a)(3) witness lists, designations of**

**witnesses whose testimony will be presented by deposition and exhibit lists:**

Defendant proposes February 16, 2026.

(i)      **Final dates to file objections under Rule 26(a)(3):** within 14 days after

pretrial disclosures addressed in paragraph 4(h) above.

(j)      **Trial:** Defendant suggests that the trial should occur in mid- March 2026.  It is

difficult to assess length of trial until discovery is complete. The basis for proposing a

trial date later than 8 months from the date of filing of this case is due to the anticipated

extensive discovery needed from the Plaintiffs and third parties, and the need to utilize technical knowledge and expertise.

(k)    **Other matters:**  Defendant proposes fact discovery cut off June 30, 2025; expert discovery cut off October 30, 2025.

Respectfully submitted,

/s/ Douglas L. Kilby
Douglas L. Kilby
Florida Bar No. 73407
Hannah E. Murphy
Florida Bar No. 1032756
Abby Corbett
Florida Bar No. 31332
STEARNS WEAVER MILLER
WEISSLER ALHADEFF
& SITTERSON, P.A.
Highpoint Center
106 East College Avenue, Suite 700
Tallahassee, FL 32301
(850) 580-7200
dkilby@stearnsweaver.com

Paul D. Clement
Erin E. Murphy
James Y. Xi
Joseph J. DeMott
Kevin Wynosky
Mitchell K. Pallaki
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com
erin.murphy@clementmurphy.com
james.xi@clementmurphy.com
joseph.demott@clementmurphy.com
kevin.wynosky@clementmurphy.com
mitchell.pallaki@clementmurphy.com

*Counsel for Plaintiffs CCIA and
NetChoice, LLC*

ASHLEY MOODY
*Attorney General of Florida*

Christine E. Lamia
Counsel for Defendant

John M. Guard (FBN 374600)
*Chief Deputy Attorney General*
Henry C. Whitaker (FBN 1031175)
*Solicitor General*
Daniel W. Bell (FBN 1016188)
*Chief Deputy Solicitor General*
Kevin A. Golembiewski (FBN 1002339)
*Senior Deputy Solicitor General*
Darrick W. Monson (FBN 1041273)
*Assistant Solicitor General*
Anita J. Patel (FBN 0070214)
*Special Counsel*
Christine E. Lamia (FBN 745103)
*Special Counsel*
James Waczewski (FBN 0154989)
*Senior Assistant Attorney General*
Sara E. Spears (FBN 1054270)
*Assistant Attorney General*

Office of the Attorney General
PL-01 The Capitol
Tallahassee, FL 32399-1050
(850)414-3300
Anita. Patel@myfloridalegal.com

*Counsel for Defendant
Ashley Brooke Moody*

24

**CERTIFICATE OF SERVICE**

I hereby certify that on January 10, 2025, a copy of the foregoing was served

on all counsel of record through the Court's CM/ECF system.


Paul D. Clement
Erin E. Murphy
James Y. Xi
Joseph J. DeMott
Kevin Wynosky
Mitchell K. Pallaki
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com
erin.murphy@clementmurphy.com
james.xi@clementmurphy.com
joseph.demott@clementmurphy.com
kevin.wynosky@clementmurphy.com
mitchell.pallaki@clementmurphy.com

/s/ *Douglas L. Kilby*
Douglas L. Kilby
Florida Bar No. 73407
Hannah E. Murphy
Florida Bar No. 1032759
Abigail Corbett
Florida Bar No. 31332
Grace Mead
Florida Bar No. 49896
STEARNS WEAVER MILLER
WEISSLER ALHADEFF &
SITTERSON, P.A.
Highpoint Center
106 East College Avenue, Suite 700
Tallahassee, FL 32301
(850) 580-7200
dkilby@stearnsweaver.com
hmurphy@stearnsweaver.com
acorbett@stearnsweaver.com
gmead@stearnsweaver.com
boneal@stearnsweaver.com
lrussel@stearnsweaver.com
mperez@stearnsweaver.com

25