**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

COMPUTER & COMMUNICATIONS       )
INDUSTRY ASSOCIATION, et al.,   )
                                )
            Plaintiffs,         ) Case No: 4:24cv438
                                )
        v.                      ) Tallahassee, Florida
                                ) November 19, 2024
ASHLEY MOODY,                   )
                                ) 11:00 AM
            Defendant.          )
_____ )

**TRANSCRIPT OF TELEPHONIC PROCEEDINGS**
**BEFORE THE HONORABLE MARK E. WALKER**
**UNITED STATES CHIEF DISTRICT JUDGE**
**(Pages 1 through 22)**

APPEARANCES:

For the Plaintiffs:        Clement & Murphy PLLC
                           By:  JAMES XI
                                Attorney at Law
                                james.xi@clementmurphy.com
                           706 Duke Street
                           Alexandria, Virginia 22314

For the Defendant:         Florida Attorney General's Office
                           By:  JOHN M. GUARD
                                Attorney at Law
                                john.guard@myfloridalegal.com
                           PL-01 The Capitol
                           Tallahassee, Florida 32399

Court Reporter:            MEGAN A. HAGUE, RPR, FCRR, CSR
                           111 North Adams Street
                           Tallahassee, Florida 32301
                           megan.a.hague@gmail.com

*Proceedings reported by stenotype reporter.*
*Transcript produced by Computer-Aided Transcription.*

**P R O C E E D I N G S**

(Call to Order of the Court at 11:00 AM on Tuesday, November 19, 2024.)

THE COURT:  Good morning.  This is Judge Walker.  We are here in Case No. 4:24cv438.  We are here for a status conference.

Who's going to speak for the plaintiffs?

Hello?

MR. XI:  Morning, Your Honor.  This James Xi from Clement.

Can you hear me?

THE COURT:  I'm sorry.  You said James Lee?

MR. XI:  This is James Xi from Clement Murphy on behalf of CCIA and NetChoice.

THE COURT:  One moment, please.

(Pause in proceedings.)

THE COURT:  And, sir, could you spell your last name for the record for the benefit of the court reporter?

MR. XI:  It's X-i.  Just two letters, X, as in X-ray, and I.

THE COURT:  Thank you.

There's another James that filed a notice of appearance, ECF No. 20.  That's why -- you were coming in and out and that's why I wasn't sure.

So thank you.

And who's speaking for the defense?

MR. GUARD:  John Guard from the State of Florida for Ashley Moody.

THE COURT:  Welcome, sir.

I've got -- before we address the amended joint report, I've got a couple of questions for y'all.  The first question is -- I understand it's a different provision than the provision that's at issue in front of Judge Hinkle, but I also know it came back and there's briefing on motions to dismiss that deal with standing, associational standing, and so forth.

So, Mr. Guard, my question to you -- and I'm not asking you to tip your cards -- but you obviously know or have some idea, I would think, at this point some of the issues you are going to raise in your motion to dismiss.  And I'm trying to find out sort of what's the overlap going to be between the issues that are presented here and those that have recently been presented in front of Judge Hinkle.  I also know that, again, while it's a different provision, there may be terms and so forth that are going to have to be construed, so there may be some overlap there as well.

So the answer may be, Very little overlap, or, Judge, there's a substantial overlap.  But I am interested to know to what extent is there going to be an overlap in issues between this case and the case that's pending in front of Judge Hinkle?

MR. GUARD:  I think, Judge, there is going to be a

substantial amount of overlap on the standing-related issues that are raised in that motion to dismiss.  I expect that we are going to raise -- while I think they are going to be slightly different and the arguments are going to be slightly different because of the different provisions, I think the same kind of issues are going to be raised.

THE COURT:  As you may or may not know, in this district if we believe there's a substantial overlap, we often will reassign the case to the other judge.  I'm going to give you a chance to be heard.  You don't -- we are not taking a vote, but let you have a chance to be heard, and then I'll hear from counsel for the plaintiffs.

