IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

COMPUTER & COMMUNICATIONS
INDUSTRY ASSOCIATION and
NETCHOICE,

    *Plaintiffs,*

v.                              Case No.: 4:24cv438-MW/MAF

JAMES UTHMEIER,

    *Defendant.*
_____/

## ORDER GRANTING MOTION TO DISMISS

Plaintiffs, internet trade associations with members including Google, Meta, and Snap, Inc., brought this action challenging provisions of a new Florida law that place age and parental consent limits on holding an account on some social media platforms. This Court has considered, without hearing, Defendant's motion to dismiss. ECF No. 50. The motion is fully briefed. *See* ECF No. 62; ECF No. 66. For the reasons stated below, Defendant's motion is **GRANTED**, and Plaintiffs' complaint is **DISMISSED without prejudice** for lack of standing.

I

Plaintiffs are the Computer & Communications Industry Association (CCIA) and NetChoice, both internet trade associations whose members include companies that operate major social media platforms like Facebook, Instagram, YouTube, and

Snapchat. ECF No. 1 ¶¶ 7–8. They challenge Section 1 of Florida House Bill 3, now codified at § 501.1736, Fla. Stat., which restricts some social media platforms from allowing Florida youth under 14 to create or hold an account on their platforms and from allowing youth aged 14 and 15 to create or hold an account without affirmative parental consent. § 501.1736(2)–(3), Fla. Stat. The law defines a "social media platform" as an "online forum, website, or application" that satisfies four criteria: (1) allows users to upload content or view the content or activity of other users, (2) has ten percent or more of the daily active users under 16 spend on average two hours per day or longer on the platform on the days when using it,[1] (3) employs algorithms that analyze user data or information on users to select content for users, and (4) has any one of five listed "addictive features." § 501.1736(1)(e), Fla. Stat.

Plaintiffs seek declaratory and injunctive relief against the Attorney General of Florida, who is given power to enforce the law. § 501.1736(5), Fla. Stat. Plaintiffs bring three claims, alleging that the law violates the First Amendment, that the law's coverage definition is unconstitutionally vague, and that the law is preempted by the federal Children's Online Privacy Protection Act, 15 U.S.C. § 6501 *et seq*.

II

Defendant moves to dismiss Plaintiffs' complaint for lack of standing under Fed. R. Civ. P. 12(b)(1), among other reasons. Standing is a constitutional

---

[1] For simplicity, this Court will refer to this requirement as the "time requirement."

prerequisite to a federal court exercising subject matter jurisdiction over an action. A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction "can be asserted on either facial or factual grounds." *Carmichael v. Kellogg, Brown & Root Servs.*, 572 F.3d 1271, 1279 (11th Cir. 2009). A facial challenge occurs when, as here, a defendant bases their challenge to subject matter jurisdiction solely on the allegations in the complaint. *Id.* In considering the Defendant's facial challenge, this Court must take Plaintiffs' allegations as true and draw reasonable inferences from the facts alleged. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). At the motion-to-dismiss stage, standing is evaluated by determining whether the complaint clearly alleges facts demonstrating each element of Article III standing. *Glynn Env't Coal. v. Sea Island Acquisition*, 26 F.4th 1235, 1240 (11th Cir. 2022). Only factual allegations, and not legal conclusions, are relevant to this inquiry, and "mere conclusory statements . . . do not suffice." *Id.* (alteration in original) (quoting *Iqbal*, 556 U.S. at 678).

Article III standing requires a plaintiff to have (1) suffered an injury in fact that is (2) fairly traceable to the challenged conduct of the defendant, and (3) is likely to be redressed by a favorable judicial decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). An injury in fact must be "concrete, particularized, and actual or imminent." *Muransky v. Godiva Chocolatier*, 979 F.3d 917, 925 (11th Cir. 2020). An injury that is "conjectural or hypothetical" is constitutionally insufficient. *Id.*

Plaintiffs here seek to establish associational standing, which requires, *inter alia*, factual allegations from which this Court can reasonably infer that at least one of their members has Article III standing to sue in their own right.[2] *Hunt v. Wash. Apple Advert. Comm'n*, 432 U.S. 333, 342–43 (1977). Plaintiffs have failed to meet this burden.

