UNITED STATES DISTRICT COURT
NORTHEASTERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CASE NO. 4:24-CV-00438-MW-MAF

COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION AND NETCHOICE,

      Plaintiffs,

v.

JAMES UTHMEIER, IN HIS OFFICIAL CAPACITY AS ATTORNEY GENERAL OF THE STATE OF FLORIDA,

      Defendant.
_____/

REMOTE VIDEOTAPED DEPOSITION OF

DAVID BOYLE

VOLUME 1 (Pages 1 - 30)

Friday, April 11, 2025
2:59 p.m. - 3:35 p.m.

LOCATION:  Remote via Zoom

Reported by:  Devin Richmond,
Notary Commission No. MI 22332596

Job No.:  401940

David Boyle
April 11, 2025

Page 2

APPEARANCES:

On behalf of Computer & Communications Industry
Association and Netchoice:

        Stearns Weaver Miller Law Firm
        Highpoint Center 106 East College Avenue
        Suite 700
        Tallahassee, Florida 32301

        BY:  DOUGLASS KILBY, ESQ.
        dkilby@stearnsweaver.com.

On behalf of James Uthmeier, in his official capacity as
attorney general of the State of Florida:

        Attorney General
        PL-01 The Capitol
        Tallahassee, Florida 32399

        BY:  JOHN GUARD, ESQ.
        BY:  KEVIN GOLEMBIEWSKI, ESQ.
        BY:  ANITA PATEL, ESQ.
        BY:  PETER SOMERVILLE, ESQ.
        BY:  STEPHANIE JOYCE, ESQ.
        BY:  JAMES XI, ESQ.
        anita.patel@myfloridalegal.com

On behalf of David Boyle:

        Munger, Tolles & Olson, LLP
        350 South Grand Avenue
        50th Floor
        Los Angeles, California 90071

        BY:  FAYE PAUL TELLER, ESQ.
        BY:  ROWLEY RICE, ESQ.
        faye.teller@mto.com
        rowley.rice@mto.com

Also Present:

        Suzanne Nero, in house at Snap

        Richard McNulty, Videographer

David Boyle
April 11, 2025

Page 3

INDEX OF EXAMINATION

EXAMINATION:                                    PAGE

Testimony of David Boyle

Direct Examination by Mr. Guard            5

Certificate of Oath                              27
Certificate of Digital Reporter                  28
Read and Sign Letter                             29
Errata                                           30

INDEX TO EXHIBITS

DEFENDANT'S              DESCRIPTION              PAGE

Exhibit 1      Declaration Oct. 24, 2024          6

Exhibit 2   Confidential Exhibit Dec 12, 2024     6

Exhibit 3   Confidential Exhibit Dec 12, 2024     7

Exhibit 4          One Page Chart               15

(Original exhibits retained by counsel for Defendant.)

David Boyle
April 11, 2025

Page 4

Proceedings began at 2:59 p.m.:

THE VIDEOGRAPHER:  The time is 2:59.  We're now on the record.  This is the video-recorded deposition of David Boyle in the matter of Computer & Communications Industry Association v. James Uthmeier.  The deposition is being held in Zoom videoconference on April 11th, 2025.  The videographer is Richard McNulty and the court reporter is Devin Richmond.  Both an association with Lexitas.  Would counsel please announce their appearances for the record?

MR. GUARD:  John Guard on behalf of James Uthmeier, the attorney general of State of Florida.

MS. TELLER:  Faye Paul Teller from Munger, Tolles & Olson on behalf of the witness, David Boyle.  Third party.

THE VIDEOGRAPHER:  The court reporter, could you please swear the witness?

THE REPORTER:  Yes.  Please raise your right hand.  Do you swear or affirm the testimony you give today will be the truth, the whole truth, and nothing but the truth.

THE WITNESS:  Yes.  I do.

THE REPORTER:  Great.  We may begin.

Thereupon:

David Boyle
April 11, 2025

Page 5

DAVID BOYLE,

having been first duly sworn, was examined and

testified as follows:

DIRECT EXAMINATION

BY MR. GUARD:

Q.   Good afternoon, Mr. Boyle.  If you could please state your name and spell your last name for the. Record.

A.   David Boyle, B-O-Y-L-E.

Q.   Mr. Boyle, as you know, my name is John Guard and I represent James Uthmeier, the attorney general of the State of Florida.  I deposed you back in December. Correct?

A.   That's right.  Yes.

Q.   The same general ground rules apply to this deposition as did in that prior deposition.  Except this deposition is hopefully going to be considerably shorter. And one other important difference is that it's occurring on Zoom and not in person, which means that we need to be even more careful about interrupting each other.  Do you understand?

A.   I understand.  Okay.

Q.   And I asked Plaintiffs' counsel, and I think they forwarded it to your counsel with three documents. Do you have those three documents in front of you or

David Boyle
April 11, 2025

Page 6

handy?

A.   Yes.  I, I, I have all the documents here.  Yeah.

Q.   I'm going to try to take care of kind of the background information first before I turn to questions.  The first document you have is your original declaration which I believe was signed by you on October 24th, 2024.  It has a printed line on the top that indicated it was filed on October 29th, '24.  Do you have that document?

A.   I do.  Yes.

Q.   I'm going to mark that document for identification as Exhibit 1 to this deposition.  You can put that to the side for a second.  The second document is your deposition which was, I believe, taken on December 12th, 2024.  Do you have that document?

(Defendant's Exhibits 1 and 2 marked for identification.)

A.   (No verbal response.)

Q.   Yeah.  That's --

A.   Is it the one?

MR. GUARD:  And I believe it includes -- yeah, well, I think it's been marked confidential.  We are going to --  Ms. Teller, we'll treat that exhibit as -- continuing in its confidential nature, just so it's clear on the record.

David Boyle
April 11, 2025

Page 7

MS. TELLER:  Thank you.

BY MR. GUARD:

Q.    And you can put that beside Exhibit 1.  Did, at some point in time after that deposition was taken, you actually review your deposition?

