UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CASE NO. 4:24-cv-00438-MW-MAF

COMPUTER & COMMUNICATIONS
INDUSTRY ASSOCIATION and
NETCHOICE,

        Plaintiffs,

v.

JAMES UTHMEIER, in his
official capacity as
Attorney General of the
State of Florida,

        Defendant.
_____/

REMOTE DEPOSITION OF

ALEXANDRA VEITCH

VOLUME 1 (Pages 1 - 28)

Thursday, April 17, 2025
10:03 a.m. - 10:32 a.m.

LOCATION:  Remote via Zoom
Washington, D.C.

Reported by:  Marquetta Edwards
Notary Commission RON/TX 135116657

Job No.:  402031

Alexandra Veitch
April 17, 2025

Page 2

APPEARANCES:

On behalf of Computer & Communications Industry
Association and Netchoice:

        Stearns Weaver Miller
        Highpoint Center
        106 East College Avenue
        Suite 700
        Tallahassee, Florida 32301

        BY:  DOUGLAS L. KILBY, ESQ.
        dkilby@stearnsweaver.com


On behalf of James Uthmeier, in his official capacity as
Attorney General of the State of Florida:

        Office of the Attorney General
        PL-01 The Capitol
        Tallahassee, Florida 32399

        BY:  JOHN M. GUARD, ESQ.
        john.guard@myfloridalegal.com


 On behalf of Google, YouTube, and Alexandra Veitch:
        Williams & Connolly, LLP
        680 Maine Avenue Southwest
        Washington, DC 20024


        BY:  ASHLEY W. HARDIN, ESQ.
        ahardin@wc.com

Also Present:

        Kenneth Inoa, Videographer

Alexandra Veitch
April 17, 2025

INDEX OF EXAMINATION

EXAMINATION:                                              PAGE

Testimony of Alexandra Veitch

Direct Examination by Mr. Guard                             5

Certificate of Oath                                        25
Certificate of Digital Reporter                            26
Read and Sign Letter                                       27
Errata                                                     28

INDEX TO EXHIBITS

DEFENDANT'S              DESCRIPTION                      PAGE

Exhibit 1      Declaration of Veitch of 10/29/2024    6

Exhibit 2      Transcript of Veitch of 12/18/2024     7

Exhibit 3      Declaration of Veitch of 03/28/2025    8

(Original exhibits included with original transcript.)

Alexandra Veitch
April 17, 2025

Page 4

Proceedings began at 10:03 a.m.:

THE VIDEOGRAPHER:  The time is 10:03 a.m. eastern time on April 17th, 2025 and we're going on the record for the remote video deposition of Alexandra Veitch in a matter of Computer & Communications Industry Association v. James Uthmeier, OAG.

My name is Kenneth Inoa.  And I'm the legal videographer on behalf of Lexitas.

Will Counsel please introduce themselves and state their firm and who they represent, beginning with the party noticing this proceeding.

MR. GUARD:  Good morning.  John Guard on behalf of James Uthmeier, the Attorney General of state of Florida.

MS. HARDIN:  Ashley Hardin, Williams & Connolly on behalf of Google, YouTube, and the witness.

MR. KILBY:  Doug Kilby, Stearns Weaver Miller, on behalf of the plaintiffs.

THE VIDEOGRAPHER:  If that concludes our introductions, will the court reporter please swear or affirm in the witness?

THE REPORTER:  And witness, please raise your right hand.  Do you swear or affirm the testimony you're about to give is the truth, the whole truth,

Alexandra Veitch
April 17, 2025

Page 5

and nothing but the truth?

THE WITNESS:  I do.

Thereupon:

ALEXANDRA VEITCH,

having been first duly sworn, was examined and testified

as follows:

THE REPORTER:  Counsel, you may now proceed.

DIRECT EXAMINATION

BY MR. GUARD:

Q.   Good morning, Mrs. Vietch.  As you know, my name is John Guard, and I represent the attorney general of the state of Florida.  I deposed you before, correct?

A.   Correct.

Q.   All right.  And I should have done this with the first question, but can you please state your full name and spell your last name for the record.

A.   Yes, sir.  Alexandra Norris Veitch, V as in victor, E-I-T-C-H.

Q.   Thank you.  I expect this deposition will be slightly different from our last deposition in December.  I expect that it will, one be much shorter.  But I also expect because this deposition is by Zoom, we both need to be a little extra careful.

