UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

CASE NO.:  4:24-CV-00438-MW-MAF

COMPUTER & COMMUNICATIONS
INDUSTRY ASSOCIATION and
NETCHOICE,

Plaintiffs,
vs.

JAMES UTHMEIER, in his official
capacity as Attorney General of
the State of Florida,

Defendant.
_____/

REMOTE VIDEO-RECORDED DEPOSITION OF

BARTLETT CLELAND

Thursday, April 10, 2025
10:10 a.m. - 10:44 a.m.

Remote via Zoom

Stenographically Reported By:
Cassie O. May, RMR, CRR

Job No.: 401939

Bartlett Cleland
April 10, 2025

Page 2

REMOTE APPEARANCES:

On behalf of Plaintiff:

    CLEMENT & MURPHY, PLLC
    706 Duke Street
    Alexandria, Virginia  22314
    (202) 742-8900
    BY:  Kevin Wynosky, Esquire
    kevin.wynosky@clementmurphy.com

On behalf of Defendant:
    OFFICE OF THE ATTORNEY GENERAL
    400 South Monroe Street
    PL-01 The Capitol
    Tallahassee, Florida  32399
    (850) 414-3300
    BY:  John Guard, Chief Deputy Attorney General
    john.guard@myfloridalegal.com

ALSO PRESENT:  Richard McNulty, Videographer

Page 3

EXAMINATION INDEX

Testimony of Bartlett Cleland
    Direct Examination by's Mr. Guard    5
    Certificate of Oath    32
    Certificate of Reporter    33
    Errata Sheet    34
    Witness Review Letter    35

EXHIBIT INDEX

EXHIBIT NO.    PAGE NO.
1    Declaration of Bartlett Cleland in    7
    Support of Plaintiffs' Motion for
    Preliminary Injunction
2    12/10/24 Transcript of Bartlett Cleland    8
3    Declaration of Bartlett Cleland in    9
    Support of Plaintiffs' Renewed Motion for
    Preliminary Injunction

    Stenographer's Note:  Three (3) exhibits
marked and attached.

Page 4

Proceedings began at 10:10 a.m.:

THE VIDEOGRAPHER:  The time is 10:00 a.m.  We are now on the record.  This is the video-recorded deposition of Bartlett Cleland in the matter of Computer & Communications Industry Association and NetChoice versus James Uthmeier.

The deposition is being in Zoom videoconference on April 10, 2025.  The videographer is Richard McNulty and the court reporter is Cassie May, both in association with Lexitas.

Will counsel please announce their appearances for the record.

MR. GUARD:  John Guard, Chief Deputy Attorney General, on behalf of James Uthmeier, the Attorney General of State of Florida.

MR. WYNOSKY:  For plaintiffs, Kevin Wynosky of the law firm Clement & Murphy.

MR. GUARD:  Can you swear the witness.

THE STENOGRAPHER:  Will you raise your right hand to be sworn.

Do you swear or affirm that the testimony you give will be the truth, the whole truth, and nothing but the truth?

THE WITNESS:  Well and beyond.

Page 5

BARTLETT CLELAND,
    Being sworn in accordance with the law, was examined and testified as follows:

DIRECT EXAMINATION

BY MR. GUARD:

Q    Good morning, Mr. Cleland.  Can you please state your name and spell your last name for the record.

A    Bartlett Dean Cleland, C-L-E-L-A-N-D.

Q    Mr. Cleland, as you know, my name is John Guard and I represent the Attorney General State of Florida.  I deposed you back in December, correct?

A    Yes.

Q    And as was done with the prior depositions including your prior deposition, there is an agreement between counsel that if your counsel has an objection to any of the questions I ask, he is going to object to form and that will preserve all of the objections from that.

MR. GUARD:  Is that sufficient, Mr. Wynowsky?

MR. WYNOSKY:  That's consistent with our agreement.  Thank you.

BY MR. GUARD:

Q    Okay.  All right.  When I deposed you before, at least this deposition compared to that one should be comparatively brief.  You have already heard me say that

Bartlett Cleland
April 10, 2025

Page 6

it is going to be an hour. That being said, kind of all the other ground rules that we had from that deposition kind of still apply. You understand?

A   Yes. Let me ask a quick mechanical question. Can you hear my counsel well enough?

Q   Yes.

A   I just wanted to know if I need to adjust --

Q   No problem. There is going to be one difference from the deposition in December compared to the deposition we are taking today and that's we are on Zoom, and that makes things a little bit more difficult and we are both going to have to be a little bit more patient and careful about talking over each other because there is a little slight lag between when, you know, you stop and I -- you know, when it comes over on my microphone. So I just ask you to be careful and what's -- so that make sure the court reporter can take this down, okay?

A   Yes, sir.

Q   All right. And I asked your counsel to provide you with three documents. Do you have them?

MR. WYNOSKY: We have them over here on the table. They are not in front of the witness currently.

MR. GUARD: Okay. Can you put them in front

Page 7

of the witness.

BY MR. GUARD:

Q   All right. The first document is your original declaration signed by you on, I believe, October 29, 2024. Do you have that document?

A   Yes, I do.

Q   All right. I am going to mark that document for identification as Exhibit 1 to this deposition.

(Exhibit No. 1 marked for identification.)

BY MR. GUARD:

Q   And Exhibit 1 is, I believe, 23 pages long; is that correct?

A   That's how it's marked, yes.

Q   And the last page of Exhibit 1 bears your signature?

A   It does. Yes, it does.

Q   Why don't you put that one to the side. I am going to kind of run through the exhibits first and then ask you some questions.

The second document hopefully that you have is your deposition, which I believe was taken on December 10, 2024. Do you have that document in front of you?

A   I do.

Q   All right. I am going to mark that document

Page 8

for identification as Exhibit 2 to your deposition.

(Exhibit No. 2 marked for identification.)

BY MR. GUARD:

Q   After your deposition, you had the opportunity to review Exhibit 2, correct?

A   I did, yes.

Q   Okay. And did you actually review Exhibit 2?

A   Absolutely, yes.

Q   Okay. All right. As we sit here and now, is there anything other than what's on the errata sheet that was -- that you think is inaccurate or incorrect in your deposition?

MR. WYNOSKY: Object to the form.

A   Not to the best of my knowledge.

BY MR. GUARD:

Q   Okay. If you want to set that aside, maybe next to Exhibit 1, because we may go back and forth between documents depending on how this goes.

The third document you should have is a declaration that was signed on March 28, 2025, and it also has a line across the top indicating it was filed on March 28, 2025. Do you have that document in front of you?

A   I do.

Q   All right. I am going to mark that document

Page 9

for identification as Exhibit 3 to your deposition.

(Exhibit No. 3 marked for identification.)