It just seems to me that -- obviously, part of the preliminary injunction is also going to be addressing standing.  So separate and apart from the motion to dismiss, if there's going to be a substantial overlap between the presentations -- we've got the same lawyers, the same law firm representing the plaintiffs in this case, and a substantial overlap in issues -- I'm hesitant to divide these cases up between Judge Hinkle and I.  It may not make any sense.

But what says you to that direct question, Mr. Guard?  And then I'll hear from plaintiffs' counsel.

MR. GUARD:  I think, Your Honor, the standing issue there is going to be overlap.  I think the laws are, obviously, very, very different.  And I think that the issues when you

actually get to the law probably deviate as far as analysis and other things.

So, you know, I think the standing question is where there is overlap, but I think the rest of the -- to the extent you get past standing, there will be -- I don't think there is a lot of overlap in discovery, overlap in some of the other things that we likely will be doing.

THE COURT:  I understand, Mr. Guard.

So bottom line, Judge, the overlap would be on some threshold questions, not on the merits, if you reach the merits?

MR. GUARD:  Yes, Your Honor.

THE COURT:  Okay.  And so what is your -- what is the position of the defense with respect to me keeping it or reassigning it?

And it may be, Judge, we take no position; Judge, we don't care; or, Judge, we have a preference.

MR. GUARD:  We take no position, Your Honor.

We are comfortable with either you or Judge Hinkle in your wisdom determining whether there's enough of an overlap to transfer it or not.  I mean, you know, I don't think we -- you know, you all can determine whether you think that would be more efficient or not for the district.

THE COURT:  All right.  And let me then turn to plaintiffs' counsel.

Same question to you.

MR. XI:  So I think we agree with the State that -- on the merits these cases are going to be quite different.  The issues in the case in front of Judge Hinkle are about whether -- you know, when Facebook, YouTube, et cetera, exercise editorial discretion, content moderation, whether, you know, that is protected First Amendment activity and whether SB 7072 overrides that, that protected First Amendment activity here, and that age verification lawsuit, it's very different.

There's no question that, you know -- you know, that HB 3 restricts access to speech.  And even though these are both First Amendment cases, we think the substantive issues are very different.  And, you know, we obviously haven't seen the State's arguments for standing on this case, so I'll defer to -- I'll defer to my friend on the other side about whether the arguments are going to be substantially the same or not.

And, you know, we also take no position whether, you know, the case should be transferred to Judge Hinkle's court or whether, you know, you should -- you should keep the case.

THE COURT:  All right.  And staying with plaintiffs' counsel, the next question I have, assuming that I keep the case, if there are going to be lengthy depositions and I'm going to have to rule as a preliminary matter on the scope of the depositions, and then y'all are going to argue about what's relevant or not relevant or what I should consider or not consider at the hearing, why wouldn't it be easier just to go

ahead and set this for a week-and-a-half or two-week hearing and just call all the witnesses live and -- it seems like we are adding a bunch of extra layers by having declarations, supplemental declarations, and modifying everything based on depositions.  Presumably, some folks are going to file deposition excerpts that I have to read.

Why wouldn't it just be easier and more efficient just to go ahead and have all the witnesses for both sides come live and take out all the extra steps?

MR. XI:  So I think it would be -- so I think it would be a substantial burden on our witnesses to have, you know, to come to Tallahassee and sit for a hearing.  I think we would very much prefer to -- you know, if there's going to be discovery at all at the PI stage, to have them done, you know, by a deposition rather than a live hearing.

And, you know, we can -- we can talk about scope, but I think, you know, if the Court limits -- limits the scope of the depositions, I think, you know, it will be much -- much less burdensome for us.  And, you know, as courts have reiterated in a lot of cases, like -- you know, when it comes to First Amendment cases, you know, like, less -- less discovery is better, less burden on the plaintiff is better, because you don't want to be chilling First Amendment rights.