### III

Plaintiffs do not allege sufficient facts to allow this Court to draw a reasonable inference that at least one of their members faces an injury in fact from the challenged law. For one of Plaintiffs' members to face an injury in fact that is "actual or imminent," not "conjectural or hypothetical," and that is "fairly traceable" to Defendant, Plaintiffs must allege facts from which this Court can reasonably infer that at least one of their members is covered by the law.[3] *Lujan*, 504 U.S. at 560. If

---

[2] In their complaint, Plaintiffs also allege that they "have standing to assert both their own First Amendment rights and the First Amendment rights of their members' current and prospective users." ECF No. 1 ¶ 11. It is not clear on what basis they claim that their own First Amendment rights are infringed by the law, as the complaint makes no factual allegations that their own speech is restricted by the law. In other places, Plaintiffs allege that the First Amendment rights of their members are infringed by the law, and perhaps that is what was intended here. *See, e.g.*, *id.* ¶ 63. But even for this latter argument, the factual allegations underlying this claim are thin. And any First Amendment injury to a member's users is only traceable to the Attorney General if the member is likely covered by the law.

[3] It is not sufficient for Plaintiffs to allege that, because their members include many of the major social media companies, one is likely to meet the law's coverage requirements. The Supreme Court has squarely rejected this sort of probabilistic analysis. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 497–99 (2009). Instead, Plaintiffs must plead sufficient facts for this Court to reasonably infer that at least one identifiable member of theirs likely meets the four coverage criteria. Nor is it sufficient for Plaintiffs to plead facts suggesting that some Florida leaders intended for the law to cover some of Plaintiffs' members, because this law can only be enforced

none of their members are likely to covered by the law, then any compliance costs or chilled speech incurred by those members are not sufficient to confer standing. *C.f. Clapper v. Amnesty Int'l*, 568 U.S. 398, 415 (2013) ("[Plaintiffs] cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending."). Because this law does not regulate "social media" platforms generally, but instead limits its coverage to those platforms that meet each of four specific criteria, this Court cannot reasonably infer that any particular platform is likely covered by the law without some factual allegations regarding each of those criteria.[4] Plaintiffs plead none. At best, this Court could reasonably infer that that Facebook, YouTube, and Snapchat satisfy the user-content criterion, that YouTube satisfies the algorithm, auto-play, and livestream criteria, and that Facebook satisfies the livestream criterion. *See* ECF No. 1 ¶¶ 15–16, 35, 66. But Plaintiffs' complaint includes no factual allegations from which this

---

against those members if they meet the four coverage criteria, and Florida leaders are in no better position to know whether Plaintiffs' members meet those criteria than Plaintiffs or their members themselves are. *See* ECF No. 72 at 11–12.

[4] One of Plaintiffs' claims for relief is a vagueness challenge to the law's coverage criteria. But Plaintiffs must still allege some facts from which this Court could reasonably infer that one of Plaintiffs' members could satisfy these criteria under at least some possible interpretation.

Court could reasonably infer that at least one of these platforms likely meets the law's time requirement.[5]

Even if this Court takes into account all of the evidence presented in this matter relating to the Plaintiffs' motion for a preliminary injunction, *see Fla. Fam. Pol'y Council v. Freeman*, 561 F.3d 1246, 1253 (11th Cir. 2009), it still does not suffice. *See* ECF No. 72 (order denying Plaintiffs' motion for a preliminary injunction).

Because this Court finds that Plaintiffs have not plausibly alleged standing, it need not consider Defendant's other arguments for dismissing the complaint.[6]

Accordingly, Defendant's motion to dismiss, ECF No. 50, is **GRANTED**. Plaintiffs' complaint is **DISMISSED without prejudice** for lack of standing. If Plaintiffs intend to file an amended complaint, they shall do so **on or before Monday, March 31, 2025**.

**SO ORDERED on March 17, 2025.**

s/Mark E. Walker
**Chief United States District Judge**

---

[5] This Court reiterates that it is not holding Plaintiffs to an impossible standard. *See* ECF No. 72 at 10 (discussing the minimal facts that would need to be shown—or here, alleged—to meet this standard).

[6] However, if Plaintiffs intend to re-plead their claims, they would do well to make explicit what they claimed was implicit in their initial complaint, such as an equitable cause of action brought in the alternative for their constitutional claims.