A.    Did I review my deposition or did I review the, the transcript before it was finalized or --

Q.    Did you review the transcript before it was finalized?

A.    Yes.

Q.    Other than what maybe on an errata sheet, there was nothing inaccurate or incorrect from that transcript?

A.    Nothing that I can recall.  No.

Q.    The third document is a declaration.  That is, I believe, dated March 24th, 2025.  And on the top of the document, it has a line indicating it was filed on March 28th, '25.  Do you have that document?

A.    I do.  Yes.

Q.    I'm going to mark that document as Exhibit 3 to your deposition.  If you look at Exhibit 3 on the last page which I believe is numbered page 7, there appears to be an electronic signature?

(Defendant's Exhibit 3 marked for identification.)

A.    That's right.  Yes.

David Boyle
April 11, 2025

Page 8

Q.   And is that your electronic signature on that declaration?

A.   That's correct.  Yes.

Q.   Did you review Exhibit 3 before you fixed that signature?

A.   I did.  Yes.

Q.   And were you involved in preparing Exhibit 3?

A.   Yes.

Q.   Did you review any documents as part of your preparation of Exhibit 3?

A.   I think the, the main one that I recall reviewing is the one that, you know, Counselor, I believe we, we provided in, in evidence today.  So that's the primary one I, I remember reviewing just to confirm those data points.

Q.   And we'll turn to that document separately because obviously I just got it today.  But other than that document, you don't recall reviewing any other documents in preparing Exhibit 3?

A.   Nothing specific comes to mind because the rest is just from my general knowledge about Snapchat.  But I, I did, you know, review and confirm the data with our data science team before finalizing the -- or the document.  Yes.

Q.   Like you did the first time, kind of getting

David Boyle
April 11, 2025

Page 9

ahead of me because my next question to you is going to be other than Snapchat's or Snap's lawyers, did you speak to anyone relating to Exhibit 3.

A.   Specifically, I did confirm the data with our data science team.  Yes.

Q.   And is there someone that leads that data science team?

A.   Yes.  The manager is named Kevin Heinz (phonetic).

Q.   And was he one of the people that you talked to when you were talking with the data science team?

A.   Yes.

Q.   Other than the data science team, did you speak to -- and again, I'm excluding Snap's lawyers.  Did you speak to anyone else about the information contained in Exhibit 3?

A.   Not, not that I can recall.  It's really just the, the data science team, they confirmed the data, and, and the lawyers, and, and the rest is just based on my general knowledge.

Q.   And on the data science team, did you just speak to them about daily active users or did you speak to them about other data points?

A.   I, I just -- on, on this specific topic, we just spoke about all the data that, that we shared with

David Boyle
April 11, 2025

Page 10

you.  So, so that was -- that was it.

Q.    And again, we'll get to that document in a second.  Now, Exhibit 1 was your original declaration that you signed in connection with this case.  Correct?

A.    Yes.

Q.    And most of the testimony that is contained in Exhibit 1 is also contained in Exhibit 3.  Right?

A.    Yes.

Q.    And the differences, at least primarily, between Exhibit 1 and Exhibit 3, are that there are a number of additional paragraphs of additional or new information.  Right?

A.    There, there, there are some additional paragraphs and, and new information.  Yes.

Q.    And if you could turn to, I believe it's page 4, of both Exhibits 1 and 3 and look at paragraph number 9 in both.  Let me know when you have it.

A.    Yes.  I got it.

Q.    Paragraph 9 in Exhibit 1 and Exhibit 3, the two declarations, is different.  Correct?

A.    Yes.  That's right.

Q.    And if you look at the first sentence in paragraph 9 in both declarations, the first sentence is different.  Correct?

A.    I'll, I'll just read them quickly aloud just to

David Boyle
April 11, 2025

Page 11

confirm, if that's okay.  But in the March 28th document, I'm familiar with Florida's HP3, the act and believe that Snap is likely covered by the law.  And then the Exhibit 1, I'm familiar with Florida's HP3, the act and believe that Snap may be covered by the scope of the law.  So there, there are some differences in the exact language.

Q.  Yeah.  The two sentences are not identical.  Correct?

A.  That's correct.  Yes.

Q.  In the original declaration, Exhibit 1, you indicated that Snap may be covered by the scope of the law.  Right?

A.  That's, that's what it says.  Yes.

Q.  And in the new declaration, Exhibit 3, you are now testifying that Snap is likely covered by the scope of the law.  Correct?

A.  Yes.  That was what we discussed with Counsel.

Q.  Again, I know I had said it a bunch of times in the deposition, but I'm not trying to get into your conversations with your counsel.  And so I just want to preface it and make that clear.  And so I'm going to ask you a question.  I'm going to ask you a series of questions actually.  And I'm asking for your belief or your understanding.  I'm not asking for anything that Counsel told you.  Okay?  Is that fair?  Do you

David Boyle
April 11, 2025

Page 12

understand?

MS. TELLER:  And David, let me just add this. We're in a slight peculiarity here, because normally I would say if you need help understanding what you can and can't testify to that, that we can just take a quick break.  We can still do that.  So if you feel like you need some guidance on what you can explain -- I think Mr. Guard is trying to stick to kind of what's in the four corners of your declaration.  Obviously, you had worked with counsel to prepare it.

So I would advise you not to share the background conversations that were happening with counsel.  Not sure how this layperson's assessment here is all that relevant to this issue, but he is entitled to ask you sort of about what your independent understanding is.  So we'll go ahead and let that occur.

MR. GUARD:  Thank you, Counsel.

BY MR. GUARD:

Q.  **And again, if you need to take a break, we can take a break and --**

A.  No.  I don't -- I don't think we need to. Sorry.  Would you mind just resaying the question?  I lost it in there.

David Boyle
April 11, 2025

Page 13

Q.   Well, actually, I hadn't asked you the question yet.  I just laid out to you that I'm not asking.  And I just wanted to be clear on the front end because I'm not trying to cause a waiver of privilege or you to disclose privileged information.  And so I'm going to ask you some questions, and I'm just asking for your understanding, which is obviously a lay understanding.  But you testified in Exhibit 3 that Snap is now likely covered by the law.  Why do you believe that Snap is now likely covered by the law?