And what I mean by that is because this is by video we have to be careful of not talking over each

Alexandra Veitch
April 17, 2025

Page 6

other so that the court reporter can get everything down.
Do you understand that?

A.    Yes, sir, I do.

Q.    Okay.  Now, my colleagues sent the plaintiffs
in this case three documents and asked them to send them
to you or your lawyers.  Do you happen to have those
three documents?

A.    Yes, sir, I do.

Q.    Okay.  The first one I'm going to talk about
briefly that I would like you to look at and find is your
original declaration, which should be from October of
2024.  Do you have that document in front of you?

A.    Yes, sir, I do.

Q.    Okay.  I'm going to mark your original
declaration as Exhibit 1 to this deposition, and you
obviously seen Exhibit 1 before, correct?

        (Defendant's Exhibit 1 was marked for
    identification.)

A.    Yes, sir, I have.

Q.    All right.  And if you look at the last page,
which I believe is page -- I want to say it's page 21.
Your signature is on that last page, correct?

A.    It is.

Q.    All right.  And I got that right, the
declaration is 21 pages long?

Alexandra Veitch
April 17, 2025

Page 7

A.   Yes, correct.

Q.   All right.  To your knowledge, is any of the testimony contained in your original declaration, Exhibit 1, now untrue or inaccurate?

A.   No.

Q.   Okay.  All right.  You can please put that aside for now.  Next, you should have a copy of your deposition transcript from December 2024.  Do you have that document in front of you?

A.   Yes, sir, I do.

Q.   All right.  I'm going to mark your deposition from December for identification as Exhibit 2 to this deposition.  After you had your deposition, you had an opportunity to review Exhibit 2, correct?

        (Defendant's Exhibit 2 was marked for
     identification.)

A.   I have -- I have -- I have reviewed Exhibit 2 a number of times.  Yes.

Q.   Okay.  And you actually submitted or your counsel submitted an errata sheet with some minor errors in transcription, correct?

A.   Yes, and I have reviewed those as well.

Q.   Okay.  Other than those errors on the errata sheet, to your knowledge, is any of your prior testimony untrue or inaccurate?

Alexandra Veitch
April 17, 2025

Page 8

A.    No, I do not believe any of my prior testimony untrue or inaccurate, notwithstanding those small, minor errata.

Q.    Okay.  All right.  You can put that aside for now.  Next, you should have a declaration that I believe you signed recently.  Do you have that document in front of you?

A.    Yes, sir, I do.

Q.    All right.  I'm going to mark for identification that declaration as Exhibit 3 to this deposition.  Have you seen Exhibit 3 before?

        (Defendant's Exhibit 3 was marked for identification.)

A.    Yes, sir, I have.

Q.    All right.  And if you look at the last page of that declaration, does it bear your signature?

A.    Yes, sir, it does.

Q.    All right.  And how many pages long is Exhibit 3?

A.    24.

Q.    Okay.  So I'm going to do the math for you.  By my calculation, Exhibit 3 is roughly three pages longer than Exhibit 1, your original declaration, is that correct?

A.    Two Liberal Arts majors doing math is a

Alexandra Veitch
April 17, 2025

Page 9

dangerous thing, sir, but, yes, I believe that is correct.  24 minus 21 is three.

Q.    Okay.  All right.  Were you involved in drafting Exhibit 3?

A.    Yes, sir, I was.

MS. HARDIN:  Objection to form.

BY MR. GUARD:

Q.    Did you review Exhibit 3 before you signed it?

A.    Yes, sir, I did.

Q.    In preparing Exhibit 3, what additional documents did you review?  And by additional documents, I mean documents that weren't included in Exhibit 1.

MS. HARDIN:  Objection to form.

THE WITNESS:  Yes, sir.  There are a number of new references in this declaration at some public facing materials about how YouTube works as I recall that I reviewed as part of the drafting of this declaration.

BY MR. GUARD:

Q.    Okay.  In addition to those public facing documents, did you review any other documents in preparing Exhibit number 3?

MS. HARDIN:  Objection to form.

THE WITNESS:  Other documents?  No, not that I recall.