BY MR. GUARD:

Q   Have you ever seen Exhibit 3 before?

A   Yes.

Q   How many pages are there in Exhibit 3?

A   It's marked as 33 pages on the front and -- yeah, 33 pages.

Q   All right. So Exhibit 1 had 23 pages and Exhibit 3 has 33 pages, so not that math is my strong suit, but I think I can handle this one. So the difference between the two declarations is ten pages of additional material approximately, correct?

A   Correct.

Q   If you will look at page 33 of Exhibit 3, is that your signature on that page?

A   It is.

Q   Okay. What was your involvement in preparing Exhibit 3?

A   Same as last time: Reviewed all of the material, reviewed the declarations of our members, reviewed the material that your experts had submitted, and then -- yeah, so I guess that was the involvement in the declaration.

Q   Okay. Other than those documents that you

Bartlett Cleland
April 10, 2025

Page 10

just mentioned, did you look at any other documents in the process of preparing Exhibit 3?

A    I double-checked the items we linked to in -- not actually in particular.  I looked at all the items we linked to, some of them more than once, but yeah.

Q    Did you look at the amended complaint that was filed, I believe, on that same day?

A    Yes.

Q    Okay.  Other than your counsel, did you speak to anyone about any of the contents in Exhibit 3?

MR. WYNOSKY:  I am just going to preserve an objection consistent with Mr. Guard's instructions that when you answer this line of questions not to divulge any privileged information.

A    I'm sorry, John.  Can you ask that one more time.

BY MR. GUARD:

Q    Sure.  Other than your counsel, so I'm excluding attorney-client communications, did you speak to anyone about the contents of Exhibit 3?

A    I did not.

Q    All right.  Now, the amended complaint, which you said that you looked at, seeks an injunction against the Attorney General of Florida preventing him from enforcing HB 3 against NetChoice's members, correct?

Page 11

A    Correct.

Q    Specifically you are seeking an injunction to prevent enforcement of HB 3 against, among others, Meta, Google, and Snap, right?

MR. WYNOSKY:  Object to the form.

A    Correct.

BY MR. GUARD:

Q    Okay.  And Meta, Google, and Snap are all members of NetChoice, correct?

A    They are.

Q    Okay.  Did you ever call Meta and seek information about its products or their usage?

MR. WYNOSKY:  I am going to interpose an objection to the extent this question calls for privileged information.  The witness can answer.

BY MR. GUARD:

Q    Mr. Cleland, do you represent Meta as -- because you are an attorney?

A    No, I don't represent Meta.

Q    Okay.  Have you -- did you yourself call Meta and seek information about its products or their usage?

A    In seeking to -- for inclusion or for preparation of this declaration, is that my understanding?

Q    Sure.

Page 12

A    Okay.  Then no.

Q    And Meta itself has not filed a declaration in this matter, correct?

A    That is my understanding.

Q    Okay.  And as far as Meta, your declaration, Exhibit 3, relies on primarily public-facing documents published by Meta, at least as the declaration pertains to Meta?

MR. WYNOSKY:  Objection to the form.

A    And your expert's declaration.

BY MR. GUARD:

Q    Okay.  All right.  That's why I used the word "primarily," but okay.

A    Sure.

Q    All right.  And Meta itself has not sued the Attorney General of Florida seeking an injunction on its own behalf, correct?

A    I don't know.

Q    Okay.  And to your knowledge, has either Google or Snap filed their own action against the Attorney General of Florida seeking to enjoin the enforcement of HB 3?

MR. WYNOSKY:  Object to the form.

A    I don't know.

BY MR. GUARD:

Page 13

Q    And Google has filed two declarations in this matter, right?

A    In preparation for this -- my declaration or for their declaration and mine, is that what you are saying?

Q    No.  Are you aware that Mrs. Veitch has filed two declarations in this matter?

A    Yes.

Q    Okay.  I wasn't trying to trick you there.

And you reviewed at least one of Mrs. Veitch's declarations in preparation of this -- of your declaration, correct?

A    Yes.

Q    When you reviewed Mrs. Veitch's declaration, was it executed?

A    Yes, it was.

Q    Okay.  All right.  Have you ever spoken to Mrs. Veitch about HB 3?

A    I have not.

Q    Have you ever spoken to Mrs. Veitch about YouTube's users?

MR. WYNOSKY:  I am going to interpose an objection both to this question and to the last question to the extent any of this calls for privileged information.

Bartlett Cleland
April 10, 2025

Page 14

MR. GUARD:  Counsel --

BY MR. GUARD:

Q    I guess I haven't asked you yet.  Mr. Cleland, do you represent Google?

A    No.

Q    Mr. Cleland, do you represent YouTube?

A    No.

Q    Okay.  Have you ever spoken to Mrs. Veitch about the effect of HB 3's enforcement on YouTube?

A    I have not.

Q    Have you ever read Mrs. Veitch's deposition given in this case?

A    Her deposition, no, I have not.

Q    Have you called anyone else at Google or YouTube about HB 3?

MR. WYNOSKY:  Same objection and instruction.

A    Same question for me.  You mean in preparation of this or do you just mean in general have I ever talked to anyone --

BY MR. GUARD:

Q    Let's do it this way.  Since -- you gave an answer to that question in deposition.  Since your deposition in December -- on December 10, 2024, going forward to today, April 10, 2025, have you talked to anyone at Google or YouTube about the enforcement of HB

Page 15

3?

A    I have not.

Q    Okay.  All right.  Moving on to Snap.  Mr. Cleland, do you represent Snap?

A    I do not.

Q    Okay.  All right.  Snap has, through a gentleman named Mr. Boyle, has filed two declarations in this case, correct?

A    Correct.

Q    And you reviewed it -- have you reviewed those declarations?

A    I have.

Q    Okay.  When you reviewed the second declaration of Mr. Boyle, which would be the one that was filed most recently, was it executed?

A    Yes.

Q    Okay.  All right.  Have you ever spoken to Mr. Boyle about HB 3?

A    I have not.

Q    Have you ever spoken to Mr. Boyle about what HB 3's enforcement would do to Snap?

A    No, I have not.

Q    Okay.  Have you ever read Mr. Boyle's deposition taken in this case?

A    I have not.

Page 16

Q    Since your deposition on December 10, 2024, until today, April 10, 2025, have you ever called anyone at Snap to talk about HB 3?

MR. WYNOSKY:  Object to the form.

A    I have not.

BY MR. GUARD:

Q    Sitting here right now, Mr. Cleland, do you know when HB 3 went effective?

MR. WYNOSKY:  Object to the form.

A    Not with certainty, no.

BY MR. GUARD:

Q    Does January 1, 2025 seem like the date that it likely went effective?