So I think -- for us we would very much prefer to just have -- have -- if there's going to be discovery at all at the

PI stage, to have it done by deposition rather than a full hearing.

THE COURT: Okay. Mr. Guard.

MR. GUARD: Well, Your Honor, we were going the discovery route because we thought it would be less burdensome on the Court, but, obviously, if the Court prefers live presentation, we will make arrangements and we will do it that way. So I think that's why we were going down the discovery trail, because we were trying to limit the burden on the Court.

But if we are going to end up with a significant burden on the Court, then, I mean, you know, you can determine how best you think it is to efficiently manage this case, as you do in every other case we have.

THE COURT: Sure. So it's clear -- and it should be clear -- what I'm suggesting is if I'm going to have to prescreen all the questions for the depos, and then y'all are going to take the depos, and then file them and then argue about what is or isn't relevant, and I'm going to have to rule on what is or is not relevant, to do it in multiple layers and multiple stages as opposed to just doing it in the courtroom all at once was my concern, that we are just adding extra layers and making it -- prolonging things as opposed to expeditiously resolving the issues.

Because my thought process was you could file your response on the 29th. We could get a reply on the 4th. You'd

file opening statements on December the 6th, and we'd start the hearing on December the 9th and go until we finished, without me, you know, limiting -- you know, obviously, there would be some limits, but give you a lot of room to maneuver in both them putting on the witnesses and your cross-examination.  And we certainly, I would think, over ten days of hearing time would have ample time to put on all that testimony.

But I'll -- I first asked about Judge Hinkle.  My second question was this modified schedule.  I'll let each side add whatever you want to respond to that modified schedule.

Mr. Guard, I'll start with you.

MR. GUARD:  Without talking to the folks that are sitting in a different conference room separated from me, I -- I don't know what our other commitments are as far as briefing sitting here right now.  I'm sure if Your Honor orders it, we will meet the schedule.  And, obviously, you know, we'll be there on the 9th -- if that is your desire, we'll be there on the 9th and be ready and prepared to move forward.

THE COURT:  Ms. Murphy -- I'm sorry.  It was Ms. Murphy last time.  It's Mr. Xi.  I'm sorry.

MR. XI:  Yeah.  No worries.

So we would, you know, very much prefer to do this by a deposition.  I think -- you know, if you were to hold a live hearing on our PI motion, I don't think we would actually want to present witnesses, live witnesses.  I think we would just

rest on the declarations and the papers that we filed. We thought -- the whole point of depositions was to give the State an opportunity to, you know, ask our declarants questions before they file their opposition. And, you know, I just -- I just don't think, like, you know, if you wanted to have a live hearing on the PI motion -- I don't think we would want to even call our witnesses to the stand, because, you know, that's just not what we prefer. We would rather do this by deposition.

THE COURT: And, Counsel, I'm not suggesting that that was my ruling. I was trying to figure out what was the most efficient way to do this to give both sides a full and fair opportunity to be heard and do it in the most efficient manner.

So I want to make plain, I was not from on high announcing that was the new schedule. I was offering it as an alternative to the schedule that was submitted by the parties.

Finally, I've read the objections and the positions of the parties with respect to the depositions. Let me say, I don't find -- first, that just the overlap regarding standing, since there's such a difference in terms of the substantive issues that we are going to face, I don't find it appropriate to reassign it to Judge Hinkle. So I'm not going to.

And, quite frankly, the lawyers in this case on both sides -- in other cases y'all typically, if you believed there was a substantial overlap, would have notified the Court. But I wanted to ask so it was clear that I wasn't clinging to the

case.  I wanted to make sure the parties had an opportunity to be heard.  But it sounds like neither side believes there is such a substantial overlap that it would be appropriate to transfer it to Judge Hinkle.  So I'm not going to transfer it.