A.   I think that there, there are two pieces of information shared here.  One is the user engagement data that, you know, we, we shared that matches the, the -- you know, at least our understanding of the requirements of what would bring an application into scope for the law.  So that's one.

And then the other is the inclusion of features that, you know, were, were enumerated in the law, including use of push notifications in a particular way which, you know, at least I, I believe we do use those features in the manner described in the law.  So those are two of the key reasons.

Q.   Now, as far as the features that you just mentioned, those have been features that have been part of Snap since prior to your deposition and prior to your

David Boyle
April 11, 2025

Page 14

original declaration.  Correct?

A.  Yes.  That, that would be correct.

Q.  And as far as the user engagement data, Snap had that data available to it prior to your deposition and prior to your original declaration.  Correct?

MS. TELLER:  Objection, vague.

THE WITNESS:  The -- that -- yeah, the availability of that data is not new.

BY MR. GUARD:

Q.  When -- strike that.

If you now will turn, in Exhibit 3, to paragraphs 10 through 15.  And my question to you is going to be simply that paragraphs 10 through 15 are also new testimony.  Correct?

A.  If you can give me a moment to, to compare, just to make sure I answer correctly.  Thank you.

Q.  That's why marked your original declaration to make it as easy as possible.

A.  Yes.  That's right.

Q.  And if you'll look at paragraph 11.  And paragraph 11 is the data or at least the -- it's not necessarily the data but it's information that you got from the data scientist.  Correct?

A.  Yes.

Q.  Now, if you can put aside Exhibit 3 for a

David Boyle
April 11, 2025

Page 15

second.  And we were talking earlier about a one-page document that was shared with me today.  Do you happen to have that one-page document?

A.   I do.  Yes.

Q.   Yeah.  That's it.  I'm going to mark that single-page document for identification as Exhibit 4 to your deposition.  And you've seen Exhibit 4 before.  Correct?

(Defendant's Exhibit 4 marked for identification.)

A.   I have.  Yes.

Q.   Do you recall when you first saw Exhibit 4?

A.   I, I don't remember exactly.

Q.   Was it in the last month?

A.   Well, this exact document, because, you know, you can see the time series, is up to, you know, about one month ago.  This exact version of this data would have been within the last month or so, right after the, the end of the time series.  But I, I can't remember exactly in the past when I would have seen, you know, similar data and analysis.

Q.   Were you involved in the creation of Exhibit 4?

A.   Yes.

Q.   What was your involvement in the creation of Exhibit 4?

David Boyle
April 11, 2025

Page 16

MS. TELLER:  And let me just caution you here, David, because I personally know this went through drafts.  And so I want to caution you to the extent Counsel was involved in the drafting, to be careful about what you reveal, which I think we would assert work product over.  But the category of your general involvement I think is fine to testify to.

BY MR. GUARD:

Q.   And again, I should have put the caveat there. I don't want to know what you talked about with your counsel.  But what was your involvement, not disclosing what you may have said or your exchanges with Counsel?

A.   Yeah.  We, we explained what the data question was to Kevin, who is on our data science team.  He queried the data and, and help format it in this manner that it's easily understandable.  And then I worked, you know, with Counsel and others to, you know, prepare the final edits.

Q.   Looking at the bottom of Exhibit 4, I guess it's not necessarily bolded but there is something that says cohort criteria and then there's a colon.  Do you see that?

A.   That's right.  Yes.

Q.   What are cohort criteria?

A.   Cohort criteria means what are the users that

David Boyle
April 11, 2025

Page 17

are in question that have this, you know, distribution of time spent on the app.  And those criteria, you know, really are, are a reflection of at least my, my understanding of the law where we're supposed to be looking at the percentage of the relevant users that are averaging over two-hour sessions a day.

For users that -- you know, daily active users that have used the app at least 80 percent of days over the last year, my understanding also is, is you were looking -- or, you know, the, the law.  Not you, Counselor, but I think the law was, was looking to understand the data specifically for US users and specifically for a user between the age of 13 and 15. So, so that's what the cohort criteria means.

Q.   Is cohort criteria kind of like the query that you guys built out, that you queried a database that Snapchat has?

A.   Yes.  That's right.  And I think, you know, to give an example, if we remove the criteria for, 'Is a US user here?' for example, the data would look completely different because the way people use our product outside the US versus US is, is very different.  Or if we change the age criteria here, it would also likely look pretty different.

Q.   And kind of moving up Exhibit 4, there is, I

David Boyle
April 11, 2025

Page 18

guess, a chart that has a squiggly blue line going across it.  And so, is the chart a reflection basically on graphing the percentage of daily users that meet those cohort criteria.

A.    That's exactly right.  Yes.  And I, I won't try to anticipate your next question.  So I'll just let you ask it.

Q.    And I think if you look at the left axis of the chart, it starts at 0.00 and goes up to 0.20.  And I think the label says percent of users.  It's not 0.20 percent, correct, on the top?  It's actually 20 percent?

A.    That's right.  Yeah.  So you're correct about that.  And, and that's just the way that it's, you know, kind of laid out.  But the 0.2 here means 20 percent and 0.1 means 10 percent.

Q.    And if you look at the bottom axis, it has a date range.  When did the data that's mapped out or graphed out on this chart start?  What's the start date?

A.    The start date was March 13th, 2024 to March 12th, 2025, is the end date.

Q.    And then there have been imposed, it looks like three different lines that are three different colors. You have a yellow line, which is the minimum.  I'm colored blind, so I released red-green color blind.  What color is the top or the max line?

David Boyle
April 11, 2025

A.   Yeah.  I'm sorry -- I'm sorry to hear that, Counselor.  The, the maximum at the top is green.  And the mean in the middle, so the, the average is, is red.  And then the minimum is, as you said, is the yellow line at the bottom.

Q.   So the average seems to be hovering at about 15 percent.  Is that fair?

A.   That's, that's fair.  Yes.

Q.   And the range is between just above 11 percent to just below -- I guess it's 18.87 percent.  Is that fair?

A.   That's fair.  Yes.

Q.   You can put Exhibit 4 aside.  Turning back to Exhibit 3.  If you look at paragraph 15 of Exhibit 3, it reads, "Snapchat's users include minors in Florida who are 13 to 16 years old.  And testifying to that point, did you look at any data?