Alexandra Veitch
April 17, 2025

Page 10

BY MR. GUARD:

Q.   Okay.  And at the end, the first part of this question is very important, other than counsel -- so I don't want to hear about either Google or YouTube's counsel or anything that you discussed with Ms. Hardin or Williams & Connolly, did you speak to anyone about the information contained in Exhibit 3?

MS. HARDIN:  Objection to form.

THE WITNESS:  I, I want to make sure I'm answering your question very precisely.  So, Mr. Guard, do you mean in specifically the preparation of this declaration or in preparation for my appearance here today?

BY MR. GUARD:

Q.   I was going to get to the second question in a minute, but I was asking the first question.  So in preparation of the actual declaration, Exhibit 3, did you speak to anyone about the information contained in there other than your counsel?  And I've defined that fairly broadly.

A.   Thank you for clarifying.  No, I did not.

Q.   Okay.  Other than counsel -- and again, I'm doing that broad to include both Williams & Connolly and Google and YouTube -- did you speak to anyone about your appearance here today?

Alexandra Veitch
April 17, 2025

Page 11

MS. HARDIN:  Objection to form.

THE WITNESS:  Yes, I did.

BY MR. GUARD:

Q.   Who did you speak to?

A.   I, I spoke to two people that I recall.  I recall making my manager aware that I would be appearing here today and that there would be time investment acquired.  And I spoke to a Google data scientist.

Q.   What is the name of your manager?

A.   Leslie Miller.

Q.   Okay.  And what is the name of the Google data scientist?

A.   Pierre Kremp.

Q.   How do you spell that last name if you know?

A.   I think it is, K-R-I-M-P (sic).

Q.   Okay.  And what department, if you know, does Mr. Kremp work in?

MS. HARDIN:  Objection to form.

THE WITNESS:  I don't know.

BY MR. GUARD:

Q.   Okay.  Do you know what Mr. Kremp's title is at Google?

MS. HARDIN:  Objection to form.

THE WITNESS:  I do not know what his formal title is.

BY MR. GUARD:

Q.    And what did you speak to Mr. Kremp about?

A.    Generally speaking, I spoke to Mr. Kremp about what data YouTube has about -- well, how we define daily active user, which is a term that, that we use at YouTube.

And then at a very general, high level, what data we have about usage patterns for our daily activities.

Q.    Okay.  And from your recollection, How does YouTube utilize the word daily active user?

MS. HARDIN:  Object to form.

THE WITNESS:

BY MR. GUARD:

Alexandra Veitch
April 17, 2025

Page 13

Q.   Okay.  All right.  When you were talking to Mr. Kremp about daily active users, did you learn or did he tell you about what kind of data YouTube keeps about its daily active users?

MS. HARDIN:  Objection to form.

THE WITNESS:  At a high level, I -- we did have a conversation about -- yes, some of the data that we keep about our daily active users.

BY MR. GUARD:

Q.   Okay.  Does YouTube, based on this conversation or from other information that you may have learned, keep data on how long its users utilize YouTube?

MS. HARDIN:  Objection to form.

THE WITNESS:  And, and sir, just let me clarify.  You mean -- by how long, you mean how long in the course of a single day?

MR. GUARD:  Yes.

THE WITNESS:  Okay.

MS. HARDIN:  Same Objection.

THE WITNESS:  Could I just ask you to ask me that question again?

BY MR. GUARD:

Q.   I'll try my best.  Either from your conversation with Mr. Kremp or from other information that you've learned in the course of your employment,

Alexandra Veitch
April 17, 2025

Page 14

does YouTube keep track with how long its users utilize YouTube on just a -- because you asked the clarification, which is on a day?

MS. HARDIN:  Objection to form.  You can answer.

THE WITNESS:  Thank you for restating the question.  So, yes, with some caveats.  YouTube has some visibility into how long a daily active user uses YouTube on a single day.

I, I would note, because I think caveats -- I want to give you a full picture here and so the caveats are important.

That we don't necessarily -- we don't keep that data beyond certain periods of time, that data actually belongs to our users themselves and so they can delete that data.

But yes, there are -- there are periods of time for some users for which we have that data.

BY MR. GUARD:

Q.   Okay.  Either from Mr. Kremp or from some other source other than your counsel, what time frame do you keep usage data like that we were talking about in the previous question?

MS. HARDIN:  Objection to form.