A    That's probably right.  I have the signing date in my head, but yes, I think that's right.

Q    Okay.  You filed your -- if you look at Exhibit 1, your initial declaration was filed at the end of October in advance of it going into effect, correct?

A    Correct.

Q    Has your knowledge regarding either YouTube's or Meta's platforms or Snapchat changed from your previous deposition on December 10th?

MR. WYNOSKY:  Object to the form.

A    Yes.

BY MR. GUARD:

Page 17

Q    Okay.  In what ways has your knowledge changed?

A    So, make sure I try to be inclusive of that, so we have the declarations of our -- of NetChoice members, I have the material that Ms. Twingy has submitted, so all those declarations.

I have been here in my role longer so understand just more broadly exactly how -- well, not exactly how -- in general how NetChoice members, various members, operate, even though there is a lot of different ones and a lot of different operations; and then finally, you will recall last time actually, I mentioned something along the lines of Snap was the one I knew the least about so it got me curious about Snap, and I have spent not anything like exhaustive time, but I have spent time understanding how Snap operates, what you can do with it, maybe what the limitations are, but just played around with it.

Q    Okay.  And when you say that you tried to get an understanding of Snap, does that mean anything more than you downloaded the app and have tried to look at it and experience it?

A    That pretty much sums it up.

Q    All right.  I think -- I am just going to ask this question again, and I apologize if you have already

Bartlett Cleland
April 10, 2025

Page 18

testified to it.  Is it fair to say the main difference between your original declaration, Exhibit 1, and your new declaration, Exhibit 3, is that you added additional information?

MR. WYNOSKY:  Object to the form.

A    Yes, if I understand your question correctly.

BY MR. GUARD:

Q    Okay.  You didn't go through -- I am trying to save some time and not have to go through the entire 33 pages.  The main difference is you added roughly ten pages of material, correct?

A    Yes, that is correct.

Q    Okay.  And I think if you will turn to page 14 of Exhibit 3, and look at paragraph 21 -- let me know when you get there.

A    Sorry.  I was using the top numbers, not the bottom.  All right.  I'm sorry.  Paragraph 21, yes, I'm there.

Q    And if you look at, just quickly, paragraphs 21 through 24, and I know that's over several pages.

A    Yeah, that's a lot of pages.

Q    I can break it down --

A    There we go, yes.  Yes, I got it now.  Page 14 to page 23.

Q    Okay.  Those nine pages are all -- those

Page 19

paragraphs are all new, correct?

A    I don't have a redline in front of me, but yes, I believe the answer is yes.

Q    Well, if you want to look quickly at Exhibit 1, again, I'm not trying to trick you, I was just trying to --

A    Yes, that is -- wait.  Hang on.  Ask me that question again.

Q    Sure.  Paragraphs 21 through 24 were not included -- in Exhibit 3 were not included in Exhibit 1?

A    That is correct.

Q    There are at least nine pages of additional information, right?

A    Correct.

Q    Okay.  All right.  Now, the material in paragraphs 21 through 24 existed prior to your original declaration, right?

MR. WYNOSKY:  Object to the form.

A    Existed before my original declaration?

BY MR. GUARD:

Q    Yes.  You could have included -- let me strike that.  Let me ask it this way.

You could have included paragraph 21 in your original declaration if you so chose?

Page 20

MR. WYNOSKY:  Object to the form.

A    I believe -- I believe all of those declarations came after-- even after the last deposition.

BY MR. GUARD:

Q    Okay.  You are correct.  Ms. Veitch prepared a new declaration and, I guess, provided it to you.  Did you ask for Mrs. Veitch's original declaration when you were preparing your original declaration?

A    Did I ask, no.

Q    Okay.  All right.  And the same with Mr. Boyle, did you ask to see Mr. Boyle's declaration before you prepared your original declaration?

A    No.

Q    Let me ask it this way:  Obviously HB 3, or if you want to use -- since you -- in this declaration you used the section number, section 501.1736, the different elements to that statute existed prior to your declaration, right?

MR. WYNOSKY:  Object to the form.

A    Prior to my -- yes, they were approved by not in force, yes.

BY MR. GUARD:

Q    And you could have, if you so chose, gone through each of the elements with respect to NetChoice's

Page 21

members, right?

MR. WYNOSKY:  Object to the form.

A    I didn't have -- I'm not exactly sure what you are asking me so I will answer it this way and you tell me.  I didn't have the information in detail from the declarations, no, so I could not have included.

BY MR. GUARD:

Q    Okay.  But you also didn't ask to see those two members' declarations, right?

MR. WYNOSKY:  Object to the form.

A    I did not know they existed.

BY MR. GUARD:

Q    Oh, okay.  So you, when you were signing your original declaration, did not know that Snap and YouTube were preparing and executing declarations?

MR. WYNOSKY:  Object to the form.

A    To the best of my knowledge, the answer is no.

BY MR. GUARD:

Q    Okay.  I believe in -- and you can check this, but I believe your declaration talks about Meta, Snap, and Google using algorithms; is that correct?

A    Correct.

MR. WYNOSKY:  Object to the form.  Can I ask, Mr. Guard, are you referring to his Exhibit 1 or Exhibit 3?

Bartlett Cleland
April 10, 2025

Page 22

MR. GUARD:  I guess I can make it clear.

BY MR. GUARD:

Q    Your declaration Exhibit 3 makes reference to Meta, Google, and Snap having algorithms, correct?

A    Correct.

Q    What is your knowledge of the exact algorithms that either Meta, Google, or Snap utilize?

MR. WYNOSKY:  Object to the form.

A    I'm not sure what you mean by that.  What do you mean by "exact algorithms?"

BY MR. GUARD:

Q    What do you know about the algorithms that they use?

MR. WYNOSKY:  Object to the form.

A    I'm not trying to be difficult.  Do you mean the software programming?  I am unclear what you are asking.

BY MR. GUARD:

Q    Okay.  I believe -- we can break it down if that would be easier, but I believe in -- if you look at paragraph 15 -- excuse me -- paragraph 21, so 15 was yesterday.  Paragraph 21, subpart B --

A    Yes.

Q    -- on page -- it is actually page 15.  I guess I was right subliminally.  You talk about YouTube's

Page 23

algorithms, correct?

MR. WYNOSKY:  Object to the form.

A    At the -- yes.

BY MR. GUARD:

Q    Okay.  And I guess my basic question is what do you know about YouTube's algorithms?

MR. WYNOSKY:  Object to the form.

A    So what I will say is what is said here because I think this answers your question, that YouTube employs algorithms that analyze user data or information on users to select content for users.

BY MR. GUARD:

Q    Okay.  And so what you know about YouTube's algorithms is on this website or url; is that correct?