I'm not going to force either of y'all to come to a two-week hearing starting on -- or however long it would take -- starting on December 9th.  I was demonstrating a willingness to put this case on a fast track and, as an alternative, give y'all a way to present the information separate and apart from taking the depositions.

So I'll stick with the schedule that the parties had submitted in ECF No. 34, which includes the dates that depositions will be taken, when a motion to dismiss is due, when the defendant will make their experts available for deposition, and when the responses are due to the motion to dismiss and reply.

The only thing I will note that any -- because I don't believe you put this in there.  And let me start with Mr. Guard.

Mr. Guard, normally I would have your declarations due the same day your response is due.  I'm not sure that your schedule says that, but is that what you contemplated?

MR. GUARD:  Yes, Your Honor.

THE COURT:  And same question to counsel for the plaintiff.

Any declarations that you were going to file,

supplemental declarations, if any -- I'm not requiring them -- in reply would be filed along with the reply.  Counsel for plaintiff, is that what you contemplated?

MR. XI:  Yes, Your Honor.

THE COURT:  Okay.  So we'll do that.

And then we are going to set the hearing -- you asked for the 27th or the 28th -- give me one moment, please.

(Pause in proceedings.)

THE COURT:  I'll set it for February the 28th at 9:00 a.m.

Mr. Guard, turning now to the scope of the depositions, at the last hearing I mentioned that I was going to allow you certainly to take depositions and they were going to be not full depositions, but limited to the issues that needed to be addressed at the preliminary injunction stage, and I believe I set a time limit for the depositions.

I don't see that in y'all's amended joint report.  A, do you contemplate any limits in the report?  Or, B, were you just relying on what was said at the last hearing?

MR. GUARD:  I believe that's an oversight.  We were relying on what was said at the last hearing.

We've been -- since you asked the plaintiffs to make (indiscernible) taken (indiscernible) without my knowledge, but we were not seeking to exceed five hours.  For example, I know the plaintiffs were taking our experts.  I think it's

contemplated that they are going to get the same five hours to depose our experts.

THE COURT:  Fair enough.  I just noted it wasn't in there and didn't know if we need to revisit that or somebody was asking to be heard further.  So we are going to stick with the five-hour limit.

With respect to the objections -- let me say with some of the issues, I don't think, Mr. Guard, you are going to be asking about specific conversations that counsel had, correct, as it relates to the preparation of the declarations?  You are going to ask the standard questions about who drafted the language, and then who edited the language and produced the actual declaration, or questions along those lines, as opposed to what conversations did you have.

Is that correct?

MR. GUARD:  That is correct, Your Honor.

THE COURT:  If you want to burn part of your five hours doing that, that's great.  I can tell you right now -- I mean, it's typical for lawyers to talk to an expert and say, Here's the information; take the notes.  We'll take a stab, send the draft, and then go back and forth with the draft.  But if you want to talk about that -- you are not going to ask him what conversations they had, but if it adds something meaningful to establish that they prepared declarations like it's done in every case, then have at it and use up part of your time doing

that.

As it relates to background, experience, and bias, you want to ask those people:  They work for the company; they get paid by the company; they have a dog in the fight, or they are being paid by plaintiffs' counsel to give these opinions. That's what you are talking about by background, experience, and bias; correct?

MR. GUARD:  Yes.

THE COURT:  You want to burn part of your five hours doing that, then so be it.

Then turning to the specific objections, let me hear from counsel for plaintiff.

I understand the position of the plaintiff as it relates to some of these issues that whoever the representative is, for example, of a particular -- when we get down to the individuals, say Snap's declarant, that they didn't offer opinions on every, for example, tool that's available.  If they don't have an opinion or that's not an opinion they're offering, why wouldn't that be the answer as opposed to saying you can't ask that question?

If that makes -- I'm sorry.  I was in another hearing, so I'm somewhat distracted.  So if I need to rephrase that or explain it differently, I can.

Do you understand what I'm asking?