A.   That our -- that our users include minors in Florida who are 13 to 16 years old?

Q.   Yes.

A.   Yes.

Q.   Did you yourself query the database or did you ask the data science team for that information?

A.   For, for that one, I -- that is something that I can easily query.  I, I don't remember exactly, you

David Boyle
April 11, 2025

Page 20

know, when, when that happened.  But that, that one is simple enough that I was able to observe that one myself.

Q.   And do you recall, from when you did a query, how many minors in Florida were between 13 and 16 years old, using Snapchat?

A.   I, I, I don't remember off the top of my head.  No.

Q.   Do you recall approximately?  Are we talking 100, 1000, 10,000, 50,000, 1,000,000?  I mean, can you give me some sense?

A.   So when the -- just specifically in the State of Florida?

Q.   Yes.

A.   You know, again, I'm, I'm, you know, guessing here.  And so --

Q.   I don't want you to guess -- I don't want you to guess.

A.   Okay.

Q.   I was just asking if you could put it in a ballpark.

A.   I mean, the, the ballpark would be, you know, somewhere in the order of magnitude of, of 10,000s to 100,000s of minors in the State of Florida.  It, it certainly wouldn't be, you know, in, in the millions to my recollection.  And it wouldn't have been in the, you

David Boyle
April 11, 2025

Page 21

know, single digits of thousands.  But it would have been in, in those kind of orders of magnitude.

Q.  Moving to paragraph 16 of Exhibit 3.  The first two sentences of paragraph 16 were not in your prior declaration, Exhibit 1.  Were they?

A.  I think we, we reviewed this previously.  But that was not in the original declaration.  Yes.

Q.  The first two sentences read, "Because Snapchat may be covered by the law, Snapchat has an actual and well-founded fear that HP3 may be enforced against it. Snap will need to take numerous steps to comply with the law if the attorney general is not enjoyed from enforcing it."  Did I read those sentences correctly?

A.  Yes.

Q.  When did Snap first become fearful of enforcement of HP3?

MS. TELLER:  Objection, foundation.  Go ahead, David.

THE WITNESS:  Yeah.  I don't -- I don't recall exactly.  I mean, these were discussions with Counsel because I'm, I'm not the one, you know, interpreting the laws.  But I, you know -- it, it definitely would have preceded the original declaration that I submitted.

BY MR. GUARD:

David Boyle
April 11, 2025

Page 22

Q.   But nowhere in that original declaration, Exhibit 1, did you state that Snap was fearful of enforcement.  Right?

A.   I, you know, I, I haven't gone back and reread the, the whole thing.  I, I, I don't recall using those words in the original declaration.  But I, I think we did say that we, you know, we, we believe we may be covered by the law, and so any business that, you know -- we, we take compliance very seriously.  Our team does monitor new laws and regulations all over the world and in, in the United States.  And so they do brief us on new laws like this one.

And so we are concerned anytime, we, we think we may need to, you know, materially change our product to remain in compliance with local laws.

Q.   Snap itself has not filed a suit seeking an injunction against Florida's HP3.  Has it?

MS. TELLER:  Objection, foundation.

THE WITNESS:  I mean, I, I -- I'm not -- I mean, Counsel, I'm not personally familiar with the legal strategy or, or mechanics here.  But my, you know -- I, I, I would just leave it at that.  I, I, I don't know for certain.

BY MR. GUARD:

Q.   Well, your declaration, the document that you

David Boyle
April 11, 2025

Page 23

signed, does it list Snap as a plaintiff?  First page.

A.    No.  It does not.

Q.    And you want to look at Exhibit 1?  First page. Is Snap listed as a plaintiff there?

A.    No.  It is not.

Q.    Now, in that paragraph 16 of Exhibit 3, you indicate that Snap will have to take numerous steps to comply with HP3.  My question for you is what numerous steps will Snap have to take?

A.    I mean, I, I think it's listed out in, in my declaration in paragraph 16.  Is it not?  I'm, I'm happy to reference that.

Q.    Any stuff that Snap would need to take not listed in paragraph 16?

MS. TELLER:  Objection, foundation.

THE WITNESS:  There, there, there may be others.  I, I think the-- you know, if, if, if you recall from our -- you know, the original deposition, there are discussions around features like autoplaying videos, for example.

I think, you know, it, it depends on the definition that one might use or, or the law or, or the State of Florida might use around the definition of some of those features.  May, you know, may be in, in scope or may not be.  So there, there are

David Boyle
April 11, 2025

Page 24

potentially others.  But, you know, the, the ones listed here are the ones that seem more -- most clearly applicable.

BY MR. GUARD:

Q.    **Has Snap undertook any of those numerous steps at this point?**

MS. TELLER:  Objection, vague.

THE WITNESS:  One that we actually have started to undertake and test is using third-party age verification vendors.  It's not yet ready to, you know, test it or, you know, launch at a large scale, such as everybody in the State of Florida.  But in preparation for that possibility, that's one example of something that we've been working to integrate.

BY MR. GUARD:

Q.    **(indiscernible) from your original deposition, third-party verification was something that Snapchat was already having to contemplate because of other laws and other jurisdictions.  Correct?**

MS. TELLER:  Objection, foundation.

THE WITNESS:  There, there are many jurisdictions where this is a, you know, possibility.  But certainly Florida is, is one where it, you know, was a clear concern for us.

MR. GUARD:  I have no further questions.

David Boyle
April 11, 2025

Page 25

MS. TELLER:  I'm not sure we -- can we mark this confidential pending our review of the transcript.  I'm not sure there will be anything.

MR. GUARD:  I'm fine with that.  Under the protective order that I think you've seen.

MS. TELLER:  Yeah.  I think that's right.

MR. GUARD:  Do you have any questions, Ms. Teller?

MS. TELLER:  I do not.  Not for the witness. And I assume nobody else on does.  But I guess we can give them the chance.

MR. GUARD:  Well, I assume you're going to read?

MS. TELLER:  Yeah.

MR. GUARD:  We can go off record.