THE WITNESS:  Yes.  So for users who do not,

Alexandra Veitch
April 17, 2025

Page 15

again, do not delete their own data because its their data and they are entitled to delete that.  I believe we keep that data for 30 days.

BY MR. GUARD:

Q.   Okay.  **When it comes to usage data like we're talking about, does YouTube keep track of the demographic characteristics of those users?  And by demographic characteristics, I mean things like their age.**

MS. HARDIN:  Objection to form and scope.  You can answer if you know.

THE WITNESS:  So you and I have previously discussed, I believe we had, that when our users create accounts, they provide us with a declared age.

So we have the declared age of our users.  I have not seen -- so stipulating that -- I have not seen and I am not aware of data that subdivides watch time daily active user into sort of the sub demographic buckets that you provide by age, for example.  I am not aware of that data.

BY MR. GUARD:

Q.   Okay.  **And since I got a scope objection.  If you'll look to paragraph 10 of your declaration, Exhibit number 3.**

A.   Yes, sir.

Alexandra Veitch
April 17, 2025

Q.   Okay.  And if you look at, I believe it's the first sentence of that page.  I want you to read this in it, so not out loud, just to yourself.

A.   Yes, sir.

Q.   Okay.  In the first line of that sentence, it mentions demographics, and demographic change is what it says.  What did you mean by demographics as utilized in paragraph 10 of your declaration, Exhibit number 3?

A.   So one thing I meant here is that it really depends on the time horizon, for example, you know, the time horizon that you are looking at.  So, for example, our usage patterns at 3:00 a.m. in the state of Florida look different than our usage patterns at 9:00 a.m.

Or our usage patterns in the state of Florida, I would think, look different the week between Christmas and New Year's than they do, perhaps this week.

And the, the usage of YouTube is not entirely steady over, over time.  So it changes within a day, across the course of a year, different behaviors by different demographics.

Q.   Okay. And I appreciate that.  And that shaves off a couple of questions here.  But you utilize this declaration in paragraph 10, the word demographics.  And I guess what I'm asking to you, how does YouTube cut up the data?

Alexandra Veitch
April 17, 2025

Page 17

Does it cut it up by age?  Does it cut it up by -- demographics can mean sex.  It can mean race, ethnicity.  It could mean a whole host of things.  And you use the word demographics here, and I'm just asking you, from YouTube's perspective, what demographics is it collecting data on?

MS. HARDIN:  Objection to form.

THE WITNESS:  So I don't have that level of granularity based on my conversation with Mr. Kremp or, or other knowledge.

BY MR. GUARD:

Q.  Okay.  If you're continuing on in that sentence you talk about younger than 16.  Do you see that?

A.  Yes, sir, I do.

Q.  All right.  Did you talk with Mr. Kremp or do you know from another source other than your counsel about whether YouTube monitors data regarding usage of people that are younger than 16 based on their declared age?

MS. HARDIN:  Objection to form.

THE WITNESS:  Not that I'm aware of, sir.

BY MR. GUARD:

Q.  Okay.  Does YouTube have the ability with the data that it collects to query or otherwise generate data on usage of people younger than the age of 16?

Alexandra Veitch
April 17, 2025

Page 18

MS. HARDIN:  Objection to form.

THE WITNESS:  Sir, with -- I really want to be helpful here, but I'm not a data scientist.  I'm a policy professional so I don't feel qualified to answer that question.

BY MR. GUARD:

Q.  And if you don't know, that's -- I can only ask you questions that you happen to have knowledge on.  Where did the information in paragraph 10 of your declaration come from?

MS. HARDIN:  Objection to form.  And I will instruct you, Ms. Veitch, I think Mr. Guard's been clear today, he's not trying to get into conversations with --

(Audio cuts off.)

MS. HARDIN:  But you may answer this question only to the extent that --

(Audio cuts off.)

MS. HARDIN:  -- without revealing the content of communication with counsel, broadly speaking.

THE WITNESS:  So broadly speaking, the information in this declaration comes from publicly available sources, which I think we footnoted extensively, and conversations I've had with counsel.

Alexandra Veitch
April 17, 2025

Page 19

BY MR. GUARD:

Q.   Okay.  Paragraph number 10 doesn't have any sources in it.  I just want to understand where you got -- you've sworn this is true and correct, right?