A    Correct, or their depositions.  I don't know anything about their trade secrets or any of that stuff that would generally protect algorithms.

Q    Okay.  And would the same be true as far as Meta and Snap, that your knowledge is kind of limited to what is either in their depositions, to the extent there have been a deposition, or some public-facing document that is on the web?

MR. WYNOSKY:  Object to the form.

A    My knowledge is grounded in their experts telling me what they do, yes.

Page 24

BY MR. GUARD:

Q    So have you had a discussion with Meta and Snap's experts?

A    Just these declarations as indicated before.

Q    Okay.  All right.  All right.  Well, you all of a sudden used the word "expert" and I was making sure I hadn't missed somebody that you had talked to.

A    I guess I made that assumption.  I assume these people are experts or the company wouldn't put them forward to explain what the company is doing.  My assumption.  Fair enough.

Q    No.  That's fine.  And is it your understanding -- and again, if it isn't, you can tell me it isn't, that the algorithms that these three companies use direct content to users based upon what the user is viewing?

MR. WYNOSKY:  Object to the form.

A    Again, what they have told me is what I understand.  And so yes, that is what they say.

BY MR. GUARD:

Q    Okay.  Are the algorithms themselves the platform's speech?

MR. WYNOSKY:  Object to the form.

A    Are the algorithms themselves the platform's speech?  That sounds like a First Amendment question.  I

Page 25

am not the First Amended expert, not what I am here for.  It probably also runs into other points of law, so interesting to see how the courts would decide.

BY MR. GUARD:

Q    Okay.  All right.  If you will turn to page 30 of your declaration.

A    Yes.

Q    The reason why I asked you that last question is, paragraph 30 in your declaration -- take a minute, you can review it, and then I will ask you some more questions.

A    Okay.

Q    Okay.  What First Amendment rights of NetChoice members are implicated by HB 3?

MR. WYNOSKY:  Object to the form.

A    So, easy enough to quote right from here, if this answers the question, but happy to say more, I guess, the creation and dissemination of information are speech.  And that's their -- that's the First Amendment right.

BY MR. GUARD:

Q    All right.  Is -- I'm just going to use one of them since there are three of them.  So Meta is employing an algorithm that directs content that is not its content, correct?

Bartlett Cleland
April 10, 2025

Page 26

MR. WYNOSKY: Object to the form.

A    To the best of my understanding, yes.

BY MR. GUARD:

Q    Okay. So I post a post on there about, you know, cute kitty cats. You are viewing posts of cute kitty cats. Meta's algorithm, because you are viewing that post, directs my picture of a cute kitty cat to you, correct?

MR. WYNOSKY: Mr. Guard, I am going to object both to the form and also to outside the scope. You are asking him about paragraph 30 in his new declaration. That paragraph is contained in his prior declaration. I think this thus falls outside the scope of permitted subjects for testimony today.

MR. GUARD: I actually didn't think all of it was included in his prior declaration, but let me quickly go and look at that.

MR. WYNOSKY: If I am misunderstanding something, I apologize, but if you are asking about what is numbered as paragraph 30 in his current declaration, I believe it appears entirely in his first declaration.

MR. GUARD: Okay. Maybe I may have made a mistake. I thought he had --

Page 27

I don't think the entire paragraph 30 is in the prior one, but I'm quickly --

Counsel, not the entire paragraph is in paragraph 27. If you want to take a couple minutes and look.

MR. WYNOSKY: Give me one minute here, please.

THE WITNESS: Could you hear that, John?

MR. GUARD: Yes.

THE WITNESS: I'm sorry. I am paranoid about my mic picking up stuff.

MR. WYNOSKY: Okay. So you are asking about paragraph 31 in his new declaration?

MR. GUARD: Sure.

MR. WYNOSKY: Okay. I'm sorry. I misunderstood. I thought we were talking about paragraph 30.

MR. GUARD: No. I am talking about 31. Sorry.

MR. WYNOSKY: All right. I apologize for that. Is there a question pending?

MR. GUARD: No. You had told me that it was, and I was going to curtail myself unless I was correct.

MR. WYNOSKY: If we are talking about what is now paragraph 31, you can proceed with your

Page 28

questions. I thought you were talking about paragraph 30.

MR. GUARD: Sorry. I am just trying to get back on the --

BY MR. GUARD:

Q    To your knowledge, do employees at Meta, Snap, or Google physically know the particular piece of content, in my example that I gave you before we got the interruption, my picture of a kitty cat is going to get forwarded to you, Mr. Cleland?

MR. WYNOSKY: Object to the form.

A    So let me give you this answer, and I'm honestly trying to answer your question. My understanding is probably deepest in this area when it comes to Facebook and particularly around the creation of the -- I don't want to forget the name -- oversight board. And so there were many appeals made to the oversight board over the years, and as they were creating it, they just looked at all kinds of I will call them policy conversations, policy conferences, explaining how things work and how their are checking of posts and whatnot works.

And so now, in the example of the kitty cat, it's likely fair to say that that doesn't get reviewed, although, I guess I could think of some ways that it

Page 29

might. But there are any number of instances where, yes, a human is involved in the review of content either in its initial posting, so before lots of people see it, sometimes in a very specific situation where content is seen like sent to a person. So, to me it's a mix of machine -- of machine or of tool use along with human activity.

Q    Okay. Would it be fair to say that the human activity part of this is smaller than the kind of -- the machine part of it?

MR. WYNOSKY: Object to the form.

A    I honestly don't think so. I mean, I can count that way and get there, sure, number of instances reviewed. I think that is a bogus way to look at things. I think the by far more appropriate and correct way to look at things is by the impact of that material.

Now, the good news is, when it comes to, say, CSAM, companies have gotten very good generically at taking down CSAM with reviewing the hash without going into all the details of that.

But also particularly in those cases, some of the material is reviewed to make sure that it is CSAM before they send it off to NCMEC as you see in some of the materials that we have. So there is review there.

But the impact of the stuff that's being

Bartlett Cleland
April 10, 2025

Page 30

reviewed, to me, far outstrips kind of the generic we are taking down spam or we are taking down CSAM, et cetera, because they are perhaps more insidious cases where it is on the edge and humans have to be involved.

Q   **Okay.  But I guess my question was, and I understand and appreciate that you may not agree with it, you know, the vast majority of pictures of things like kitty cats goes through without humans ever touching it, and which is the bulk of what is being transmitted on Facebook, to use your example --**

MR. WYNOSKY:  Object to the form.

A   I think using the example -- staying with the example of kitty cats, I think you are probably correct. I'm sorry.  The kitty cat example is hilarious, but well done, well done.

Q   **I have no further questions.**

MR. WYNOSKY:  I think it might help if we took maybe a five-minute break and reconvened.