MR. XI:  Yeah.  I think -- I think, you know, if the

State asks a question that's not within the personal knowledge, then, you know, as long as we can -- we are free to say, I don't know, I think that's -- that's fine. I just think, you know, like -- we've -- we understood the Court's ruling last week or a couple of weeks ago at that point to allow the State to ask questions specifically related to the subject matters in the declarations. And, you know, I just think, like, a lot of these topics on the list have absolutely nothing to do with the subjects discussed in the declarations.

For example, you know, one asks about Giggles Market Power and it's App Store and its lobbying activities. You know, like the State's lawsuit against TikTok, which is not even a member of NetChoice or CCIA. And I think, you know, that certainly goes to show what they are really trying to do here is to use these limited deposition to go, you know, fish for information that, you know, may be relevant to their other lawsuits against these companies, but this really isn't reality at all to the declarations here or any of the First Amendment issues of this lawsuit.

So I think to any extent we can the narrow the scope of some of these topics, I think that would -- you know, that would be helpful. But, you know, I do think to the extent they ask questions that our declarants don't know in their individual capacities, I think as long as, you know, they can say, I don't know, I think that would help a lot.

THE COURT:  Well, I'm certainly hoping the declarants don't just make stuff up.  I mean, the answer would be, I don't know.

MR. XI:  Yeah.

THE COURT:  And turning to the next issue, which is, Judge, they are getting rather far a field of the issues that will be presented to you, I understand this drags out the depo, but if they want to spend the bulk of the depo asking about things that have nothing to do with the preliminary injunction and not get any information that's helpful for the issues that will be presented to me, other than wasting everyone's time, what's the objection to that?

MR. XI:  Well, I think it's -- you know, it's still burdensome to have to answer some of these questions that -- you know, they might know about but are just, like, not relevant to any of the issues in the case.

So, for example, you know, they've -- the State -- the State has a lot of topics related to, you know, what they call "government interest in protecting minors."  For example, they want to ask questions about the addictiveness of our services, the usage, you know, or services by bad actors, or various lawsuits in other states that are members.

And, like, none of the declarants say one way or another whether these platforms actually are addictive or anything like that.  And nothing in the specific First Amendment

arguments that we made in the PI motion turn on whether, like, these platforms actually are addictive.  We haven't submitted a bunch of declarations saying that, you know, the State is just wrong about the addictiveness or bad actors that -- you know, that are on our services.

You know, of course we would contest that these platforms are, in fact, addictive, but none of the specific First Amendment arguments that we make turn on factual questions about those things.  If you look at page 28 and 29 of our PI brief, for example, we argue that.  You know, our principle argument is that even assuming the State can produce evidence that its concerns about addictiveness are real, HB 3 is just not narrowly tailored.

And so, you know, like, I think the burden is -- like, we still might know stuff about -- about addictiveness, but, you know, we just don't want -- don't think it's necessary to have to answer questions about it because it's just not at all relevant to the questions at issue in the case.

And at the PI stage I think these depositions are supposed to be limited.  And based on the Court's order from a couple of weeks ago, they are supposed to be limited to asking about the specific topics listed in the subject matter as what's given in the declaration.  And I just think, you know, they've gone far a field of that.

THE COURT:  The point being, Judge, we offered them up

as experts on X, Y, and Z, not X, Y, and Z and A, B, and C.  And they can ask us, per your direction, anything at all that relates to X, Y, and Z, any topic that's covered in the declaration.  But if we haven't offered them up as experts or offering an opinion as to addictiveness, for example, that's outside of the scope of what they are being called as a witness. And if they were called as a witness live at a preliminary injunction hearing and we object to outside the scope, we would suggest you should sustain the objection because the person isn't offering any testimony in that regard.

Is that the short version?

MR. XI:  Yeah, that's a better way to put it.  Yeah. Yeah.

THE COURT:  All right.  Mr. Guard, let me hear from you.