THE VIDEOGRAPHER:  Well, this is video.  If there's a request for video or transcript, please state your name for the record.

MR. GUARD:  And like with the last one, Richard, we'll get in touch with you, I'm sure, shortly.

THE VIDEOGRAPHER:  And if we're good to go off the record?

MR. GUARD:  We are.

THE VIDEOGRAPHER:  The time is 3:35.  This

David Boyle
April 11, 2025

Page 26

concludes the deposition today.  We are now off the record.

THE REPORTER:  And there's no transcript orders for right now?

MR. GUARD:  I think we're going to be ordering the transcript.  But our paralegal will reach out to you.

THE REPORTER:  Sounds good.

MS. TELLER:  I think Snap likely will as well. Thank you.

THE REPORTER:  Thank you.

(Deposition concluded at 3:35 p.m.)

David Boyle
April 11, 2025

Page 27

CERTIFICATE OF OATH

STATE OF FLORIDA

COUNTY OF LEON

I, the undersigned authority, Devin Richmond, Notary Public, certify that DAVID BOYLE remotely appeared before me and was duly sworn on April 11, 2025.

WITNESS my hand and official seal this 14th day of April 2025.

Devin Richmond
Notary Commission MI 22332596
Commission Expires: May 10, 2026

David Boyle
April 11, 2025

Page 28

CERTIFICATE OF DIGITAL REPORTER

I, DEVIN RICHMOND, a Digital Reporter and Notary Public within and for the State of Florida, do hereby certify:

That the foregoing proceeding hereinbefore set forth was accurately captured with annotations by me during the proceeding.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS THEREOF, I have hereunto set my hand this 11th day of April, 2025.

_Devin L. Richmond_
_____
Devin Richmond, Notary
Notary Commission MI 22332596
Commission Expires: May 10, 2026

David Boyle
April 11, 2025

Page 29

APRIL 14TH, 2025

DAVID BOYLE c/o FAYE PAUL TELLER
350 SOUTH GRAND AVENUE 50TH FLOOR, LOS ANGELES,
CALIFORNIA 90071
IN RE: COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION AND
NETCHOICE v. JAMES UTHMEIER, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE STATE OF FLORIDA
CASE NO.: 4:24-CV-00438-MW-MAF

Please take notice that on the 11th day of March 2025,
you gave your deposition in the above cause. At that
time you did not waive your signature.

The above-addressed attorney has ordered a copy of
this transcript and will make arrangements with you to
read their copy. Please execute the Errata Sheet,
which can be found at the back of the transcript, and
have it returned to us for distribution to all parties.

If you do not read and sign the deposition within 30
days, the original, which has already been forwarded to
the ordering attorney, may be filed with the Clerk of
the Court.

If you wish to waive your signature now, please sign
your name in the blank at the bottom of this letter and
return it to the address listed below.

Very truly yours,

Devin Richmond
Lexitas Legal
fl.production@lexitaslegal.com
I do hereby waive my signature.

_____
DAVID BOYLE
Job No.:  401940

David Boyle
April 11, 2025

Page 30

ERRATA SHEET

DO NOT WRITE ON THE TRANSCRIPT
ENTER CHANGES ON THIS SHEET

COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION AND
NETCHOICE v. JAMES UTHMEIER, IN HIS OFFICIAL CAPACITY AS
ATTORNEY GENERAL OF THE STATE OF FLORIDA
Deponent:  DAVID BOYLE
Date of Deposition:  April 11, 2025
Case No.:  4:24-CV-00438-MW-MAF

PAGE          LINE                    REMARKS

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Under penalties of perjury, I declare that I have read
the foregoing document and that the facts stated in it
are true.


Signature of Witness: _____

Dated this _____ day of _____ , _____

Email to fl.production@lexitaslegal.com
Job No.:  401940

David Boyle
April 11, 2025

1

| | | | | | |
|---|---|---|---|---|---|
| **0** | **1000** | 18:19 | 26:12 | **actual** | **appears** |
| | 20:9 | **2025** | | 21:9 | 7:21 |
| **0.00** | **11** | 4:7 | **4** | **add** | **applicable** |
| 18:9 | 14:20, | 7:15 | | 12:2 | 24:3 |
| **0.1** | 21 19:9 | 18:20 | **4** | **additional** | **application** |
| 18:15 | **11th** | **24** | 10:16 | 10:11, | 13:15 |
| **0.2** | 4:7 | 6:9 | 15:6,7, | 13 | **apply** |
| 18:14 | **12th** | **24th** | 9,12, | **advise** | 5:15 |
| **0.20** | 6:15 | 6:7 | 22,25 | 12:12 | **approximately** |
| 18:9,10 | 18:20 | 7:15 | 16:19 | **affirm** | 20:8 |
| | **13** | **25** | 17:25 | 4:20 | **April** |
| **1** | 17:13 | 7:17 | 19:13 | **afternoon** | 4:7 |
| | 19:16, | **28th** | | 5:6 | **assert** |
| **1** | 19 20:4 | 7:17 | **5** | **age** | 16:5 |
| 6:12,16 | **13th** | 11:1 | | 17:13, | **assessment** |
| 7:3 | 18:19 | **29th** | **50,000** | 23 24:9 | 12:14 |
| 10:3,7, | **15** | 6:9 | 20:9 | **ahead** | **association** |
| 10,16, | 14:12, | **2:59** | | 9:1 | 4:5,9 |
| 19 | 13 | 4:1,2 | **7** | 12:17 | **assume** |
| 11:4,10 | 17:13 | | | 21:17 | 25:10, |
| 21:5 | 19:6,14 | **3** | **7** | **aloud** | 12 |
| 22:2 | **16** | | 7:21 | 10:25 | **attorney** |
| 23:3 | 19:16, | **3** | | **analysis** | 4:13 |
| **1,000,000** | 19 20:4 | 7:19, | **8** | 15:21 | 5:11 |
| 20:9 | 21:3,4 | 20,23 | | **announce** | 21:12 |
| **10** | 23:6, | 8:4,7, | **80** | 4:10 | **autoplaying** |
| 14:12, | 11,14 | 10,19 | 17:8 | **anticipate** | 23:20 |
| 13 | **18.87** | 9:3,16 | | 18:6 | **availability** |
| 18:15 | 19:10 | 10:7, | **9** | **anytime** | 14:8 |
| **10,000** | | 10,16, | **9** | 22:13 | **average** |
| 20:9 | **2** | 19 | 10:17, | **app** | 19:3,6 |
| **10,000s** | **2** | 11:14 | 19,23 | 17:2,8 | |
| 20:22 | 6:16 | 13:8 | | **appearances** | |
| **100** | **20** | 14:11, | **A** | 4:11 | |
| 20:9 | 18:11, | 25 | **act** | | |
| **100,000s** | 14 | 19:14 | 11:2,4 | | |
| 20:23 | **2024** | 21:3 | **active** | | |
| | 6:7,15 | 23:6 | 9:22 | | |
| | | **3:35** | 17:7 | | |
| | | 25:25 | | | |