A.   Correct.

Q.   All right.  And I'm just trying to understand where you got personal knowledge of the information contained in paragraph 10.

MS. HARDIN:  Same instruction about not revealing the content of communications with counsel in speech.

THE WITNESS:  So paragraph 10 is what I would call a rich text.  There's a lot to it.  And, and so I think we're just staying focused on -- for right now.  The first sentence of paragraph 10, is that correct, Mr. Guard?

BY MR. GUARD:

Q.   I was broadening it, but I'm happy to focus on and do this sentence by sentence if it is better or easier for you.  So let's go to the first sentence.  Where did your -- you've sworn this is true and correct.  Where did you get the information in this first sentence of paragraph 10 of Exhibit 3?

MS. HARDIN:  Same instruction.  And objection to form.

Alexandra Veitch
April 17, 2025

Page 20

THE WITNESS:  So there are a number of reasons that we say it is difficult for YouTube to conclusively determine whether this element of HB 3 applies.

And, and one of those reasons that we've discussed here today is that we use a different definition of daily active users than HB 3 uses.

And we track our data very differently than HB 3 specifies.  I do not know that we have at hand the -- what I know is that we do not have at hand.  Let me -- let me be more affirmative and precise.  For you.

We do not have at hand the conclusive determination of whether 10 percent of our daily active users who are under the age of 16 -- daily active users in your definition, spend on average two hours per day or longer on our service.

That is one reason we find it difficult to make this conclusive determination.

BY MR. GUARD:

Q.   Okay.  And coming to that conclusion that it's difficult for YouTube to determine.  Did you speak with someone like Mr. Kremp?  Did you look at some internal documents?  I'm just trying to understand -- you signed a declaration and swore something is true.  I'm just trying

Alexandra Veitch
April 17, 2025

Page 21

to understand where that information came from.

A.   Yes.  So, Mr. Kremp was very clear with me about what I just said, which is that we do not have this data organized in a session.

Q.   Okay.  So that first sentence that we've been talking about, the basis of you saying that YouTube can't conclusively determine is from a discussion with Mr. Kremp?

MS. HARDIN:  Objection to form.  Misstates the testimony.

MR. GUARD:  You can answer.

THE WITNESS:  Yeah, I do.  Just want to be careful here because what I put in my testimony is that it is difficult to conclusively determine.

Yes.  The, the answer to why I put in my testimony that it is difficult for YouTube to make that conclusive determination is based on both my conversation with Mr. Kremp, conversations I've had with counsel, and also knowledge I have as a layperson from a data scientist perspective in my role.

BY MR. GUARD:

Q.   Okay.  I don't know if I asked this because I think we -- because of something you said, I jumped ahead, but is the material that was added to your prior

Alexandra Veitch
April 17, 2025

Page 22

declaration, Exhibit 1, is it the material that's mainly contained in paragraph 6 through 11 of Exhibit 3?

MS. HARDIN:  Objection to form.

THE WITNESS:  Sir, I think that is a critical portion of what's added.  But I also believe, if I just look at this declaration here, paragraphs 49 and 50 are new.

I've looked -- I've looked at both the older declaration, the new declaration, a red line of the declaration showing the differences.  That's what I recall off the top of my head.

BY MR. GUARD:

Q.  Okay.  All right.  I appreciate that, but I think paragraphs 5 through eleven is about two and a half pages of material, and I think we agree that it was a total of three and a half.  So I appreciate that there's two paragraphs at the end as well.

Was any of the material contained in paragraphs 5 through 11 of Exhibit 3 unknown to Google or YouTube prior to your original declaration?

MS. HARDIN:  Objection to form.

THE WITNESS:  Just -- I just would like to --

MR. GUARD:  Sure, definitely can.

THE WITNESS:  Despite having -- despite being very familiar with these, I just want to re

Alexandra Veitch
April 17, 2025

Page 23

familiarize myself briefly.

MR. GUARD:  Sure.

THE WITNESS:  So, no, I do not believe any of this in paragraphs 5 to 11 was previously unknown to Google.

MR. GUARD:  Okay.  I don't think I have any further questions.

MS. HARDIN:  Thank you, Mr. Guard.  We will read and sign.  And I think what we did last time was -- well, actually, I don't think.  I was going to say about the confidentiality designation, but we'll just reserve on that.  I think we have seven days?