THE VIDEOGRAPHER:  If it is good for everyone, go off the record.  The time is 10:36.  We are now off the record.

(Break from 10:36 a.m. until 10:43 a.m.)

THE VIDEOGRAPHER:  The time is 10:43.  We are now back on the record.

MR. WYNOSKY:  Mr. Guard, unless you have

Page 31

anything else, we have no further questions.  So we will read and sign and that will -- that's it on our end.

MR. GUARD:  Okay.  Hopefully you don't have to see me again, Mr. Cleland.

THE VIDEOGRAPHER:  This is the video.  If there is a question for a video, please state your name for the record.

MR. GUARD:  We will get in contact with you.

THE VIDEOGRAPHER:  Okay.  And are we good to go off the record?

MR. GUARD:  We are go to go off the record.

THE VIDEOGRAPHER:  The time is 10:44.  This concludes this deposition today.  We are now off the record.

(Deposition concluded at 10:44 a.m.)

Page 32

CERTIFICATE OF OATH

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

I, Cassie O. May, RMR, CRR, Notary Public, State of Florida, certify that BARTLETT CLELAND remotely appeared before me on April 10, 2025 and was duly sworn.

Signed this 11th day of April, 2025.

_____

Cassie O. May, RMR, CRR
Notary Public, State of Florida
My Commission No. HH 106641
Expires: 04/23/2025

Page 33

CERTIFICATE OF REPORTER

STATE OF FLORIDA
COUNTY OF HILLSBOROUGH

I, Cassie O. May, RMR, CRR, do hereby certify that I was authorized to and did stenographically report the foregoing remote video-recorded deposition of BARTLETT CLELAND, pages 1 through 31; that a review of the transcript was not waived; and that the transcript is a true record of my stenographic notes.

I FURTHER CERTIFY that I am not a relative, employee, attorney, or counsel of any of the parties, nor am I a relative or employee of any of the parties' attorney or counsel connected with the action, nor am I financially interested in the action.

Dated this 11th day of April, 2025.

_____

Cassie O. May, RMR, CRR

Bartlett Cleland
April 10, 2025

Page 34

ERRATA SHEET
DO NOT WRITE ON THE TRANSCRIPT
ENTER CHANGES ON THIS SHEET
Return to fl.production@lexitaslegal.com
COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION VS JAMES
UTHMEIER
Deponent:  BARTLETT CLELAND
Date of Deposition:  April 10, 2025
Case No.:  4:24-cv-00438-MW-MAF

PAGE    LINE         REMARKS

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Under penalties of perjury, I declare that I have read
the foregoing document and that the facts stated in it
are true.
Signature of Witness _____
Dated this _____ day of _____, _____.
Job No.:  401939

Page 35

April 11, 2025
Clement & Murphy
kevin.wynosky@clementmurphy.com
ATTN:  Kevin Wynosky
Re:  Computer & Communications Industry Association vs
James Uthmeier
Case No.:  4:24-CV-00438-MW-MAF
Please take notice that on April 10, 2025, your client's
deposition was taken in the above cause.  At that time,
signature was not waived.  The transcript is now
available for your client to read and sign.
Please call (888)811-3408 or e-mail
fl.production@lexitaslegal.com between the hours of 9:00
a.m. and 4:00 p.m., Monday through Friday, for access to
a read-only PDF transcript via computer.  Please execute
the PDF-fillable Errata Sheet which will be forwarded to
you by Lexitas.  Once completed, please print, sign, and
return to us for distribution to all parties.
If your client does not read and sign the deposition
within 30 days, the original, which has already been
forwarded to the ordering attorney, may be filed with
the Clerk of the Court.
If your client wishes to now waive signature, please
have deponent sign his/her name in the blank at the
bottom of this letter and return to the address listed
below.
Very truly yours,

_____
Cassie O. May, RMR, CRR
Lexitas
I do hereby waive my signature.

_____
BARTLETT CLELAND
Job No. : 401939

**www.lexitaslegal.com**
**(800) 676-2401**

Bartlett Cleland
April 10, 2025

1

---
**Exhibits**
---

**401939BC
leland04
1025 Ex
001**
  3:11
  7:8,9,
  11,14
  8:17 9:9
  16:17
  18:2
  19:5,11
  21:24
**401939BC
leland04
1025 Ex
002**
  3:13
  8:1,2,5,
  7
**401939BC
leland04
1025 Ex
003**
  3:14
  9:1,2,4,
  6,10,15,
  19 10:2,
  10,20
  12:6
  18:3,14
  19:10
  21:25
  22:3

---
**1**
---

**1**
  7:8,9,
  11,14
  8:17 9:9

  16:12,17
  18:2
  19:5,11
  21:24
**10**
  4:8 7:22
  14:23,24
  16:1,2
**10:00**
  4:2
**10:10**
  4:1
**10:36**
  30:20,22
**10:43**
  30:22,23
**10:44**
  31:13,16
**10th**
  16:22
**14**
  18:13,23
**15**
  22:21,24

---
**2**
---

**2**
  8:1,2,5,
  7
**2024**
  7:5,22
  14:23
  16:1
**2025**
  4:8
  8:20,22
  14:24
  16:2,12
**21**
  18:14,

  17,20
  19:9,17,
  24
  22:21,22
**23**
  7:11 9:9
  18:24
**24**
  18:20
  19:9,17
**27**
  27:4
**28**
  8:20,22
**29**
  7:5

---
**3**
---

**3**
  9:1,2,4,
  6,10,15,
  19 10:2,
  10,20,25
  11:3
  12:6,22
  13:18
  14:15
  15:1,18
  16:3,8
  18:3,14
  19:10
  20:15
  21:25
  22:3
  25:14
**3's**
  14:9
  15:21
**30**
  25:5,9
  26:11,21

  27:1,16
  28:2
**31**
  27:12,
  17,25
**33**
  9:7,8,
  10,15
  18:9

---
**5**
---

**501.1736**
  20:17

---
**A**
---

**a.m.**
  4:1,2
  30:22
  31:16
**Absolute
ly**
  8:8
**accordan
ce**
  5:2
**action**
  12:20
**activity**
  29:7,9
**added**
  18:3,10
**addition
al**
  9:13
  18:3
  19:13
**adjust**
  6:7
**advance**

  16:18
**affirm**
  4:22
**after--**
  20:3
**agree**
  30:6
**agreemen
t**
  5:14,21
**algorith
m**
  25:24
  26:6
**algorith
ms**
  21:21
  22:4,6,
  10,12
  23:1,6,
  10,14,17
  24:14,
  21,24
**amended**
  10:6,22
  25:1
**Amendmen
t**
  24:25
  25:13,19
**analyze**
  23:10
**announce**
  4:12
**answers**
  23:9
  25:17
**apologiz
e**
  17:25
  26:20