MR. GUARD:  Sure, Your Honor.  First, the plaintiffs here have brought a facial challenge.  And so it is not just the members' speech that we have to look at given the *NetChoice v. Moody* challenge.

Second, I don't think they are offering the particular witnesses as experts, but even if you look at -- if you look at the actual topics, we are using addictive features in quotes, I think in most of these instances to have it used under HB 3.

And if you look at the language of their declarations, they say "may" or "they'd try to limit it" or "try to" -- it's

not clear whether HB 3 applies to the particular declarants or their companies.  And so I think it's fair to ask questions about that and explore that and whether these products have those features, and so whether the statute applies to them or not.

And in the case, for example, of the YouTube representative, they actually have for the -- under -- I think the 12-and-under crowd -- have turned off certain of these features.  And so I think exploring whether -- what are these quote -- I'm using the words "addictive feature" as it is used in kind of the statute -- can be turned off or not.  It is -- it kind -- it is a situation for this case whether -- whether this is actually burdensome on them or not.

And so for the reasons we stated in our -- in our -- I mean, in our -- in the case management report, I think each one of these things is going to be relevant to the issues that this Court has in front of it.

THE COURT:  And, by the way, I shouldn't have used the word "expert."  I meant -- before I likened them to 30(b)(6) witnesses that were being offered up to testify on particular certain topics, so I stand corrected in that regard.

I'm going to circle back to what I said to plaintiffs' counsel.  I understand it's burdensome.  I understand that discovery should be limited.  I understand that it shouldn't just be a fishing expedition.

But on the other hand, I'm going to allow the defendants to take depositions.  I'm going to allow them to cover the -- not only the subject areas, but the topics that have been outlined in ECF No. 34.  I have not drafted a preliminary order, so I don't -- I can't say with certainly that some of this information is irrelevant and would have nothing to do with the ultimate case that's before me.  But, essentially, what I'm being asked to do is to prejudge the scope of the inquiry, having not read the response to the motion for preliminary injunction, and I'm just not going to do that.

I'm going to give the defense room to maneuver, to take the discovery.  And if they burn a lot of their time asking about topics and questions that have -- aren't referred to ultimately in the order and don't focus on with laser precision the issues that are actually going to be decided by the Court on the preliminary injunction motion, then they do so at their own peril.

And I said I'm not going to allow them an unlimited amount of time to take the depositions.  I told them it needs to be limited to the subject matter of the declaration and what's going to be before me.  But if they go farther afield, I'm going to give them, again, some latitude in that regard, but, potentially, they do so at their own peril.

So I'm not -- I understand what plaintiffs' counsel wanted to hear, but I'm going to allow them to cover, again, the

subjects and topics as outlined in ECF No. 34.

But, again, one way I'm controlling this and saying that doesn't mean you get to waste everybody's time by covering topics that are arguably never going to be discussed at the preliminary injunction hearing is I've cabined it by saying, You need to be thoughtful about how you use your time because I've limited the depos to five hours.

So I'm going to keep -- adopt the schedule y'all got. I'm not going to reassign the case to Judge Hinkle.  And I'm going to, again, give the defense some latitude in what they are able to cover at the depositions.

I'd rather do this once and not twice.  And I'm well aware of, for example, Justice Alito's comment in the opinion that we're all familiar with.

Having said that, does the defense counsel need anything else from the Court at this time?

I'll enter an order today adopting the schedule.

MR. GUARD:  No, Your Honor.

THE COURT:  Anything else from plaintiffs' counsel?

MR. XI:  No, Your Honor.

THE COURT:  All right.  Court is in recess.

Thank you.

(Proceedings concluded at 11:32 AM on Tuesday, November 19, 2024.)

* * * * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter. Any redaction of personal data identifiers pursuant to the Judicial Conference Policy on Privacy is noted within the transcript.

/s/ Megan A. Hague                      11/30/2024

Megan A. Hague, RPR, FCRR, CSR          Date
Official U.S. Court Reporter