David Boyle
April 11, 2025

2

**averaging**
17:6

**axis**
18:8,16

---

**B**

---

**B-O-Y-L-E**
5:9

**back**
5:12
19:13
22:4

**background**
6:5
12:13

**ballpark**
20:20,21

**based**
9:19

**basically**
18:2

**began**
4:1

**begin**
4:24

**behalf**
4:12,15

**belief**
11:23

**blind**
18:24

**blue**
18:1

**bolded**
16:20

**bottom**
16:19
18:16
19:5

**Boyle**
4:4,16
5:1,6,9,10

**break**
12:6,21,22

**bring**
13:15

**built**
17:16

**bunch**
11:18

**business**
22:8

---

**C**

---

**care**
6:4

**careful**
5:20
16:4

**case**
10:4

**category**
16:6

**caution**
16:1,3

**caveat**
16:9

**chance**
25:11

**change**
17:22
22:14

**chart**
18:1,2,9,18

**clear**
6:25
11:21
13:3
24:24

**cohort**
16:21,24,25
17:14,15 18:4

**colon**
16:21

**color**
18:24,25

**colored**
18:24

**colors**
18:22

**Communications**
4:5

**compare**
14:15

**completely**
17:20

**compliance**
22:9,15

**comply**
21:11
23:8

**Computer**
4:4

**concern**
24:24

**concerned**
22:13

**concluded**
26:12

**concludes**
26:1

**confidential**
6:22,24
25:2

**confirm**
8:14,22
9:4
11:1

**confirmed**
9:18

**connection**
10:4

**considerably**
5:17

**contained**
9:15
10:6,7

**contemplate**
24:18

**continuing**
6:24

**conversations**
11:20
12:13

**corners**
12:9

**correct**
5:13
8:3
10:4,20,24
11:8,9,16
14:1,2,5,14,23
15:8
18:11,12
24:19

**correctly**
14:16
21:13

**counsel**
4:10
5:23,24
11:17,20,25
12:10,14,19
16:4,11,12,17
21:21
22:20

**Counselor**

**8:12**
17:11
19:2

**court**
4:8,17

**covered**
11:3,5,11,15
13:8,10
21:9
22:7

**creation**
15:22,24

**criteria**
16:21,24,25
17:2,14,15,19,23
18:4

---

**D**

---

**daily**
9:22
17:7
18:3

**data**
8:15,22,23
9:4,5,6,11,13,18,21,23,25
13:12
14:3,4,8,21,22,23
15:17,

David Boyle
April 11, 2025

3

21
16:13,
14,15
17:12,
20
18:17
19:17,
23

**database**
17:16
19:22

**date**
18:17,
18,19,
20

**dated**
7:15

**David**
4:4,15
5:1,9
12:2
16:2
21:18

**day**
17:6

**days**
17:8

**December**
5:12
6:15

**declarat
ion**
6:6
7:14
8:2
10:3
11:10,
14
12:10
14:1,5,

17
21:5,7,
24
22:1,6,
25
23:11

**declarat
ions**
10:20,
23

**defendan
t's**
6:16
7:23
15:9

**definiti
on**
23:22,
23

**depends**
23:21

**deposed**
5:12

**depositi
on**
4:4,6
5:16,17
6:12,14
7:4,5,
6,20
11:19
13:25
14:4
15:7
23:19
24:16
26:1,12

**Devin**
4:9

**differen
ce**
5:18

**differen
ces**
10:9
11:6

**digits**
21:1

**DIRECT**
5:4

**disclose**
13:4

**disclosi
ng**
16:11

**discusse
d**
11:17

**discussi
ons**
21:20
23:19

**distribu
tion**
17:1

**document**
6:6,9,
11,13,
15
7:14,
16,17,
19
8:16,
18,24
10:2
11:1
15:2,3,
6,15

22:25

**documents**
5:24,25
6:2
8:9,19

**drafting**
16:4

**drafts**
16:3

**duly**
5:2

---
**E**
---

**earlier**
15:1

**easily**
16:16
19:25

**easy**
14:18

**edits**
16:18

**electron
ic**
7:22
8:1

**end**
13:3
15:19
18:20

**enforced**
21:10

**enforcem
ent**
21:16
22:3

**enforcin
g**
21:12

**engageme
nt**
13:12
14:3

**enjoyed**
21:12

**entitled**
12:16

**enumerat
ed**
13:18

**errata**
7:11

**evidence**
8:13

**exact**
11:6
15:15,
17

**EXAMINAT
ION**
5:4

**examined**
5:2

**exchange
s**
16:12

**excludin
g**
9:14

**exhibit**
6:12,23
7:3,19,
20,23
8:4,7,
10,19

9:3,16
10:3,7,
10,19
11:3,
10,14
13:8
14:11,
25
15:6,7,
9,12,
22,25
16:19
17:25
19:13,
14
21:3,5
22:2
23:3,6