MR. GUARD:  Well, the problem here is in obviously Mrs. Veitch's schedule forced this deposition to be a little bit later.  I think we have a filing that's due on the 21st.

I think sitting here right now, the main thing we're going to use is that last answer.  So if you can let me know if you think that's confidential or not.  If you can take a day or two to do that.  We have to file something on court on the 21st.

MS. HARDIN:  Sure.  We will let you know prior to the 21st about that last sentence, that last Q and A.

Alexandra Veitch
April 17, 2025

Page 24

MR. GUARD:  Okay.

THE VIDEOGRAPHER:  Counsel, before we go off the record, can I get your video and transcript orders on the record?

MR. GUARD:  We're going to be ordering the transcript.  We'll let you know on the video.

THE VIDEOGRAPHER:  All righty.

MS. HARDIN:  Same for YouTube.

THE VIDEOGRAPHER:  All righty.  Everyone stand by.  The time is 10:32 a.m.  We are going off the record.

(Deposition concluded at 10:32 a.m.)

Alexandra Veitch
April 17, 2025

Page 25

CERTIFICATE OF OATH

STATE OF FLORIDA

COUNTY OF LEON

I, the undersigned authority, Marquetta Edwards, Notary Public, certify that ALEXANDRA VEITCH remotely appeared before me and was duly sworn on April 17, 2025.

WITNESS my hand and official seal this 18th day of April 2025.

*Marquetta Edwards*
_____
Marquetta Edwards
Notary Commission RON/TX 135116657
Commission Expires: October 3, 2028

Alexandra Veitch
April 17, 2025

Page 26

CERTIFICATE OF DIGITAL REPORTER

I, MARQUETTA EDWARDS, a Digital Reporter and Notary Public within and for the State of Florida, do hereby certify:

That the foregoing proceeding hereinbefore set forth was accurately captured with annotations by me during the proceeding.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS THEREOF, I have hereunto set my hand this 17th day of April, 2025.

_Marquetta Edwards_

_____
Marquetta Edwards, Notary
Notary Commission RON/TX 135116657
Commission Expires: October 3, 2028

Alexandra Veitch
April 17, 2025

Page 27

APRIL 18TH, 2025

ALEXANDRA VEITCH c/o ASHLEY W. HARDIN, ESQ.
680 MAINE AVENUE SOUTHWEST, WASHINGTON, DC 20024
IN RE: COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION and
NETCHOICE v. JAMES UTHMEIER, in his official capacity as
Attorney General of the State of Florida
CASE NO.: 4:24-cv-00438-MW-MAF

Please take notice that on the 17th day of April 2025,
you gave your deposition in the above cause. At that
time you did not waive your signature.

The above-addressed attorney has ordered a copy of
this transcript and will make arrangements with you to
read their copy. Please execute the Errata Sheet,
which can be found at the back of the transcript, and
have it returned to us for distribution to all parties.

If you do not read and sign the deposition within 30
days, the original, which has already been forwarded to
the ordering attorney, may be filed with the Clerk of
the Court.

If you wish to waive your signature now, please sign
your name in the blank at the bottom of this letter and
return it to the address listed below.

Very truly yours,

Marquetta Edwards
Lexitas Legal
fl.production@lexitaslegal.com
I do hereby waive my signature.

_____
Alexandra Veitch
Job No.:  402031

Alexandra Veitch
April 17, 2025

Page 28

ERRATA SHEET

DO NOT WRITE ON THE TRANSCRIPT
ENTER CHANGES ON THIS SHEET

COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION and
NETCHOICE v. JAMES UTHMEIER, in his official capacity as
Attorney General of the State of Florida
Deponent:  ALEXANDRA VEITCH
Date of Deposition:  April 17, 2024
Case No.:  4:24-cv-00438-MW-MAF

PAGE          LINE                    REMARKS

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Under penalties of perjury, I declare that I have read
the foregoing document and that the facts stated in it
are true.


Signature of Witness: _____

Dated this _____ day of _____ , _____

Email to fl.production@lexitaslegal.com
Job No.:  402031

Alexandra Veitch
April 17, 2025

Alexandra Veitch
April 17, 2025

Alexandra Veitch
April 17, 2025

Alexandra Veitch
April 17, 2025

Alexandra Veitch
April 17, 2025

Alexandra Veitch
April 17, 2025