  27:19
**app**
  17:21
**appeals**
  28:17
**appearan
ces**
  4:12
**appears**
  26:22
**apply**
  6:3
**approved**
  20:21
**approxim
ately**
  9:13
**April**
  4:8
  14:24
  16:2
**area**
  28:14
**associat
ion**
  4:5,10
**assume**
  24:8
**assumpti
on**
  24:8,11
**attorney**
  4:14,15
  5:10
  10:24
  11:18
  12:16,21
**attorney
-client**
  10:19

Bartlett Cleland
April 10, 2025

2

**aware**
13:6

_____

___ **B** ___

**back**
5:11
8:17
28:4
30:24

**Bartlett**
4:4 5:1,
8

**based**
24:15

**basic**
23:5

**bears**
7:14

**began**
4:1

**behalf**
4:15
12:17

**bit**
6:11,12

**board**
28:17,18

**bogus**
29:14

**bottom**
18:17

**Boyle**
15:7,14,
18,20
20:12

**Boyle's**
15:23
20:12

**break**
18:22

22:19
30:18,22

**broadly**
17:8

**bulk**
30:9

_____

___ **C** ___

**C-L-E-L-
A-N-D**
5:8

**call**
11:11,20
28:20

**called**
14:14
16:2

**calls**
11:14
13:24

**careful**
6:13,16

**case**
14:12
15:8,24

**cases**
29:21
30:3

**Cassie**
4:10

**cat**
26:7
28:9,23
30:14

**cats**
26:5,6
30:8,13

**certainty**
16:10

**cetera**
30:3

**changed**
16:21
17:2

**check**
21:19

**checking**
28:21

**Chief**
4:14

**chose**
19:25
20:24

**clear**
22:1

**Cleland**
4:4 5:1,
6,8,9
11:17
14:3,6
15:4
16:7
28:10
31:5

**Clement**
4:18

**communications**
4:5
10:19

**companies**
24:14
29:18

**company**
24:9,10

**comparatively**
5:25

**compared**
5:24 6:9

**complaint**
10:6,22

**Computer**
4:5

**concluded**
31:16

**concludes**
31:14

**conferences**
28:20

**consistent**
5:20
10:12

**contact**
31:9

**contained**
26:12

**content**
23:11
24:15
25:24,25
28:8
29:2,4

**contents**
10:10,20

**conversations**
28:20

**correct**
5:11
7:12 8:5
9:13,14
10:25

11:1,6,9
12:3,17
13:12
15:8,9
16:18,19
18:11,12
19:1,12,
15 20:6
21:21,22
22:4,5
23:1,14,
15 25:25
26:8
27:23
29:15
30:13

**correctly**
18:6

**counsel**
4:12
5:15
6:5,20
10:9,18
14:1
27:3

**count**
29:13

**couple**
27:4

**court**
4:9 6:17

**courts**
25:3

**creating**
28:19

**creation**
25:18
28:15

**CSAM**
29:18,
19,22

30:2

**curious**
17:14

**current**
26:21

**curtail**
27:22

**cute**
26:5,7

_____

___ **D** ___

**data**
23:10

**date**
16:12,15

**day**
10:7

**Dean**
5:8

**December**
5:11 6:9
7:22
14:23
16:1,22

**decide**
25:3

**declaration**
7:4 8:20
9:24
11:23
12:2,5,
7,10
13:3,4,
12,14
15:14
16:17
18:2,3
19:18,
20,25

Bartlett Cleland
April 10, 2025

3

20:7,8,
9,12,13,
16,19
21:14,20
22:3
25:6,9
26:12,
13,17,
22,23
27:12

**declarations**
9:12,21
13:1,7,
11 15:7,
11 17:4,
6 20:3
21:6,9,
15 24:4

**deepest**
28:14

**depending**
8:18

**deposed**
5:11,23

**deposition**
4:4,7
5:14,24
6:2,9,10
7:8,21
8:1,4,12
9:1
14:11,
13,22,23
15:24
16:1,22
20:4
23:21
31:14,16

**depositions**
5:13
23:15,20

**Deputy**
4:14

**detail**
21:5

**details**
29:20

**difference**
6:9 9:12
18:1,10

**difficult**
6:11
22:15

**direct**
5:4
24:15

**directs**
25:24
26:7

**discussion**
24:2

**dissemination**
25:18

**divulge**
10:14

**document**
7:3,5,7,
20,22,25
8:19,22,
25 23:21

**documents**
6:21
8:18

9:25
10:1
12:6

**double-checked**
10:3

**downloaded**
17:21

—————

**E**

—————

**easier**
22:20

**easy**
25:16

**edge**
30:4

**effect**
14:9
16:18

**effective**
16:8,13

**elements**
20:18,25

**employees**
28:6

**employing**
25:24

**employs**
23:10

**end**
16:17
31:3

**enforcement**
11:3
12:22

14:9,25
15:21

**enforcing**
10:25

**enjoin**
12:21

**entire**
18:9
27:1,3

**errata**
8:10

**exact**
22:6,10

**EXAMINATION**
5:4

**examined**
5:3

**excluding**
10:19

**excuse**
22:21

**executed**
13:15
15:15

**executing**
21:15

**exhaustive**
17:15

**exhibit**
7:8,9,
11,14
8:1,2,5,
7,17
9:1,2,4,
6,9,10,

15,19
10:2,10,
20 12:6
16:17
18:2,3,
14 19:5,
10,11
21:24,25
22:3

**exhibits**
7:18

**existed**
19:17,20
20:18
21:11

**experience**
17:22

**expert**
24:6
25:1

**expert's**
12:10

**experts**
9:22
23:24
24:3,9

**explain**
24:10

**explaining**
28:21

**extent**
11:14
13:24
23:20

—————

**F**

—————

**Facebook**
28:15
30:10

**fair**
18:1
24:11
28:24
29:8

**falls**
26:13

**filed**
8:21
10:7
12:2,20
13:1,6
15:7,15
16:16,17

**finally**
17:12

**fine**
24:12

**firm**
4:18

**five-minute**
30:18

**Florida**
4:16
5:11
10:24
12:16,21

**force**
20:22

**forget**
28:16

**form**
5:17
8:13
11:5
12:9,23
16:4,9,
23 18:5
19:19
20:1,20

Bartlett Cleland
April 10, 2025

4

21:2,10,
16,23
22:8,14
23:2,7,
23
24:17,23
25:15
26:1,10
28:11
29:11
30:11

**forward**
14:24
24:10

**forwarded**
28:10

**front**
6:23,25
7:22
8:22 9:7
19:2

———————

**G**

———————

**gave**
14:21
28:8

**general**
4:15,16
5:10
10:24
12:16,21
14:18
17:9

**generally**
23:17

**generic**
30:1

**generically**

29:18

**gentleman**
15:7

**give**
4:23
27:6
28:12

**good**
5:6
29:17,18
30:19
31:10

**Google**
11:4,8
12:20
13:1
14:4,14,
25 21:21
22:4,7
28:7

**ground**
6:2

**grounded**
23:24

**Guard**
4:14,19
5:5,10,
19,22
6:25
7:2,10
8:3,15
9:3
10:17
11:7,16
12:11,25
14:1,2,
20 16:6,
11,25
18:7
19:21
20:5,23

21:7,12,
18,24
22:1,2,
11,18
23:4,12
24:1,20
25:4,21
26:3,9,
16,24
27:8,13,
17,21
28:3,5
30:25
31:4,9,
12