**Exhibits**
6:16
10:16

**explain**
12:8

**explaine
d**
16:13

**extent**
16:3

---
**F**
---

**fair**
11:25
19:7,8,
11,12

**familiar**
11:2,4
22:20

**Faye**
4:14

David Boyle
April 11, 2025

4

fear
21:10

fearful
21:15
22:2

features
13:17,
21,23,
24
23:19,
24

feel
12:7

filed
6:9
7:16
22:16

final
16:18

finalized
7:7,9

finalizing
8:23

fine
16:7
25:4

fixed
8:4

Florida
4:13
5:12
19:15,
19
20:4,
12,23
23:23
24:12,

23

Florida's
11:2,4
22:17

format
16:15

forwarded
5:24

foundation
21:17
22:18
23:15
24:20

front
5:25
13:3

——————

**G**
——————

general
4:13
5:11,15
8:21
9:20
16:6
21:12

give
4:20
14:15
17:19
20:10
25:11

good
5:6
25:22
26:8

graphed
18:18

graphing
18:3

Great
4:24

green
19:2

ground
5:15

Guard
4:12
5:5,10
6:21
7:2
12:8,
19,20
14:9
16:8
21:25
22:24
24:4,
15,25
25:4,7,
12,15,
19,24
26:5

guess
16:19
18:1
19:10
20:16,
17
25:10

guessing
20:14

guidance
12:7

guys
17:16

——————

**H**
——————

hand
4:20

handy
6:1

happen
15:2

happened
20:1

happening
12:13

happy
23:11

head
20:6

hear
19:1

Heinz
9:8

held
4:6

here?'
17:20

hovering
19:6

HP3
11:2,4
21:10,
16
22:17
23:8

——————

**I**
——————

identical

11:7

identification
6:12,17
7:24
15:6,10

important
5:18

imposed
18:21

inaccurate
7:12

include
19:15,
18

includes
6:21

including
13:19

inclusion
13:17

incorrect
7:12

independent
12:17

indicating
7:16

indiscernible
24:16

Industry
4:5

information
6:5
9:15
10:12,
14
13:5,12
14:22
19:23

injunction
22:17

integrate
24:14

interpreting
21:22

interrupting
5:20

involved
8:7
15:22
16:4

involvement
15:24
16:7,11

issue
12:15

——————

**J**
——————

James
4:5,12
5:11

David Boyle
April 11, 2025

5

John
  4:12
  5:10
jurisdic
tions
  24:19,
  22

——————

**K**

Kevin
  9:8
  16:14
key
  13:22
kind
  6:4
  8:25
  12:9
  17:15,
  25
  18:14
  21:2
knowledg
e
  8:21
  9:20

——————

**L**

label
  18:10
laid
  13:2
  18:14
language
  11:6
large
  24:11

launch
  24:11
law
  11:3,5,
  12,16
  13:9,
  10,16,
  18,21
  17:4,
  10,11
  21:9,12
  22:8
  23:22
laws
  21:22
  22:10,
  11,15
  24:18
lawyers
  9:2,14,
  19
lay
  13:7
layperso
n's
  12:14
leads
  9:6
leave
  22:22
left
  18:8
legal
  22:21
Lexitas
  4:10
lines
  18:22

list
  23:1
listed
  23:4,
  10,14
  24:2
local
  22:15
lost
  12:25

——————

**M**

magnitud
e
  20:22
  21:2
main
  8:11
make
  11:21
  14:16,
  18
manager
  9:8
manner
  13:21
  16:15
mapped
  18:17
March
  7:15,16
  11:1
  18:19
mark
  6:11
  7:19
  15:5
  25:1

marked
  6:16,22
  7:23
  14:17
  15:9
matches
  13:13
material
ly
  22:14
matter
  4:4
max
  18:25
maximum
  19:2
Mcnulty
  4:8
means
  5:19
  16:25
  17:14
  18:14,
  15
mechanic
s
  22:21
meet
  18:3
mentione
d
  13:24
middle
  19:3
millions
  20:24
mind
  8:20

  12:24
minimum
  18:23
  19:4
minors
  19:15,
  18
  20:4,23
moment
  14:15
monitor
  22:9
month
  15:14,
  17,18
moving
  17:25
  21:3
Munger
  4:14

——————

**N**

named
  9:8
nature
  6:24
necessar
ily
  14:22
  16:20
notifica
tions
  13:19
number
  10:11,
  16
numbered
  7:21

numerous
  21:11
  23:7,8
  24:5

——————

**O**

——————

Objectio
n
  14:6
  21:17
  22:18
  23:15
  24:7,20
observe
  20:2
occur
  12:18
occurrin
g
  5:18
October
  6:7,9
Olson
  4:15
one-page
  15:1,3
order
  20:22
  25:5
ordering
  26:5
orders
  21:2
  26:3
original
  6:6
  10:3
  11:10

David Boyle
April 11, 2025

6

14:1,5,
17
21:7,23
22:1,6
23:18
24:16

**P**

**p.m.**
4:1
26:12
**paragraph**
10:16,
19,23
14:20,
21
19:14
21:3,4
23:6,
11,14
**paragraphs**
10:11,
14
14:12,
13
**paralegal**
26:6
**part**
8:9
13:24
**party**
4:16
**past**
15:20
**Paul**
4:14

**peculiarity**
12:3
**pending**
25:2
**people**
9:10
17:21
**percent**
17:8
18:10,
11,14,
15
19:7,9,
10
**percentage**
17:5
18:3
**person**
5:19
**personally**
16:2
22:20
**phonetic**
9:9
**pieces**
13:11
**plaintiff**
23:1,4
**Plaintiffs'**
5:23
**point**
7:4
19:16
24:6

**points**
8:15
9:23
**possibility**
24:13,
23
**potentially**
24:1
**preceded**
21:23
**preface**
11:21
**preparation**
8:10
24:13
**prepare**
12:11
16:17
**preparing**
8:7,19
**pretty**
17:23
**previously**
21:6
**primarily**
10:9
**primary**
8:14
**printed**
6:8
**prior**
5:16

13:25
14:4,5
21:4
**privilege**
13:4
**privileged**
13:5
**Proceedings**
4:1
**product**
16:6
17:21
22:14
**protective**
25:5
**provided**
8:13
**push**
13:19
**put**
6:13
7:3
14:25
16:9
19:13
20:19