**Guard's**
10:12

**guess**
9:23
14:3
20:7
22:1,24
23:5
24:8
25:18
28:25
30:5

———————

**H**

———————

**hand**
4:21

**handle**
9:11

**Hang**
19:7

**happy**
25:17

**hash**
29:19

**HB**
10:25

11:3
12:22
13:18
14:9,15,
25
15:18,21
16:3,8
20:15
25:14

**head**
16:15

**hear**
6:5 27:7

**heard**
5:25

**hilarious**
30:14

**honestly**
28:13
29:12

**hour**
6:1

**human**
29:2,6,8

**humans**
30:4,8

———————

**I**

———————

**identification**
7:8,9
8:1,2
9:1,2

**impact**
29:16,25

**implicated**
25:14

**inaccurate**
8:11

**included**
19:10,
22,24
21:6
26:17

**including**
5:14

**inclusion**
11:22

**inclusive**
17:3

**incorrect**
8:11

**indicating**
8:21

**Industry**
4:5

**information**
10:14
11:12,
15,21
13:25
18:4
19:14
21:5
23:10
25:18

**initial**
16:17
29:3

**injunction**

10:23
11:2
12:16

**insidious**
30:3

**instances**
29:1,13

**instruction**
14:16

**instructions**
10:12

**interesting**
25:3

**interpose**
11:13
13:22

**interruption**
28:9

**involved**
29:2
30:4

**involvement**
9:18,23

**items**
10:3,4

———————

**J**

———————

**James**
4:6,15

**January**
16:12

| | | | | | |
|---|---|---|---|---|---|
| **John**<br>4:14 5:9<br>10:15<br>27:7<br><br>—————<br>**K**<br>—————<br><br>**Kevin**<br>4:17<br>**kind**<br>6:1,3<br>7:18<br>23:19<br>29:9<br>30:1<br>**kinds**<br>28:19<br>**kitty**<br>26:5,6,7<br>28:9,23<br>30:8,13,<br>14<br>**knew**<br>17:14<br>**knowledg<br>e**<br>8:14<br>12:19<br>16:20<br>17:1<br>21:17<br>22:6<br>23:19,24<br>28:6<br><br>—————<br>**L**<br>—————<br><br>**lag**<br>6:14<br>**law**<br>4:18 5:2<br>25:2 | **Lexitas**<br>4:11<br>**limitati<br>ons**<br>17:17<br>**limited**<br>23:19<br>**lines**<br>17:13<br>**linked**<br>10:3,5<br>**long**<br>7:11<br>**longer**<br>17:7<br>**looked**<br>10:4,23<br>28:19<br>**lot**<br>17:10,11<br>18:21<br>**lots**<br>29:3<br><br>—————<br>**M**<br>—————<br><br>**machine**<br>29:6,10<br>**made**<br>24:8<br>26:24<br>28:17<br>**main**<br>18:1,10<br>**majority**<br>30:7<br>**make**<br>6:17<br>17:3<br>22:1<br>29:22 | **makes**<br>6:11<br>22:3<br>**making**<br>24:6<br>**March**<br>8:20,22<br>**mark**<br>7:7,25<br>8:25<br>**marked**<br>7:9,13<br>8:2 9:2,<br>7<br>**material**<br>9:13,21,<br>22 17:5<br>18:11<br>19:16<br>29:16,22<br>**material<br>s**<br>29:24<br>**math**<br>9:10<br>**matter**<br>4:4 12:3<br>13:2,7<br>**Mcnulty**<br>4:9<br>**mechanic<br>al**<br>6:4<br>**members**<br>9:21<br>10:25<br>11:9<br>17:5,9,<br>10 21:1<br>25:14 | **members'**<br>21:9<br>**mentione<br>d**<br>10:1<br>17:13<br>**Meta**<br>11:3,8,<br>11,17,<br>19,20<br>12:2,5,<br>7,8,15<br>21:20<br>22:4,7<br>23:19<br>24:2<br>25:23<br>28:6<br>**Meta's**<br>16:21<br>26:6<br>**mic**<br>27:10<br>**micropho<br>ne**<br>6:16<br>**mine**<br>13:4<br>**minute**<br>25:9<br>27:6<br>**minutes**<br>27:4<br>**missed**<br>24:7<br>**mistake**<br>26:25<br>**misunder<br>standing**<br>26:19 | **misunder<br>stood**<br>27:15<br>**mix**<br>29:5<br>**morning**<br>5:6<br>**Moving**<br>15:3<br>**Murphy**<br>4:18<br><br>—————<br>**N**<br>—————<br><br>**named**<br>15:7<br>**NCMEC**<br>29:23<br>**Netchoic<br>e**<br>4:6 11:9<br>17:4,9<br>25:14<br>**Netchoic<br>e's**<br>10:25<br>20:25<br>**news**<br>29:17<br>**number**<br>20:17<br>29:1,13<br>**numbered**<br>26:21<br>**numbers**<br>18:16<br><br>—————<br>**O**<br>—————<br><br>**object**<br>5:16 | 8:13<br>11:5<br>12:23<br>16:4,9,<br>23 18:5<br>19:19<br>20:1,20<br>21:2,10,<br>16,23<br>22:8,14<br>23:2,7,<br>23<br>24:17,23<br>25:15<br>26:1,9<br>28:11<br>29:11<br>30:11<br>**objectio<br>n**<br>5:15<br>10:12<br>11:14<br>12:9<br>13:23<br>14:16<br>**objectio<br>ns**<br>5:17<br>**October**<br>7:5<br>16:18<br>**operate**<br>17:10<br>**operates**<br>17:16<br>**operatio<br>ns**<br>17:11<br>**opportun<br>ity**<br>8:4 |

Bartlett Cleland
April 10, 2025

6

original
  7:4  18:2
  19:17,
  20,25
  20:8,9,
  13  21:14
outstrip
s
  30:1
oversigh
t
  28:16,18