**Q**

**queried**
16:15
17:16
**query**
17:15
19:22,

25  20:3
**question**
9:1
11:22
12:24
13:1
14:12
16:13
17:1
18:6
23:8
**questions**
6:5
11:23
13:6
24:25
25:7
**quick**
12:6
**quickly**
10:25

**R**

**raise**
4:19
**range**
18:17
19:9
**reach**
26:6
**read**
10:25
21:8,13
25:13
**reads**
19:15
**ready**
24:10

**reasons**
13:22
**recall**
7:13
8:11,18
9:17
15:12
20:3,8
21:19
22:5
23:18
**recollection**
20:25
**record**
4:3,11
5:8
6:25
25:15,
18,23
26:2
**red**
19:3
**red-green**
18:24
**reference**
23:12
**reflection**
17:3
18:2
**regulations**
22:10
**relating**
9:3

David Boyle
April 11, 2025

7

**released**
18:24
**relevant**
12:15
17:5
**remain**
22:15
**remember**
8:14
15:13,
19
19:25
20:6
**remove**
17:19
**reporter**
4:9,17,
19,24
26:3,8,
11
**represent**
5:11
**request**
25:17
**requirements**
13:14
**reread**
22:4
**resaying**
12:24
**response**
6:18
**rest**
8:20
9:19
**reveal**
16:5

**review**
7:5,6,8
8:4,9,
22 25:2
**reviewed**
21:6
**reviewing**
8:12,
14,18
**Richard**
4:8
25:20
**Richmond**
4:9
**rules**
5:15

────────
**S**
────────

**scale**
24:11
**science**
8:23
9:5,7,
11,13,
18,21
16:14
19:23
**scientist**
14:23
**scope**
11:5,
11,15
13:15
23:25
**seeking**
22:16

**sense**
20:10
**sentence**
10:22,
23
**sentences**
11:7
21:4,8,
13
**separately**
8:16
**series**
11:22
15:16,
19
**sessions**
17:6
**share**
12:12
**shared**
9:25
13:12,
13 15:2
**sheet**
7:11
**shorter**
5:17
**shortly**
25:21
**side**
6:13
**signature**
7:22
8:1,5
**signed**

6:7
10:4
23:1
**similar**
15:21
**simple**
20:2
**simply**
14:13
**single**
21:1
**single-page**
15:6
**slight**
12:3
**Snap**
11:3,5,
11,15
13:8,9,
25 14:3
21:11,
15
22:2,16
23:1,4,
7,9,13
24:5
26:9
**Snap's**
9:2,14
**Snapchat**
8:21
17:17
20:5
21:8,9
24:17
**Snapchat's**
9:2

19:15
**sort**
12:16
**Sounds**
26:8
**speak**
9:2,13,
15,22
**specific**
8:20
9:24
**specifically**
9:4
17:12,
13
20:11
**spell**
5:7
**spent**
17:2
**spoke**
9:25
**squiggly**
18:1
**start**
18:18,
19
**started**
24:8
**starts**
18:9
**state**
4:13
5:7,12
20:11,
23 22:2
23:23
24:12

25:18
**States**
22:11
**steps**
21:11
23:7,9
24:5
**stick**
12:8
**strategy**
22:21
**strike**
14:10
**stuff**
23:13
**submitted**
21:24
**suit**
22:16
**supposed**
17:4
**swear**
4:18,20
**sworn**
5:2

────────
**T**
────────

**talked**
9:10
16:10
**talking**
9:11
15:1
20:8
**team**
8:23
9:5,7,

David Boyle
April 11, 2025                                                                    8

11,13,
18,21
16:14
19:23
22:9

**Teller**
4:14
6:23
7:1
12:2
14:6
16:1
21:17
22:18
23:15
24:7,20
25:1,6,
8,9,14
26:9

**test**
24:9,11

**testified**
5:3
13:8

**testify**
12:5
16:7

**testifying**
11:15
19:16

**testimony**
4:20
10:6
14:14

**the--**
23:17

**thing**
22:5

**third-party**
24:9,17

**thousands**
21:1

**time**
4:2 7:4
8:25
15:16,
19 17:2
25:25

**times**
11:18

**today**
4:21
8:13,17
15:2
26:1

**told**
11:25

**Tolles**
4:15

**top**
6:8
7:15
18:11,
25 19:2
20:6

**topic**
9:24

**touch**
25:20

**transcript**
7:7,8,
12

25:3,17
26:3,6

**treat**
6:23

**truth**
4:21,22

**turn**
6:5
8:16
10:15
14:11

**Turning**
19:13

**two-hour**
17:6

---

**U**

---

**understand**
5:21,22
12:1
17:12

**understandable**
16:16

**understanding**
11:24
12:4,17
13:6,7,
14
17:4,9

**undertake**
24:9

**undertook**
24:5

**United**
22:11

**user**
13:12
14:3
17:13,
20

**users**
9:22
16:25
17:5,7,
12
18:3,10
19:15,
18

**Uthmeier**
4:6,13
5:11

---

**V**

---

**vague**
14:6
24:7

**vendors**
24:10

**verbal**
6:18

**verification**
24:10,
17

**version**
15:17

**versus**
17:22

**video**
25:16,
17

**video-recorded**
4:3

**videoconference**
4:7

**videos**
23:20

---

**W**

---

**waiver**
13:4

**wanted**
13:3

**well-founded**
21:10

**words**
22:6

**work**
16:6

**worked**
12:10
16:16

**working**
24:14

**world**
22:10

---

**Y**

---

**year**
17:9

**years**
19:16,
19 20:4

**yellow**
18:23

19:4

---

**Z**

---

**Zoom**
4:6
5:19



Print Form

# Errata Sheet

Case Name: [                    ]          Case No. : [            ]

Deponent: Bartlett Cleland          Depo Date: [            ]

| PAGE | LINE | CHANGE | REASON |
|---|---|---|---|
| 4 | 25 | So help me God | misheard |
| 17 | 5 | "Ms. Twenge" not "Twingy" | typo |
| 25 | 1 | "Amendment" not "Amended" | typo |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |

Under Penalties of Perjury, I declare that I have read the foregoing document and that the facts stated in it are true.

15 Apr. 2025

DATE SIGNED

HANDWRITTEN SIGNATURE