_____

    P
_____

pages
  7:11
  9:6,7,8,
  9,10,12
  18:10,
  11,20,
  21,25
  19:13
paragrap
h
  18:14,17
  19:24
  22:21,22
  25:9
  26:11,
  12,21
  27:1,3,
  4,12,16,
  25  28:2
paragrap
hs
  18:19
  19:1,9,
  17
paranoid
  27:9
part

29:9,10
patient
  6:13
pending
  27:20
people
  24:9
  29:3
permitte
d
  26:14
person
  29:5
pertains
  12:7
physical
ly
  28:7
picking
  27:10
picture
  26:7
  28:9
pictures
  30:7
piece
  28:7
plaintif
fs
  4:17
platform
's
  24:22,24
platform
s
  16:21
played
  17:18
points
  25:2

policy
  28:20
post
  26:4,7
posting
  29:3
posts
  26:5
  28:22
preparat
ion
  11:23
  13:3,11
  14:17
prepared
  20:6,13
preparin
g
  9:18
  10:2
  20:9
  21:15
preserve
  5:17
  10:11
pretty
  17:23
piece
prevent
  11:3
preventi
ng
  10:24
previous
  16:22
primaril
y
  12:6,13
prior
  5:13,14
  19:17
  20:18,21

26:13,17
  27:2
privileg
ed
  10:14
  11:15
  13:25
problem
  6:8
proceed
  27:25
Proceedi
ngs
  4:1
process
  10:2
products
  11:12,21
programm
ing
  22:16
protect
  23:17
provide
  6:21
provided
  20:7
public-
facing
  12:6
  23:21
publishe
d
  12:7
put
  6:25
  7:17
  24:9

_____

    Q
_____

question
  6:4
  11:14
  13:23,24
  14:17,22
  17:25
  18:6
  19:8
  23:5,9
  24:25
  25:8,17
  27:20
  28:13
  30:5
  31:7
question
s
  5:16
  7:19
  10:13
  25:11
  28:1
  30:16
  31:1
quick
  6:4
quickly
  18:19
  19:4
  26:18
  27:2
quote
  25:16

_____

    R
_____

raise
  4:20
read
  14:11

15:23
  31:2
reason
  25:8
recall
  17:12
recently
  15:15
reconven
ed
  30:18
record
  4:3,13
  5:7
  30:20,
  21,24
  31:8,11,
  12,15
redline
  19:2
referenc
e
  22:3
referrin
g
  21:24
relies
  12:6
reporter
  4:10
  6:17
represen
t
  5:10
  11:17,19
  14:4,6
  15:4
respect
  20:25
review
  8:5,7

Bartlett Cleland
April 10, 2025
7

reviewed
9:20,21,
22
13:10,14
15:10,13
28:24
29:14,22
30:1

reviewing
29:19

Richard
4:9

rights
25:13

role
17:7

roughly
18:10

rules
6:2

run
7:18

runs
25:2

_____

**S**
_____

save
18:9

scope
26:10,14

secrets
23:16

section
20:17

seek
11:11,21

seeking
11:2,22
12:16,21

seeks
10:23

select
23:11

send
29:23

set
8:16

sheet
8:10

side
7:17

sign
31:2

signature
7:15
9:16

signed
7:4 8:20

signing
16:14
21:13

sir
6:19

sit
8:9

Sitting
16:7

situation
29:4

slight
6:14

smaller
29:9

Snap
11:4,8
12:20
15:3,4,
6,21
16:3
17:13,
14,16,20
21:14,20
22:4,7
23:19
28:6

Snap's
24:3

Snapchat
16:21

software
22:16

sounds
24:25

spam
30:2

speak
10:9,19

specific
29:4

Specifically
11:2

speech
24:22,25
25:19

spell
5:7

spent
17:15,16

spoken
13:17,20
14:8
15:17,20

state
4:16
5:7,10
31:7

statute
20:18

staying
30:12

STENOGRAPHER
4:20

stop
6:15

strike
19:22

strong
9:10

stuff
23:16
27:10
29:25

subjects
26:14

subliminally
22:25

submitted
9:22
17:6

subpart
22:22

sudden
24:6

sued
12:15

sufficient
5:19

suit
9:11

sums
17:23

swear
4:19,22

sworn
4:21 5:2

_____

**T**
_____

table
6:23

taking
6:10
29:19
30:2

talk
16:3
22:25

talked
14:19,24
24:7

talking
6:13
27:15,
17,24
28:1

talks
21:20

telling
23:25

ten
9:12
18:10

testified
5:3 18:1

testimony
4:22

26:14

things
6:11
28:21
29:15,16
30:7

thought
26:25
27:15
28:1

time
4:2 9:20
10:16
17:12,
15,16
18:9
30:20,23
31:13

today
6:10
14:24
16:2
26:15
31:14

told
24:18
27:21

tool
29:6

top
8:21
18:16

touching
30:9

trade
23:16

transmitted
30:10

trick
13:9

Bartlett Cleland
April 10, 2025

8

19:5

**true**
23:18

**truth**
4:23,24

**turn**
18:13
25:5

**Twingy**
17:5

————

**U**
————

**unclear**
22:16

**understa nd**
6:3 17:8
18:6
24:19
30:6

**understa nding**
11:24
12:4
17:16,20
24:13
26:2
28:14

**url**
23:14

**usage**
11:12,21

**user**
23:10
24:15

**users**
13:21
23:11
24:15

**Uthmeier**
4:6,15

**utilize**
22:7

————

**V**
————

**vast**
30:7

**Veitch**
13:6,18,
20 14:8
20:6

**Veitch's**
13:10,14
14:11
20:8

**versus**
4:6

**video**
31:6,7

**video- recorded**
4:3

**videocon ference**
4:8

**viewing**
24:16
26:5,6

————

**W**
————

**wait**
19:7

**wanted**
6:7

**ways**
17:1
28:25

**web**
23:22

**website**
23:14

**whatnot**
28:22

**word**
12:12
24:6

**work**
28:21

**works**
28:22

**Wynosky**
4:17
5:20
6:22
8:13
10:11
11:5,13
12:9,23
13:22
14:16
16:4,9,
23 18:5
19:19
20:1,20
21:2,10,
16,23
22:8,14
23:2,7,
23
24:17,23
25:15
26:1,9,
19 27:6,
11,14,
19,24
28:11
29:11
30:11,
17,25

**Wynowsky**
5:19

————

**Y**
————

**years**
28:18

**yesterda y**
22:22

**Youtube**
14:6,9,
15,25
21:14
23:9

**Youtube' s**
13:21
16:20
22:25
23:6,13

————

**Z**
————

**Zoom**
4:7 6:11