UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

COMPUTER & COMMUNICATIONS
INDUSTRY ASSOCIATION and
NETCHOICE,

            Plaintiffs,
                                    Case No.
v.                                  4:24-cv-00438-MW-MAF

JAMES UTHMEIER, in his official
capacity as Attorney General
of the State of Florida,

            Defendant.
_____/

REMOTE DEPOSITION OF

MATTHEW SCHRUERS

VOLUME 1 (Pages 1 - 46)

Wednesday, April 9, 2025
2:00 p.m. - 3:08 p.m.

LOCATION:  Remote via Zoom

Reported by:  Melissa Wrightsman,
Digital Reporter

Job No.:  401938

Matthew Schruers
April 09, 2025

Page 2

APPEARANCES:
On behalf of Computer & Communications Industry Association and NetChoice:

    Clement & Murphy
    708 Wolfe Street
    Alexandria, Virginia 22314

    BY:  JAMES XI, ESQ., pro hac vice
    info@clementmurphy.com
On behalf of James Uthmeier, in his official capacity as Attorney General of the State of Florida:

    Office of the Attorney General
    PL-01 The Capitol
    Tallahassee, Florida 32399

    BY:  JOHN GUARD, ESQ.
    anita.patel@myfloridalegal.com
Also Present:
    George Rodriguez, Videographer
    Patricia Carneiro, Notary Public

Page 3

                INDEX OF EXAMINATION
EXAMINATION:                                    PAGE
Testimony of Matthew Schruers
Direct Examination by Mr. Guard                    5
Cross-Examination by Mr. Xi                        40
Redirect Examination by Mr. Guard                 41
Certificate of Oath                               43
Certificate of Digital Reporter                   44
Read and Sign Letter                              45
Errata                                            46

                INDEX TO EXHIBITS

DEFENDANT'S          DESCRIPTION            PAGE

Exhibit 1      Declaration signed by Mr. Schruers
               dated 10/28/2024                 8
Exhibit 2      Deposition Transcript of
               Mr. Schruers                     9

Exhibit 3      Declaration signed by Mr. Schruers
               dated 3/27/2025                 10
(Original exhibits included with original transcript.)

Page 4

Proceedings began at 2:00 p.m.:
        THE VIDEOGRAPHER:  All right.  One moment, please.  We are now on the record and the time is 2 o'clock, p.m.  This is a video recorded deposition of Matthew Schruers in the matter of Computer Communications Industry Association v. Ashley Moody.
        This deposition is being held remotely via Zoom videoconference on April the 9th, 2025.  The videographer is George Rodriguez and the stenographer is Melissa Reitzman.
        THE REPORTER:  Melissa Wrightsman.
        THE VIDEOGRAPHER:  Wrightsman.  Melissa Wrightsman, both in association with Lexitas.  Will counsel please announce their appearances for the record, after which the court reporter will swear in the witness.
        MR. GUARD:  John Guard on behalf of James Uthmeier, the Attorney General of the State of Florida.
        MR. XI:  James Xi, on behalf of CCIA and NetChoice.
        THE REPORTER:  Okay.  Thank you.  I will now swear in the witness.  Mr. Schruers, first of all, do you have your ID, sir?
        THE WITNESS:  I do.

Page 5

        THE REPORTER:  Please hold it up to the camera.
        THE WITNESS:  Sure.
        THE REPORTER:  I cannot make out the wording.
        THE WITNESS:  Oh, let me see.
        THE REPORTER:  It's still too blurry.  Can anybody else make that out?  It's very blurry.  Maybe if you tilt it a little bit and hold it higher.  I apologize.  I still can't make that out.
        MR. GUARD:  Can we have him just scan a copy to you?
        THE REPORTER:  That would be perfect.  I'd appreciate that, for the sake of time.  That would work.
        THE REPORTER:  Okay.  So I can now swear in the witness.  Mr. Schruers, would you please raise your right hand?  Do you swear or affirm that the testimony you give today will be the truth, the whole truth, and nothing but the truth?
        THE WITNESS:  Yes.
THE REPORTER:  Thank you, sir.  And with that, Counsel, you may begin.
                DIRECT EXAMINATION
BY MR. GUARD:
        Q.   Good afternoon, Mr. Schruers.  Can you please state your name, and spell your last name for the record?

Matthew Schruers
April 09, 2025

Page 6

A.    Matthew Schruers.  That's S-C-H-R-U-E-R-S.

THE NOTARY:  Excuse me?

MR. GUARD:  Go ahead.

THE NOTARY:  Sorry.  Am I supposed to do the oath now or after you?  I am the notary for the company.

MR. GUARD:  Madam Court Reporter?

THE REPORTER:  Yes.

MR. GUARD:  We have a notary here.  Do we need to do it now or later?

THE REPORTER:  She can continue.  Go ahead, Patricia.

THE NOTARY:  Okay.  My name is Patricia.  I am a commissioned online notary for the State of Florida.  I will be administering the oath for you today.  Before we begin, would you please provide your government ID in front of the camera, which you did already.  What city and state are you located at the moment, please.

THE WITNESS:  At the moment, we are in the District of Columbia.

THE NOTARY:  What's the city name, please?

THE WITNESS:  It's the City of Washington in the District of Columbia.  It is not a state, it's federal district Washington.

Page 7

THE NOTARY:  District of Columbia, Washington.  Okay.  And do you consent to my administering the oath remotely?

THE WITNESS:  Yes.

THE NOTARY:  Can you please raise your right hand?  Do you swear or affirm that the testimony you are about to give is the truth, the whole truth, and nothing about truth?

THE WITNESS:  Yes.

Thereupon:

MATTHEW SCHRUERS,

having been first duly sworn, was examined and testified as follows:

THE VIDEOGRAPHER:  Okay.  Thank You.  I will be leaving the room.  Thank you, guys.

BY MR. GUARD:

Q.    Okay.  Sorry.  That we're doing that.  We did that twice.  As we've done in every other deposition in this case, opposing counsel, if they have an objection to a question, is going to just object to the form, and that will preserve all objections.

        Mr. Schruers, as you know, my name is John Guard.  I'm the chief deputy attorney general of the State of Florida.  I deposed you back in December, correct?

Page 8

A.    Yes.

Q.    Okay.  This deposition should be comparatively brief compared to that first deposition, but all the ground rules that we had in place then in that deposition apply.  Do you generally understand?

A.    I, I understand.

Q.    Okay.  One difference this time is we are doing this on Zoom, and we're going to have to be extra careful about talking over each other because of the -- there's a little bit of a lag.  You understand?

A.    I do.

Q.    All right.  And I asked your counsel to provide you with three documents.  I see that you have a binder in front of you.  Do you have those three documents?

A.    The three documents are in the binder in front of me.

Q.    All right.  The first document is your original Declaration signed by you on, I believe, October 28th, 2024.  Do you have that document?

A.    Yes.

Q.    Okay.  I'm going to mark that document for identification as Exhibit 1 to your deposition.  Exhibit 1 is 18 pages long, correct?

        (Defendant's Exhibit 1 marked for identification.)

Page 9

A.    I have 18 pages here?

Q.    Yes.  And Exhibit 1 bears your signature on the last page, on page 18?

A.    Yes.

Q.    Okay.  As you sit here today, is there anything in Exhibit 1 that is now inaccurate, to your knowledge?

A.    Not to my knowledge.

Q.    All right.  The second document that I provided to your counsel is your Deposition, which was taken on December 19th, 2024.  I'm going to mark that second document for identification as Exhibit 2 to your deposition.  After your deposition, you had an opportunity to review your deposition, Exhibit 2.

        (Defendant's Exhibit 2 marked for identification.)

A.    I did.

Q.    Okay.  And did you actually review it?

A.    I did.

Q.    Okay.  You'd be surprised how often people don't.  As we sit here right now, to your knowledge, is there anything inaccurate or that needs to be changed or altered in Exhibit 2?

A.    Subject to the errata that was submitted, no.

Q.    All right.  And hopefully the errata is attached to the document I provided, but if not, we will

Matthew Schruers
April 09, 2025

Page 10

put it in there.  The third document is a Declaration, apparently signed by you on March 27th, 2025.  It has a line on the top indicating that it was filed on March 28th, 2025.  Do you have a document that has those two features in front of you?

A.   I do.

Q.   Okay.  I'm going to mark that document for identification to your deposition as Exhibit 3.  And have you seen Exhibit 3 before?

(Defendant's Exhibit 3 marked for identification.)

A.   I have.

Q.   Okay.  And your signature is on the last page, page, I think, 26, of Exhibit 3.

A.   Yes.

Q.   All right.  And so comparing Exhibit 1, your original declaration, and Exhibit 3, they're roughly eight pages longer?

A.   Are you asking me to do the math?

Q.   Yes.  Very well.

A.   The -- there are eight more page numbers, yes.

Q.   All right.  How was Exhibit 3 prepared?

MR. XI:  Object.  To the extent this calls for privileged information.  But to the extent you can answer without revealing privileged information, you

Page 11

may do so.

THE WITNESS:  I prepared Exhibit 3 on a computer in having consulted with Counsel.

BY MR. GUARD:

Q.   What documents did you look at in preparing Exhibit 3?

A.   There are documents cited, hyperlinks to documents cited in, in Exhibit 3, which were -- informed my preparation of the document.

Q.   Other than documents that there are a hyperlink in Exhibit 3, did you review any other documents in preparing Exhibit 3?

A.   There are additional documents that are cited in Exhibit 3, which are not linked in Exhibit 3, which I also consulted.  That includes other declarations submitted in this case.  And the -- well, I guess to the best of my recollection, it's other, other declarations submitted in this case.

Q.   Okay.  What other declarations did you review?  I know the Veitch Declaration is mentioned in there.  Did you review any other declarations?

A.   Let me see.  I believe I -- if I recall correctly -- I cannot recall if I reviewed any other declaration beyond the Veitch Declaration.

Q.   Okay.  Other than the Veitch Declaration or

Page 12

some other document that is cited in Exhibit 3, did you review any other documents that are not cited, or hyperlinked, or the Veitch Declaration, to your knowledge?

MR. XI:  Object to form.

THE WITNESS:  I suppose the amended complaint would also count as a document.  Well, actually, yeah, I believe we've covered all the documents that I reviewed in preparing the declaration.

BY MR. GUARD:

Q.   Okay.  And that includes the amended complaint, just because of how you ended that question or that answer to the question.  Did you review the amended complaint?

A.   I cannot recall precisely when I reviewed the amended complaint.  I reviewed, reviewed the amended complaint prior to today.  I don't recall when in time I reviewed it relative to preparing my declaration.

Q.   Okay.  Fair enough.  Other than your counsel, did you speak to anyone about the contents of Exhibit 3?

MR. XI:  Objection.  Privilege.  To the extent this calls for privilege -- revealing privilege information, instruct you not to answer.  But to the extent you can answer without revealing privileged communications, you may answer.

Page 13

BY MR. GUARD:

Q.   Again, I prefaced the question with, "Other than your counsel."

A.   Subject to that, no.

Q.   Okay.  Did you call anyone at Meta relating to their operations in preparing Exhibit 3?

MR. XI:  Same objection, same instruction.

THE WITNESS:  Subject to that, no.

BY MR. GUARD:

Q.   Okay.  And Meta is a member of CCIA where you work, correct?

MR. XI:  Objection.  Form.

THE WITNESS:  Yes.

BY MR. GUARD:

Q.   Okay.  Did you call anyone at Meta regarding any of their users or their use of any of Meta's applications?

MR. XI:  Same objection as to privilege, and same instruction.

MR. GUARD:  Counsel, Meta is not -- you represent CCIA.  Meta as a member.  There is no privilege with Meta.

MR. XI:  You can answer.

THE WITNESS:  No.

Matthew Schruers
April 09, 2025

Page 14

BY MR. GUARD:

Q.   Why didn't you call Meta and ask them about their -- about who uses their applications?

A.   I'm not certain I could give you the rationale for why I did not take an action.

Q.   Okay.  But you could have called Meta and gotten from them information to put in your declaration, right?

MR. XI:  Objection.  Form.

THE WITNESS:  I don't -- I don't know that that's the case.

BY MR. GUARD:

Q.   So your declaration, Exhibit 3, you make a number of assertions about -- in paragraph 6 of your declaration about Meta, correct?

MR. XI:  Objection.  Form.

THE WITNESS:  Paragraph 6 pertains to Meta.

BY MR. GUARD:

Q.   And you make a number of assertions regarding Meta and its products in that paragraph, right?

A.   In that paragraph and its sub elements, yes.

Q.   Okay.  And you, in this declaration, are making those statements on behalf of Meta, correct?

MR. XI:  Objection.  Form.

THE WITNESS:  No.

Page 15

BY MR. GUARD:

Q.   Well, Meta is one of your members, correct?

A.   Yeah.

Q.   And in this lawsuit, you're seeking relief on behalf of Meta, correct?

MR. XI:  Objection.  Form.

THE WITNESS:  The association is bringing the lawsuit.  The association is acting with the associational standing as a representative of its constituents.  My exhibit, however -- or my declaration is submitted on behalf of the association, which I lead.

BY MR. GUARD:

Q.   And in this lawsuit that your association filed as a remedy, you're seeking an injunction against the State of Florida from -- preventing the State of Florida from enforcing one of its laws against Meta, correct?

MR. XI:  Objection.  Form.

THE WITNESS:  Yes, I believe that is correct.

BY MR. GUARD:

Q.   So the lawsuit that you have filed or your association has filed is to benefit Meta, and yet the association, or at least you, have not bothered to call Meta and ask them about their users or their use in the State of Florida, correct?

Page 16

MR. XI:  Objection.  Form.

THE WITNESS:  I don't agree with that characterization.

BY MR. GUARD:

Q.   So have you talked to Meta about this lawsuit, in the remedy that you have sought?

MR. XI:  Objection.  Form.

THE WITNESS:  Are you asking me for any privileged information?

BY MR. GUARD:

Q.   Do you have it?  Do you have an attorney-client relationship with Meta, sir?

A.   The association does not represent Meta as a -- as a lawyer.

Q.   Okay.  So if you or the association communicated with Meta, there would not be an attorney-client privilege -- there wouldn't be an attorney-client-privilege communication, would it?

MR. XI:  Objection.  I mean, are you asking him to opine on a legal conclusion?

MR. GUARD:  No.  My original question was, has he or the association spoken to Meta about the remedies they're seeking in this lawsuit?  And he asserted attorney-client privilege.  And so I was just walking him through that.

Page 17

BY MR. GUARD:

Q.   So I'll go back to my original question, have you or the association communicated with Meta about the remedy that you're seeking in this lawsuit?

A.   The, the association has communicated to all members about its actions taken in the lawsuit, and that includes representatives of Meta.

Q.   The communication to all members, would that be some kind of press release or would it -- what form would it would have taken?

A.   Well, it would include press releases.  It would also include newsletters or similar updates.  And I don't know, sitting here today, that I could tell you precisely the nature of that communication.

Q.   Okay.  Other than press releases or group communications, whether that is a newsletter or an email, has CCIA had a direct one-on-one communication with Meta about this -- the remedies that it's seeking in this lawsuit?

MR. XI:  Objection.  To the extent this calls for privileged communications, don't answer.  To the extent you can answer without revealing such communications, you may do so.

THE WITNESS:  Subject to that and what I have personal knowledge of, no.

Matthew Schruers
April 09, 2025

Page 18

BY MR. GUARD:

Q.   Okay.  To your knowledge, has Meta, itself, filed an action challenging HB3?

A.   Not that I am aware of.

Q.   All right.  To your knowledge in this lawsuit, has Meta filed a declaration claiming that HB3 is burdensome?

A.   Not that I am aware of.

Q.   To your knowledge, has Google filed a lawsuit itself challenging HB3?

A.   Not that I am aware of.

Q.   Okay.  When did HB3 go into effect, if you know?

A.   I do not precisely recall.

Q.   Okay.  Does January 1st, 2025 sound about right?

MR. XI:  Objection.  Form.

BY MR. GUARD:

Q.   You filed this lawsuit in -- at the end of October of 2024, and that was in advance of the law going to effect, correct?

A.   That is correct.

Q.   All right.  To your knowledge, in the -- for the sake of argument, assume that it went in effect, and I'll represent to you it did on January 1st, 2025, to

Page 19

your knowledge, in the three months-plus that HB3 has been enforced, has HB3 been enforced against any company?

MR. XI:  Object to form.

THE WITNESS:  I, I do not know.

BY MR. GUARD:

Q.   All right.  Now, when you were deposed back in -- we talked earlier about you being deposed in December 2024, has your knowledge of YouTube or Meta's applications changed from what you knew or understood about their applications as of that date?

MR. XI:  Object to form.

BY MR. GUARD:

Q.   I'm asking you, have you learned anything else about those applications since your deposition?  I don't want to retrod the same ground.

A.   Yes, I have.

Q.   Okay.  What additional information have you learned about either Meta or Google since your deposition?

MR. XI:  Object to form.

THE WITNESS:  That's a broad question.

BY MR. GUARD:

Q.   Let me narrow it then.  With respect to this lawsuit.  If you've learned about some other feature that has nothing to do with this lawsuit.  I don't need you

Page 20

telling me about Oculus or some other application.

MR. XI:  Object to form.  Is there a question there?

MR. GUARD:  I was trying to narrow it because he was saying it was too broad.

BY MR. GUARD:

Q.   So I'm saying, as the previous question I asked you, narrowing it down to things that are relevant, at least in your mind, about Google and Meta.  What additional information do you now have that you did not have at the time of your deposition?

MR. XI:  Object to form.

THE WITNESS:  I do not recall precisely when I've reviewed everything.  But I know that in the intervening time, I have reviewed the new Veitch Declaration, and I reviewed the, the documents, including websites, that are cited in the new paragraphs of the, the declaration, which, you know, I did not recall having reviewed prior to our first deposition.

BY MR. GUARD:

Q.   Okay.  Had you ever spoken to Mrs. Veitch -- or strike that.

Have you ever spoken with Mrs. Veitch?

A.   Yes.

Page 21

Q.   Okay.  Let me maybe narrow it.  Have you ever spoken Mrs. Veitch about this lawsuit?

A.   Not that I recall, no.

Q.   Okay.  I just realized that you both are in the public policy area, and you could maybe have spoken to her about something else.  All right, moving on.  Is there a reason why, as you were preparing Exhibit 3, you didn't call Mrs. Veitch and discuss the contents of your declaration with her?

MR. XI:  Object to form.

THE WITNESS:  I'm, I'm, I'm not certain I can give you a explanation for why I did not take a particular action.

BY MR. GUARD:

Q.   But you could have, and you didn't.  Is that fair to say?

MR. XI:  Object to form?

THE WITNESS:  No, I don't know that I could have.

BY MR. GUARD:

Q.   And again, in this lawsuit, CCIA, on behalf of its members, including Google, is seeking to block the implementation or enforcement of HB3 against Google, where Mrs. Veitch works.  Correct.

MR. XI:  Object to form.

Matthew Schruers
April 09, 2025

Page 22

THE WITNESS:  I recall correctly Mrs. Veitch works for YouTube, which is a subsidiary of Google. But subject to that, I, I don't think I disagree with anything else that was said there.

BY MR. GUARD:

Q.   Okay.  All right.  Looking at, and if we were to compare, Exhibit 1 and Exhibit 3, the original declaration and the new declaration, is it fair to say that the main difference between the two is that in your new declaration, Exhibit 3, you add it roughly eight pages of material.

MR. XI:  Object to form.

THE WITNESS:  There it is.  That's roughly a accurate statement.  Yes.

BY MR. GUARD:

Q.   All right.  And I'm just trying to speed this up, because I have an hour.  If you'll turn to page 3 of Exhibit 3, and to paragraph 5 and 6 of Exhibit 3. Paragraphs 5 and 6 of Exhibit 3 were not part of your original declaration, Exhibit 1.  Correct?

A.   Correct.

Q.   Okay.  And by themselves, paragraphs 5 and 6 cover roughly seven pages, right?

A.   Yes.

Q.   All right.  Looking at paragraph 5 which is --

Page 23

I think, starts on page 3 of Exhibit 3.  In that, I believe it's the first sentence, and I believe it's the second clause.  Technically you state, "based on my experience in the industry." Do you see that?

A.   I do.

Q.   Okay.  What assertions in paragraph 5 are based upon your experience?

A.   The -- my -- the observations about how YouTube operates in subparagraphs A, B, C, D, E, and F are informed by having been a -- having, having worked in this industry for -- and that the knowledge that I've gained informs these assertions.

Q.   What particular knowledge that you've gained or is informing the assertions and those subparagraphs you just identified?

MR. XI:  Object to form.

THE WITNESS:  So, for example, observing the operation and usage of YouTube.  And as a user of YouTube, I -- I'm -- I have knowledge to say that YouTube allows users to create, upload, and share videos.  I have the knowledge to say that YouTube employs algorithmic systems that analyze data so as to make content selections.

And I've acquired the knowledge to make the statement that YouTube contains software

Page 24

features that one might characterize as push notifications and personal interactive metrics and so on.

BY MR. GUARD:

Q.   Okay.  And that's just -- is that from just using YouTube?

MR. XI:  Object to form.

THE WITNESS:  No, it's not.

BY MR. GUARD:

Q.   How is it more than just using YouTube?

MR. XI:  Object to form.

THE WITNESS:  I -- I'm sorry, can you restate that question?

BY MR. GUARD:

Q.   Sure.

A.   I don't understand.

Q.   I think I asked you a question and -- that whether it was because the things that you listed out were things that can be observed from using, personally, YouTube.  Correct?

A.   That is true.

Q.   Okay.  And I asked you, I think, whether it was just based on your personal use of YouTube and you said no.  Right?

A.   I did.

Page 25

Q.   Okay.  And I guess I was trying to dig into that a little bit more and ask you, okay, if it's not based on use, what -- how are those things that you listed out based on your non-use of YouTube.

MR. XI:  Object to form.

THE WITNESS:  I have also acquired that information observing YouTube as one of the most successful digital services in the US marketplace, which makes it a frequent subject of legal and public policy matters that come before the association, some of which I have taught as an adjunct law professor.

I've also observed the, the nature of the product as CCIA is an enterprise user of the service, as are many of the governments and civil society, and public interest organizations that the association interacts with, with also our enterprise users of the service.

And so I frequently encounter YouTube, not just as a personal user, but as a professional user and as a -- I'm sorry, as, as the head of a professional enterprise user, and as a advocate and policy expert in a space where YouTube is at times omnipresent.

BY MR. GUARD:

Q.   All right.  In that same paragraph, Paragraph

Matthew Schruers
April 09, 2025

Page 26

5, you mentioned reviewing Mrs. Veitch's declaration, correct?

A. Yes.

Q. When did you review her declaration?

A. I don't precisely recall.

Q. Was her declaration executed when you reviewed it?

A. I'm reasonably certain it was.

Q. Okay. Were you aware that Mrs. Veitch had been deposed?

A. I believe I was, yes.

Q. Okay. Have you reviewed Mrs. Veitch's deposition?

A. I do not recall. I do not recall.

Q. I want to turn -- before you signed your original declaration, did you seek any information from either Mrs. Veitch or Google?

MR. XI: Object to form.

THE WITNESS: I do not precisely recall. Well, other than I do recall going on public facing URLs for, for Google on the -- in the process of preparing the declaration. Other than that I do not recall.

BY MR. GUARD:

Q. Okay. I want to turn to subparagraph E of

Page 27

paragraph 5, which I think starts on page 5 of Exhibit 3. And your conclusions in this subparagraph or subpart, however you want to frame phrase it, are based on two sources, correct?

MR. XI: Object to form.

THE WITNESS: There are at least two sources cited in this paragraph.

BY MR. GUARD:

Q. Okay. And the first source cited is Mrs. Veitch's declaration, which we've talked about, right?

A. We have talked about Mrs. Veitch's declaration.

Q. All right. And the second source in this subparagraph is a study, correct?

MR. XI: Object to form.

THE WITNESS: No. The second source is the statute. The third source is -- no is the answer.

BY MR. GUARD:

Q. All right. Well, at some point in time in subparagraph E, you cite to a study, correct?

A. Yes.

Q. To the bottom of the page 5, it's J. Rothwell is the cite, and goes over to page 6. Do you see that, sir?

A. Yes.

Q. And you cite to that study, correct?

Page 28

A. Yes.

Q. All right. And that particular study is in what -- was publicly available as of October 13, 2023, right?

MR. XI: Object to form.

THE WITNESS: I, I don't know that that's the case, actually.

BY MR. GUARD:

Q. Okay. You and your declaration wrote a citation, correct?

A. Yes.

Q. And the date that I just gave you is the date that's reflected in that citation, correct?

A. Yes.

Q. Okay. And that study is publicly available, right?

A. It was publicly available on March 27th when I read it. I don't know that it is publicly available right now.

Q. Okay. So you're unaware that that study is publicly available and had been publicly available for some time?

MR. XI: Object to form.

THE WITNESS: I don't understand that question.

BY MR. GUARD:

Page 29

Q. Sir, you're drawing a conclusion based on a study, right?

A. Yes.

Q. Okay. And I'm asking you, do you know whether it is and has been publicly available?

MR. XI: Object to form.

THE WITNESS: I do not know that it is publicly available, but yes, it has been publicly available.

BY MR. GUARD:

Q. Okay. Was it publicly available when you filed your first declaration in October 2024?

A. I do not know.

Q. Is any information in subparagraph E based on your own personal knowledge?

MR. XI: Object to form.

THE WITNESS: Yes. My personal knowledge is consistent -- perhaps better stated, the statements in Mrs. Veitch's declaration are consistent with the personal knowledge that I have.

BY MR. GUARD:

Q. Okay. But unlike at the beginning of paragraph 5, here in paragraph -- or sub paragraph E, you didn't mention anything about your experience or your personal knowledge. Instead, you talked about her declaration and then you talk about this study. Correct?

Matthew Schruers
April 09, 2025

Page 30

A.   I think the paragraph speaks for itself.

Q.   Sitting here right now, sir, do you know what percentage of daily users or average daily users spend more -- that are between the ages of 13 and 16 spend more than two hours on YouTube?

MR. XI:  Object to form.

THE WITNESS:  I don't have that information in front of me.

BY MR. GUARD:

Q.   So somewhere at CCIA you have information on the daily -- on the amount of time kids 13 to 16 spend on a -- as average daily users on YouTube.

MR. XI:  Object to form.

THE WITNESS:  No.

BY MR. GUARD:

Q.   Okay.  So you do not know, in your own personal knowledge, how long 13- to 16-year-olds utilize YouTube on an average daily basis?  Correct.

MR. XI:  Object to form.

THE WITNESS:  I have a general understanding from data and survey information that's been publicly released over the years, and my own awareness of YouTube being one of the most widely utilized services.

And I have the benefit of Florida's own expert

Page 31

saying that US teens spend an average of 4.8 hours a day and -- you know, asserting that that is the case.  And that information is consistent with my general understanding that YouTube is a widely utilized service.

BY MR. GUARD:

Q.   Sir, that 4.8 hours, that wasn't just 4.8 hours on YouTube, was it?

A.   The study refers to multiple services, so.

Q.   Okay.  So, but I don't want -- you were not testifying, were you, that 10 percent of average daily users, 13 to 16 on YouTube, spend 4.8 hours on that site.  Were you?

MR. XI:  Object to form.

THE WITNESS:  I don't believe that's my contention.  No.

BY MR. GUARD:

Q.   All right.  Just making sure because -- all right.  So these data and surveys that you're generally aware of, you were generally aware of those -- that data and those surveys when you signed your original declaration in October, correct?

MR. XI:  Object to form.

THE WITNESS:  I can't say when precisely I've gained that particular understanding.

Page 32

BY MR. GUARD:

Q.   Well, was it a couple months ago or a couple years ago?

A.   I, I can't say when I've gained that precisely, when I've gained that understanding.

Q.   Okay.  Turning to subparagraph F, the allegations here, in the first sentence says, "I further understand that YouTube has users under the age of 16 who are located in Florida."  What is the source of your understanding for the information contained in that sentence?

A.   There are multiple sources for that.

Q.   Okay.  What are the sources?  Please list them out.

A.   I'm generally aware of, as I said, YouTube being a widely utilized service.  And as a practitioner in this industry, it's inescapable that that's going to include every state in the union.  I am personally acquainted with users under the age of 16 who reside in Florida and have observed them using YouTube.

I'm also aware that when the state enacted the law, state officials declared their intention to enforce the statute against services like YouTube, which is consistent with my understanding that it is widely utilized in the state, including by teens, and as,

Page 33

indeed, I have observed it being used by teens.

Q.   Can you please name the teens?

A.   I cannot.

Q.   So you're refusing to answer that question?

A.   I am telling you, I do not have a recollection of the names.

Q.   All right.  Now, you mentioned officials.  What officials are you referring to?

A.   It is my recollection that members of the state legislature, and potentially including the governor, made statements on or around the time that the statute was enacted.  But I could not give you names of officials.

Q.   All right.  So sitting here right now in a deposition, you don't know the names of those officials.  Correct?

MR. XI:  Object to form.

THE WITNESS:  Do not know the names of the officials to which I was referring.

BY MR. GUARD:

Q.   Okay.  Were either Ashley Moody or James Uthmeier in those officials?

A.   I do not recall.

Q.   All right.  Meta and YouTube use algorithms.  Correct?

MR. XI:  Object to form.

Matthew Schruers
April 09, 2025

Page 34

THE WITNESS:  As that term is generally understood.  Yes.

BY MR. GUARD:

Q.  All right.  And the algorithms that Meta and YouTube use direct content to users based upon other content that that user has looked at.  Correct?

A.  Yes.

Q.  Okay.  Are the actual underlying content being directed by the algorithms to users Meta or Google's own speech?

MR. XI:  Object to form.

THE WITNESS:  My, my view is that's asking me for a legal opinion, and the answer to that question is yes.  I should -- I should note that we've been referring to Meta interchangeably with products offered by Meta.  There is no product Meta.  There is Facebook, Google, Instagram, WhatsApp, among others.  So just as long as we understand that the company and the products are not the same thing.

BY MR. GUARD:

Q.  So following your logic there, if child pornography is posted on Instagram, I'll use the product, and Instagram's algorithm then directs that child pornography to another user.  Instagram is distributing child pornography.  Correct?

Page 35

MR. XI:  Object to form.

THE WITNESS:  I believe that's calling for a legal conclusion, and I don't know that I'm in a position to make that right now.

BY THE WITNESS:

Q.  Well, you just said that content being distributed because of an algorithm is either YouTube's or Instagram speech.  Correct?

MR. XI:  Object to form.

THE WITNESS:  No, no.  If that was the -- if that is what the question and answer was -- is being interpreted at, that's -- that is not the, the, the -- my legal opinion is that the, the, the speech interest is in the selection, and curation, and presentation of the speech.  So if I tell you to read a book, my recommendation is the speech.  The book itself does not inherently become my speech.

BY MR. GUARD:

Q.  Now, Meta and Google aren't physically curating content, and themselves directing specific content to a specific user.  Right?

A.  I agree with that characterization.

Q.  Well, an algorithm operates automatically, correct?

MR. XI:  Object to form.

Page 36

BY MR. GUARD:

Q.  There's no one sitting in Seattle, Washington, that clicks a box that directs a post to another user.  Right?

MR. XI:  Object to form.

THE WITNESS:  So I don't -- assuming either of these companies have personnel in Seattle, Washington, and I don't know that they do, I'm actually not comfortable saying that that is invariably the case in all circumstances.  Certainly, algorithmic -- algorithmically-informed processes at some times operate automatically.

BY MR. GUARD:

Q.  Would you agree that the vast majority of content that is being directed on Instagram, YouTube, Facebook, and any other of those kind of products either owned by Meta or Google, is being automatically directed based on an algorithm?

MR. XI:  Object to form.

THE WITNESS:  No, I do not.

BY MR. GUARD:

Q.  Okay.  What percentage is being directed by individuals?

A.  I do not have that information.

Q.  Okay.  What percentage is being directed

Page 37

automatically by the algorithm?

MR. XI:  Object to form.

THE WITNESS:  I don't have that information either.

BY MR. GUARD:

Q.  Is it your testimony that there are employees employed by either Meta, or Google, or their subsidiaries that are physically directing content to users?

MR. XI:  Object to form.

THE WITNESS:  Does physically -- I, I assume -- I'm going to assume for purposes of answering this question, that physically does not mean physically in the same room or in the presence of, of another person, but rather through human operation.

BY MR. GUARD:

Q.  Sure.  So that's what I was referring to is human operation.

A.  So subject to that, there are many, numerous human interactions every day that influence what content is made available to users.

Q.  When you say, "human interactions," are you referring to human interactions with Google or Meta employees, or employees of their subsidiaries and users?

A.  I believe I am, yeah, if I understand your question.

Matthew Schruers
April 09, 2025

Page 38

Q.   Okay.  So it's your testimony, sitting here right now, being in this industry for more than 20 years, that there are people, wherever Meta and Google are located, that are physically directing content to users, that are making selections to users?

MR. XI:  Object to form.

THE WITNESS:  No, that is not my testimony.

BY MR. GUARD:

Q.   Okay.  Then what is your testimony?  I'll try it again.

A.   The content that is made available to users on the vast majority of digital services, including, to the best of my knowledge, the services that we're talking about here become visible to users through a, a large number of processes and operations which are both human-directed and algorithmically directed.  That includes, for example, safety and security processes to, to ensure that content that is inconsistent with the terms of service, that is illegal, that is otherwise objectionable is not made available.

There are also editorial and classification content choices that, that will put content in different parts of a, a site, for example, or make content not available for some experiences, such as a supervised experience or a product like YouTube Kids.  Those

Page 39

processes and actions are, as I said, sometimes algorithmically informed.  For example, when hashes are used to strip out known problematic content, copyright-infringing content, for example, as well as human-informed.  Because those services aren't, even though they have a, a high degree of accuracy, they aren't foolproof, and there is positive and negative -- false, false negatives and false positives that need to be corrected and those corrections are done by, by humans.

Then, of course, there are always content choices or content actions that are -- involve content at -- say, the penumbra of, of provision of terms of use or terms of service, or community guidelines or whatever the service happens to call it.  And those choices are often -- are, are made by users -- I'm sorry, are made by members of the, the content team because the software systems aren't sufficiently, you know, granular to operationalize every type of -- the rules against every type of human content, you know, that might be available on a -- on a server.  So --

Q.   The vast -- oh, sorry, I thought you were done.

A.   No.  Yeah, so it is both human action and algorithmic software, you know, processes that determine what content is made available to a user at any given time.

Page 40

Q.   Sir, isn't it true that the vast majority of content that a user receives on one of these platforms is driven automatically by the algorithm?

MR. XI:  Objection to form.

THE WITNESS:  I'm not sure I agree with that characterization.

BY MR. GUARD:

MR. GUARD:  All right.  I'm at the end of my hour.  No further questions.

MR. XI:  Can we take a 10-minute break and we'll see if -- I just wanted to go over my notes to see if we have any redirects.

MR. GUARD:  Can we do it faster than that?

MR. XI:  Sure.  We can take five minutes.

MR. GUARD:  Okay.

THE VIDEOGRAPHER:  All right.  One moment. We're going off the record and the time is 2:59 p.m.

(Off the record.)

THE VIDEOGRAPHER:  We are back on the record and the time is 3:06 p.m. Great.

MR. XI:  Great.  Thank you.

CROSS-EXAMINATION

BY MR. XI:

Q.   Thank you, Mr. Schruers.  There's just a few questions on redirect.  First, did you review all the

Page 41

links and documents cited in your declaration before signing it?

A.   Yes.

Q.   So towards the end there, Mr. Guard also asked you some questions about algorithms.  Can I ask you, how are algorithms prepared?

A.   They are programmed by the human employees of the company that is coding the product.

Q.   And do you know, just generally, how websites like Facebook, and Instagram, and YouTube decide what content is appropriate on their services?

A.   Those decisions are made by company personnel consistent with the kind of experience that they want to offer to their users.

MR. XI:  Great.  No further questions.

REDIRECT EXAMINATION

BY MR. GUARD:

Q.   Some recross.  Have you spoken to anyone at Meta or Google about how their websites or their applications look?

A.   I imagine I have.

Q.   Okay.  When's the last time you have had that discussion?

A.   I don't -- I don't recall.  It's been some time.

Matthew Schruers
April 09, 2025



Page 42

Q.   Okay.  And who was that discussion with?

A.   It was likely in the context of a meeting of the Digital Trust and Safety Partnership.

MR. GUARD:  No further questions.  James, do you want to explain read or waive?  I assume you're going to read, but.

MR. XI:  We're going to read.

MR. GUARD:  Okay.

MR. XI:  Yeah.

MR. GUARD:  We can go off the record.

THE VIDEOGRAPHER:  All right.  Before we go off the record, will anybody be ordering a copy of the video for this testimony?

MR. GUARD:  I'm sure we will.

THE VIDEOGRAPHER:  Okay.  But no order at this time.

MR. GUARD:  Yes.  No order at this time, but we'll reach out and call you.

THE VIDEOGRAPHER:  All right.  On that note, this concludes today's testimony.  Now we are going off the record, and the time is 3:08 p.m.

(Deposition concluded at 3:08 p.m.)

Page 43

CERTIFICATE OF OATH

STATE OF FLORIDA

COUNTY OF LEON

I, the undersigned authority, Patricia Carneiro, Notary Public, certify that MATTHEW SCHRUERS remotely appeared before me and was duly sworn on April 9, 2025.

WITNESS my hand and official seal this 11th day of April 2025.

_____
Patricia Carneiro
Notary Commission FL HH 591531
Commission Expires: October 10, 2028

Page 44

CERTIFICATE OF DIGITAL REPORTER

I, MELISSA WRIGHTSMAN, a Digital Reporter and Notary Public within and for the State of Florida, do hereby certify:

That the foregoing proceeding hereinbefore set forth was accurately captured with annotations by me during the proceeding.

I further certify that I am not related to any of the parties to this action by blood or marriage, and that I am in no way interested in the outcome of this matter.

IN WITNESS THEREOF, I have hereunto set my hand this 9th day of April, 2025.

*Melissa Wrightsman*
_____
Melissa Wrightsman
Digital Reporter

Page 45

APRIL 11TH, 2025
MATTHEW SCHRUERS c/o JAMES XI, ESQ.
708 Wolfe Street
Alexandria, Virginia 22314
IN RE: COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION and NETCHOICE v. JAMES UTHMEIER, in his official capacity as Attorney General of the State of Florida
CASE NO.: 4:24-cv-00438-MW-MAF
Please take notice that on the 9th day of April 2025, you gave your deposition in the above cause. At that time you did not waive your signature.
The above-addressed attorney has ordered a copy of this transcript and will make arrangements with you to read their copy. Please execute the Errata Sheet, which can be found at the back of the transcript, and have it returned to us for distribution to all parties.
If you do not read and sign the deposition within 30 days, the original, which has already been forwarded to the ordering attorney, may be filed with the Clerk of the Court.

If you wish to waive your signature now, please sign your name in the blank at the bottom of this letter and return it to the address listed below.

Very truly yours,

Melissa Wrightsman
Lexitas Legal
fl.production@lexitaslegal.com
I do hereby waive my signature.
_____
MATTHEW SCHRUERS
Job No.:  401938

Matthew Schruers
April 09, 2025

Page 46

ERRATA SHEET
DO NOT WRITE ON THE TRANSCRIPT
ENTER CHANGES ON THIS SHEET

COMPUTER & COMMUNICATIONS INDUSTRY ASSOCIATION and NETCHOICE v. JAMES UTHMEIER, in his official capacity as Attorney General of the State of Florida

Deponent:  MATTHEW SCHRUERS
Date of Deposition:  April 9, 2025
Case No.:  4:24-cv-00438-MW-MAF

PAGE       LINE              REMARKS

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Under penalties of perjury, I declare that I have read the foregoing document and that the facts stated in it are true.

Signature of Witness: _____

Dated this _____ day of _____ , _____

Email to fl.production@lexitaslegal.com
Job No.:  401938

Matthew Schruers
April 09, 2025

1

**1**

1
  8:22,23,
  24 9:2,6
  10:16
  22:7,20
**10**
  31:11
**10-minute**
  40:10
**13**
  28:3
  30:4,11
  31:12
**13-**
  30:17
**16**
  30:4,11
  31:12
  32:8,19
**16-year-olds**
  30:17
**18**
  8:23
  9:1,3
**19th**
  9:10
**1st**
  18:15,25

**2**

2
  4:3
  9:11,13,
  14,22
**20**
  38:2

**2023**
  28:3
**2024**
  8:19
  9:10
  18:20
  19:8
  29:11
**2025**
  4:8
  10:2,4
  18:15,25
**26**
  10:14
**27th**
  10:2
  28:17
**28th**
  8:18
  10:4
**2:00**
  4:1
**2:59**
  40:17

**3**

3
  10:8,9,
  10,14,
  17,22
  11:2,6,
  8,11,12,
  14 12:1,
  20 13:6
  14:13
  21:7
  22:7,10,
  17,18,19
  23:1
  27:1

**3:06**
  40:20
**3:08**
  42:21,22

**4**

**4.8**
  31:1,7,
  12

**5**

5
  22:18,
  19,22,25
  23:6
  26:1
  27:1,21
  29:21

**6**

6
  14:14,17
  22:18,
  19,22
  27:22

**9**

**9th**
  4:8

**A**

**accuracy**
  39:6
**accurate**
  22:14
**acquainted**
  32:19

**acquired**
  23:24
  25:6
**acting**
  15:8
**action**
  14:5
  18:3
  21:13
  39:22
**actions**
  17:6
  39:1,11
**actual**
  34:8
**add**
  22:10
**additional**
  11:13
  19:17
  20:10
**adjunct**
  25:12
**administering**
  6:15 7:2
**advance**
  18:20
**advocate**
  25:22
**affirm**
  5:16 7:6
**afternoon**
  5:24
**age**
  32:8,19
**ages**
  30:4

**agree**
  16:2
  35:22
  36:14
  40:5
**ahead**
  6:3,11
**algorithm**
  34:23
  35:7,23
  36:18
  37:1
  40:3
**algorithmic**
  23:22
  36:11
  39:23
**algorithmically**
  38:16
  39:2
**algorithmically-informed**
  36:11
**algorithms**
  33:23
  34:4,9
  41:5,6
**allegations**
  32:7
**altered**
  9:22
**amended**
  12:6,11,
  13,16

**amount**
  30:11
**analyze**
  23:22
**announce**
  4:14
**answering**
  37:11
**apologize**
  5:8
**apparently**
  10:2
**appearances**
  4:14
**application**
  20:1
**applications**
  13:17
  14:3
  19:9,10,
  14 41:20
**apply**
  8:5
**April**
  4:8
**area**
  21:5
**argument**
  18:24
**Ashley**
  4:6
  33:20
**asserted**
  16:24

Matthew Schruers
April 09, 2025

2

asserting
  31:2
assertions
  14:14,19
  23:6,12,
  14
association
  4:6,13
  15:7,8,
  12,14,
  22,23
  16:13,
  15,22
  17:3,5
  25:11,17
associational
  15:9
assume
  18:24
  37:10,11
  42:5
assuming
  36:6
attached
  9:25
attorney
  4:18
  7:23
attorney-
  16:16
attorney-client
  16:11,24
attorney-client-
  16:17

automatically
  35:23
  36:12,17
  37:1
  40:3
average
  30:3,12,
  18 31:1,
  11
aware
  18:4,8,
  11 26:9
  31:20
  32:15,21
awareness
  30:23

——————
    B
——————

back
  7:24
  17:2
  19:6
  40:19
based
  23:3,6
  24:23
  25:3,4
  27:3
  29:1,13
  34:5
  36:18
basis
  30:18
bears
  9:2
began
  4:1
begin
  5:21

  6:16
beginning
  29:21
behalf
  4:17,20
  14:23
  15:5,11
  21:21
benefit
  15:22
  30:25
binder
  8:13,15
bit
  5:7 8:10
  25:2
block
  21:22
blurry
  5:5,6
book
  35:16,17
bothered
  15:23
bottom
  27:21
box
  36:3
break
  40:10
bringing
  15:7
broad
  19:21
  20:5
burdensome
  18:7

——————
    C
——————

call
  13:5,15
  14:2
  15:23
  21:8
  39:14
  42:18
called
  14:6
calling
  35:2
calls
  10:23
  12:22
  17:20
camera
  5:1 6:17
careful
  8:8
case
  7:19
  11:16,18
  14:11
  28:7
  31:3
  36:10
CCIA
  4:20
  13:10,21
  17:17
  21:21
  25:14
  30:10
challenging
  18:3,10
changed
  9:21
  19:9

characterization
  16:3
  35:22
  40:6
characterize
  24:1
chief
  7:23
child
  34:21,
  23,25
choices
  38:22
  39:11,14
circumstances
  36:10
citation
  28:10,13
cite
  27:19,
  22,25
cited
  11:7,8,
  13 12:1,
  2 20:17
  27:7,9
  41:1
city
  6:18,22,
  23
civil
  25:15
claiming
  18:6
classification
  38:21

clause
  23:3
clicks
  36:3
client
  16:17
coding
  41:8
Columbia
  6:21,24
  7:1
comfortable
  36:9
commissioned
  6:14
communicated
  16:16
  17:3,5
communication
  16:18
  17:8,14,
  17
communications
  4:6
  12:25
  17:16,
  21,23
community
  39:13
companies
  36:7
company
  6:6 19:2
  34:19

Matthew Schruers
April 09, 2025

41:8,12

**comparatively**
8:2

**compare**
22:7

**compared**
8:3

**comparing**
10:16

**complaint**
12:6,11,
14,16,17

**computer**
4:5 11:3

**concluded**
42:22

**concludes**
42:20

**conclusion**
16:20
29:1
35:3

**conclusions**
27:2

**consent**
7:2

**consistent**
29:17,18
31:3
32:24
41:13

**constituents**
15:10

**consulted**
11:3,15

**contained**
32:10

**content**
23:23
34:5,6,8
35:6,20
36:15
37:8,19
38:4,11,
18,22,23
39:3,4,
10,11,
16,19,24
40:2
41:11

**contention**
31:16

**contents**
12:20
21:8

**context**
42:2

**continue**
6:11

**copy**
5:9
42:12

**copyright-**
39:3

**correct**
7:25
8:23

13:11
14:15,23
15:2,5,
17,19,25
18:21,22
21:24
22:20,21
24:20
26:2
27:4,13,
19,25
28:10,13
29:25
30:18
31:22
33:15,24
34:6,25
35:8,24

**corrected**
39:9

**corrections**
39:9

**correctly**
11:23
22:1

**counsel**
4:14
5:20
7:19
8:12 9:9
11:3
12:19
13:3,20

**count**
12:7

**couple**
32:2

**court**
4:15 6:7

**cover**
22:23

**covered**
12:8

**create**
23:20

**CROSS-EXAMINATION**
40:22

**curating**
35:19

**curation**
35:14

---

**D**

---

**daily**
30:3,11,
12,18
31:11

**data**
23:22
30:21
31:19,20

**date**
19:10
28:12

**day**
31:2
37:19

**December**
7:24
9:10
19:7

**decide**
41:10

**decisions**
41:12

**declaration**
8:18
10:1,17
11:20,
24,25
12:3,9,
18 14:7,
13,15,22
15:11
18:6
20:16,18
21:9
22:8,10,
20 26:1,
4,6,16,
22
27:10,11
28:9
29:11,
18,24
31:22
41:1

**declarations**
11:15,
17,19,21

**declared**
32:22

**defendant's**
8:24
9:14
10:10

**degree**
39:6

**deposed**
7:24
19:6,7
26:10

**deposition**

4:4,7
7:18
8:2,3,4,
22 9:9,
12,13
10:8
19:14,19
20:11,20
26:13
33:14
42:22

**deputy**
7:23

**determine**
39:23

**difference**
8:7 22:9

**dig**
25:1

**digital**
25:8
38:12
42:3

**direct**
5:22
17:17
34:5

**directed**
34:9
36:15,
17,22,25
38:16

**directing**
35:20
37:8
38:4

**directs**
34:23
36:3

Matthew Schruers
April 09, 2025

4

disagree
22:3
discuss
21:8
discussion
41:23
42:1
distributed
35:7
distributing
34:24
district
6:21,24,
25 7:1
document
8:17,19,
21 9:8,
11,25
10:1,4,7
11:9
12:1,7
documents
8:13,14,
15 11:5,
7,8,10,
11,13
12:2,8
20:16
41:1
drawing
29:1
driven
40:3
duly
7:12

E

earlier
19:7
editorial
38:21
effect
18:12,
21,24
elements
14:21
email
17:16
employed
37:7
employees
37:6,23
41:7
employs
23:22
enacted
32:21
33:12
encounter
25:19
end
18:19
40:8
41:4
ended
12:12
enforce
32:22
enforced
19:2

enforcement
21:23
enforcing
15:17
ensure
38:17
enterprise
25:14,
17,22
errata
9:23,24
EXAMINATION
5:22
41:16
examined
7:12
Excuse
6:2
executed
26:6
exhibit
8:22,24
9:2,6,
11,13,
14,22
10:8,9,
10,14,
16,17,22
11:2,6,
8,11,12,
14 12:1,
20 13:6
14:13
15:10
21:7
22:7,10,
18,19,20

23:1
27:1
experience
23:4,7
29:23
38:25
41:13
experiences
38:24
expert
25:22
30:25
explain
42:5
explanation
21:12
extent
10:23,24
12:21,24
17:20,22
extra
8:8

F

Facebook
34:17
36:16
41:10
facing
26:20
fair
12:19
21:16
22:8
false
39:7,8

faster
40:13
feature
19:24
features
10:5
24:1
federal
6:25
filed
10:3
15:14,
21,22
18:3,6,
9,19
29:10
Florida
4:19
6:15
7:24
15:16,25
32:9,20
Florida's
30:25
foolproof
39:7
form
7:20
12:5
13:12
14:9,16,
24 15:6,
18 16:1,
7 17:9
18:17
19:3,11,
20 20:2,
12
21:10,
17,25

22:12
23:16
24:7,11
25:5
26:18
27:5,14
28:5,23
29:6,15
30:6,13,
19
31:14,23
33:16,25
34:11
35:1,9,
25 36:5,
19 37:2,
9 38:6
40:4
frame
27:3
frequent
25:9
frequently
25:19
front
6:17
8:14,15
10:5
30:8

G

gained
23:12,13
31:25
32:4,5
gave
28:12
general
4:18
7:23

Matthew Schruers
April 09, 2025

30:20
31:4

**generally**
8:5
31:19,20
32:15
34:1
41:9

**George**
4:9

**give**
5:17 7:7
14:4
21:12
33:12

**Good**
5:24

**Google**
18:9
19:18
20:9
21:22,23
22:2
26:17,21
34:17
35:19
36:17
37:7,22
38:3
41:19

**Google's**
34:9

**government**
6:17

**governments**
25:15

**governor**
33:10

**granular**
39:17

**Great**
40:20,21
41:15

**ground**
8:4
19:15

**group**
17:15

**Guard**
4:17
5:9,23
6:3,7,9
7:16,23
11:4
12:10
13:1,9,
14,20
14:1,12,
18 15:1,
13,20
16:4,10,
21 17:1
18:1,18
19:5,12,
22 20:4,
6,21
21:14,20
22:5,15
24:4,9,
14 25:24
26:24
27:8,17
28:8,25
29:9,20
30:9,15
31:6,17
32:1
33:19
34:3,20
35:18
36:1,13,

21 37:5,
15 38:8
40:7,8,
13,15
41:4,17
42:4,8,
10,14,17

**guess**
11:16
25:1

**guidelines**
39:13

**guys**
7:15

_____

**H**
_____

**hand**
5:16 7:6

**hashes**
39:2

**HB3**
18:3,6,
10,12
19:1,2
21:23

**head**
25:21

**held**
4:7

**high**
39:6

**higher**
5:8

**hold**
5:1,7

**hour**
22:17
40:9

**hours**
30:5
31:1,7,
12

**human**
37:14,
17,19,
21,22
39:19,22
41:7

**human-**
38:15
39:4

**humans**
39:9

**hyperlink**
11:10

**hyperlinked**
12:3

**hyperlinks**
11:7

_____

**I**
_____

**ID**
4:24
6:17

**identification**
8:22,25
9:11,15
10:8,11

**identified**
23:15

**illegal**
38:19

**imagine**
41:21

**implementation**
21:23

**inaccurate**
9:6,21

**include**
17:11,12
32:18

**includes**
11:15
12:11
17:7
38:16

**including**
20:17
21:22
32:25
33:10
38:12

**inconsistent**
38:18

**indicating**
10:3

**individuals**
36:23

**industry**
4:6
23:4,11
32:17
38:2

**inescapable**
32:17

**influence**
37:19

**information**
10:24,25
12:23
14:7
16:9
19:17
20:10
25:7
26:16
29:13
30:7,10,
21 31:3
32:10
36:24
37:3

**informed**
11:8
23:10
39:2,5

**informing**
23:14

**informs**
23:12

**infringing**
39:4

**inherently**
35:17

**injunction**
15:15

**Instagram**
34:17,
22,24
35:8

Matthew Schruers
April 09, 2025

36:15
41:10

**Instagram's**
34:23

**instruct**
12:23

**instruction**
13:7,19

**intention**
32:22

**interactions**
37:19,
21,22

**interactive**
24:2

**interacts**
25:17

**interchangeably**
34:15

**interest**
25:16
35:14

**interpreted**
35:12

**intervening**
20:15

**invariably**
36:10

**involve**
39:11

---

**J**

**James**
4:17,20
33:20
42:4

**January**
18:15,25

**John**
4:17
7:22

---

**K**

**kids**
30:11
38:25

**kind**
17:9
36:16
41:13

**knew**
19:9

**knowledge**
9:6,7,20
12:4
17:25
18:2,5,
9,23
19:1,8
23:11,
13,19,
21,24
29:14,
16,19,24
30:17
38:13

---

**L**

**lag**
8:10

**large**
38:14

**law**
18:20
25:12
32:22

**laws**
15:17

**lawsuit**
15:4,8,
14,21
16:5,23
17:4,6,
19 18:5,
9,19
19:24,25
21:2,21

**lawyer**
16:14

**lead**
15:12

**learned**
19:13,
18,24

**leaving**
7:15

**legal**
16:20
25:9
34:13
35:3,13

**legislature**
33:10

**Lexitas**
4:13

---

**linked**
11:14

**links**
41:1

**list**
32:13

**listed**
24:18
25:4

**located**
6:18
32:9
38:4

**logic**
34:21

**long**
8:23
30:17
34:18

**longer**
10:18

**looked**
34:6

---

**M**

**Madam**
6:7

**made**
33:10
37:20
38:11,20
39:15,24
41:12

**main**
22:9

**majority**
36:14
38:12
40:1

---

**make**
5:3,6,8
14:13,19
23:23,24
35:4
38:23

**makes**
25:9

**making**
14:22
31:18
38:5

**March**
10:2,3
28:17

**mark**
8:21
9:10
10:7

**marked**
8:24
9:14
10:10

**marketplace**
25:8

**material**
22:11

**math**
10:19

**matter**
4:5

**matters**
25:10

**Matthew**
4:5 6:1
7:11

**meeting**
42:2

**Melissa**
4:10,11,

---

12

**member**
13:10,21

**members**
15:2
17:6,8
21:22
33:9
39:16

**mention**
29:23

**mentioned**
11:20
26:1
33:7

**Meta**
13:5,10,
15,20,
21,22
14:2,6,
15,17,
20,23
15:2,5,
17,22,24
16:5,12,
13,16,22
17:3,7,
17 18:2,
6 19:18
20:9
33:23
34:4,9,
15,16
35:19
36:17
37:7,22
38:3
41:19

**Meta's**
13:16
19:8

Matthew Schruers
April 09, 2025

7

| | | | | | |
|---|---|---|---|---|---|
| **metrics** 24:2 | **negatives** 39:8 | 10:23 12:5 19:3,11, 20 20:2, 12 21:10, 17,25 22:12 23:16 24:7,11 25:5 26:18 27:5,14 28:5,23 29:6,15 30:6,13, 19 31:14,23 33:16,25 34:11 35:1,9, 25 36:5, 19 37:2, 9 38:6 | **observations** 23:8 | **operates** 23:9 35:23 | **P** |
| **mind** 20:9 | **Netchoice** 4:21 | | **observed** 24:19 25:13 32:20 33:1 | **operation** 23:18 37:14,17 | **p.m.** 4:1,4 40:17,20 42:21,22 |
| **minutes** 40:14 | **newsletter** 17:16 | | | | **pages** 8:23 9:1 10:18 22:11,23 |
| **moment** 4:2 6:19,20 40:16 | **newsletters** 17:12 | | **observing** 23:17 25:7 | **operationalize** 39:18 | |
| **months** 32:2 | **non-use** 25:4 | | **October** 8:18 18:20 28:3 29:11 31:22 | **operations** 13:6 38:15 | **paragraph** 14:14, 17,20,21 22:18,25 23:6 25:25 27:1,7 29:21,22 30:1 |
| **months-plus** 19:1 | **notary** 6:2,4,5, 9,13,14, 22 7:1,5 | | | **opine** 16:20 | |
| **Moody** 4:6 33:20 | **note** 34:14 42:19 | | **Oculus** 20:1 | **opinion** 34:13 35:13 | |
| **moving** 21:6 | **notes** 40:11 | | **offer** 41:14 | **opportunity** 9:13 | **paragraphs** 20:18 22:19,22 |
| **multiple** 31:9 32:12 | **notifications** 24:2 | **objection** 7:19 12:21 13:7,12, 18 14:9, 16,24 15:6,18 16:1,7, 19 17:20 18:17 40:4 | **offered** 34:16 | **opposing** 7:19 | |
| | | | **officials** 32:22 33:7,8, 12,14, 18,21 | **order** 42:15,17 | **part** 22:19 |
| **N** | **number** 14:14,19 38:15 | | | **ordering** 42:12 | **Partnership** 42:3 |
| **names** 33:6,12, 14,17 | **numbers** 10:21 | | **omnipresent** 25:23 | **organizations** 25:16 | **parts** 38:23 |
| **narrow** 19:23 20:4 21:1 | **numerous** 37:18 | | **one-on-one** 17:17 | **original** 8:17 10:17 16:21 17:2 22:7,20 26:16 31:21 | **Patricia** 6:12,13 |
| **narrowing** 20:8 | **O** | **objectionable** 38:19 | **online** 6:14 | | **penumbra** 39:12 |
| **nature** 17:14 25:13 | **oath** 6:5,15 7:3 | **objections** 7:21 | **operate** 36:12 | | **people** 9:19 38:3 |
| **negative** 39:7 | **object** 7:20 | | | **owned** 36:17 | **percent** 31:11 |

Matthew Schruers
April 09, 2025

8

| | | | | | |
|---|---|---|---|---|---|
| **percentage** | 25:10,22 | **preparing** | **Proceedings** | **publicly** | **rationale** |
| 30:3 | **pornography** | 11:5,12 | 4:1 | 28:3,15, | 14:4 |
| 36:22,25 | 34:22, | 12:9,18 | **process** | 17,18,21 | **reach** |
| **perfect** | 24,25 | 13:6 | 26:21 | 29:5,7, | 42:18 |
| 5:11 | **position** | 21:7 | **processes** | 8,10 | **read** |
| **person** | 35:4 | 26:22 | 36:12 | 30:22 | 28:18 |
| 37:14 | **positive** | **presence** | 38:15,17 | **purposes** | 35:16 |
| **personal** | 39:7 | 37:13 | 39:1,23 | 37:11 | 42:5,6,7 |
| 17:25 | **positives** | **presentation** | **product** | **push** | **realized** |
| 24:2,23 | 39:8 | 35:15 | 25:14 | 24:1 | 21:4 |
| 25:20 | **post** | **preserve** | 34:16,22 | **put** | **reason** |
| 29:14, | 36:3 | 7:21 | 38:25 | 10:1 | 21:7 |
| 16,19,23 | **posted** | **press** | 41:8 | 14:7 | **recall** |
| 30:16 | 34:22 | 17:9,11, | **products** | 38:22 | 11:22,23 |
| **personally** | **potentially** | 15 | 14:20 | ———— | 12:15,17 |
| 24:19 | 33:10 | **preventing** | 34:15,19 | **Q** | 18:14 |
| 32:18 | **practitioner** | 15:16 | 36:16 | ———— | 20:13,19 |
| **personnel** | 32:16 | **previous** | **professional** | **question** | 21:3 |
| 36:7 | **precisely** | 20:7 | 25:20,21 | 7:20 | 22:1 |
| 41:12 | 12:15 | **prior** | **professor** | 12:12,13 | 26:5,14, |
| **pertains** | 17:14 | 12:17 | 25:12 | 13:2 | 19,20,23 |
| 14:17 | 18:14 | 20:19 | **programmed** | 16:21 | 33:22 |
| **phrase** | 20:13 | **privilege** | 41:7 | 17:2 | 41:24 |
| 27:3 | 26:5,19 | 12:21,22 | **provide** | 19:21 | **receives** |
| **physically** | 31:24 | 13:18,22 | 6:16 | 20:2,7 | 40:2 |
| 35:19 | 32:4 | 16:17, | 8:12 | 24:13,17 | **recollection** |
| 37:8,10, | **prefaced** | 18,24 | **provided** | 28:24 | 11:17 |
| 12 38:4 | 13:2 | **privileged** | 9:8,25 | 33:4 | 33:5,9 |
| **place** | **preparation** | 10:24,25 | **provision** | 34:13 | **recommendation** |
| 8:4 | 11:9 | 12:24 | 39:12 | 35:11 | 35:16 |
| **platforms** | **prepared** | 16:9 | **public** | 37:12,25 | **record** |
| 40:2 | 10:22 | 17:21 | 21:5 | **questions** | 4:3,15 |
| **point** | 11:2 | **problematic** | 25:10,16 | 40:9,25 | 5:25 |
| 27:18 | 41:6 | 39:3 | 26:20 | 41:5,15 | 40:17, |
| **policy** | | | | 42:4 | 18,19 |
| 21:5 | | | | ———— | 42:10, |
| | | | | **R** | 12,21 |
| | | | | ———— | **recorded** |
| | | | | **raise** | |
| | | | | 5:15 7:5 | |

4:4

**recross**
41:18

**redirect**
40:25
41:16

**redirects**
40:12

**referring**
33:8,18
34:15
37:16,22

**refers**
31:9

**reflected**
28:13

**refusing**
33:4

**Reitzman**
4:10

**relating**
13:5

**relationship**
16:12

**relative**
12:18

**release**
17:9

**released**
30:22

**releases**
17:11,15

**relevant**
20:8

**relief**
15:4

**remedies**
16:23
17:18

**remedy**
15:15
16:6
17:4

**remotely**
4:7 7:3

**reporter**
4:11,15,
22 5:1,
3,5,11,
14,20
6:7,8,11

**represent**
13:21
16:13
18:25

**representative**
15:9

**representatives**
17:7

**reside**
32:19

**respect**
19:23

**restate**
24:12

**retrod**
19:15

**revealing**
10:25
12:22,24
17:22

**review**
9:13,17

11:11,
19,21
12:2,13
26:4
40:25

**reviewed**
11:23
12:9,15,
16,18
20:14,
15,16,19
26:6,12

**reviewing**
26:1

**Rodriguez**
4:9

**room**
7:15
37:13

**Rothwell**
27:21

**roughly**
10:17
22:10,
13,23

**rules**
8:4
39:18

———————

S

———————

**S-C-H-R-U-E-R-S**
6:1

**safety**
38:17
42:3

**sake**
5:12
18:24

**scan**
5:9

**Schruers**
4:5,23
5:15,24
6:1
7:11,22
40:24

**Seattle**
36:2,7

**security**
38:17

**seek**
26:16

**seeking**
15:4,15
16:23
17:4,18
21:22

**selection**
35:14

**selections**
23:23
38:5

**sentence**
23:2
32:7,11

**server**
39:20

**service**
25:15,18
31:5
32:16
38:19
39:13,14

**services**
25:8
30:24
31:9

32:23
38:12,13
39:5
41:11

**share**
23:20

**signature**
9:2
10:13

**signed**
8:18
10:2
26:15
31:21

**signing**
41:2

**similar**
17:12

**sir**
4:24
5:20
16:12
27:23
29:1
30:2
31:7
40:1

**sit**
9:5,20

**site**
31:12
38:23

**sitting**
17:13
30:2
33:13
36:2
38:1

**society**
25:16

**software**
23:25
39:16,23

**sought**
16:6

**sound**
18:15

**source**
27:9,12,
15,16
32:9

**sources**
27:4,6
32:12,13

**space**
25:23

**speak**
12:20

**speaks**
30:1

**specific**
35:20,21

**speech**
34:10
35:8,13,
15,16,17

**speed**
22:16

**spell**
5:25

**spend**
30:3,4,
11 31:1,
12

**spoken**
16:22
20:22,24
21:2,5
41:18

**standing**
15:9

| | | | | | |
|---|---|---|---|---|---|
| **starts** | **subject** | **supposed** | 33:1,2 | 40:17,20 | **understand** |
| 23:1 | 9:23 | 6:4 | **telling** | 41:22,25 | 8:5,6,10 |
| 27:1 | 13:4,8 | **surprised** | 20:1 | 42:16, | 24:16 |
| **state** | 17:24 | 9:19 | 33:5 | 17,21 | 28:24 |
| 4:18 | 22:3 | **survey** | **term** | **times** | 32:8 |
| 5:25 | 25:9 | 30:21 | 34:1 | 25:23 | 34:18 |
| 6:14,18, | 37:18 | **surveys** | **terms** | 36:12 | 37:24 |
| 24 7:24 | **submitted** | 31:19,21 | 38:18 | **today** | **understanding** |
| 15:16,25 | 9:23 | **swear** | 39:12,13 | 5:17 | 30:20 |
| 23:3 | 11:16,18 | 4:15,23 | **testified** | 6:16 9:5 | 31:4,25 |
| 32:18, | 15:11 | 5:14,16 | 7:12 | 12:17 | 32:5,10, |
| 21,22,25 | **subparagraph** | 7:6 | **testifying** | 17:13 | 24 |
| 33:9 | 26:25 | **sworn** | 31:11 | **today's** | **understood** |
| **stated** | 27:2,13, | 7:12 | **testimony** | 42:20 | 19:9 |
| 29:17 | 19 29:13 | **systems** | 5:17 7:6 | **top** | 34:2 |
| **statement** | 32:6 | 23:22 | 37:6 | 10:3 | **union** |
| 22:14 | **subparagraphs** | 39:17 | 38:1,7,9 | **true** | 32:18 |
| 23:25 | 23:9,14 | | 42:13,20 | 24:21 | **unlike** |
| **statements** | **subpart** | **———** | **thing** | 40:1 | 29:21 |
| 14:23 | 27:2 | **T** | 34:19 | **Trust** | **updates** |
| 29:17 | **subsidiaries** | **———** | **things** | 42:3 | 17:12 |
| 33:11 | 37:7,23 | **talk** | 20:8 | **truth** | **upload** |
| **statute** | **subsidiary** | 29:25 | 24:18,19 | 5:17,18 | 23:20 |
| 27:16 | 22:2 | **talked** | 25:3 | 7:7,8 | **URLS** |
| 32:23 | **successful** | 16:5 | **thought** | **turn** | 26:20 |
| 33:11 | 25:8 | 19:7 | 39:21 | 22:17 | **usage** |
| **stenographer** | **sufficiently** | 27:10,11 | **tilt** | 26:15,25 | 23:18 |
| 4:10 | 39:17 | 29:24 | 5:7 | **Turning** | **user** |
| **strike** | **supervised** | **talking** | **time** | 32:6 | 23:18 |
| 20:23 | 38:24 | 8:9 | 4:3 5:12 | **type** | 25:14, |
| **strip** | **suppose** | 38:13 | 8:7 | 39:18,19 | 20,22 |
| 39:3 | 12:6 | **taught** | 12:17 | | 34:6,24 |
| **study** | | 25:11 | 20:11,15 | **———** | 35:21 |
| 27:13, | | **team** | 27:18 | **U** | 36:3 |
| 19,25 | | 39:16 | 28:22 | **———** | 39:24 |
| 28:2,15, | | **Technically** | 30:11 | **unaware** | 40:2 |
| 20 29:2, | | 23:3 | 33:11 | 28:20 | **users** |
| 25 31:9 | | **teens** | 39:25 | **underlying** | 13:16 |
| | | 31:1 | | 34:8 | |
| | | 32:25 | | | |

Matthew Schruers
April 09, 2025                                                                11

15:24
23:20
25:18
30:3,12
31:12
32:8,19
34:5,9
37:8,20,
23 38:4,
5,11,14
39:15
41:14

**Uthmeier**
4:18
33:21

**utilize**
30:17

**utilized**
30:24
31:5
32:16,25

---

**V**

**vast**
36:14
38:12
39:21
40:1

**Veitch**
11:20,
24,25
12:3
20:15,
22,24
21:2,8,
24 22:1
26:9,17

**Veitch's**
26:1,12
27:10,11
29:18

**video**
4:4
42:13

**videocon
ference**
4:8

**videos**
23:21

**view**
34:12

**visible**
38:14

---

**W**

**waive**
42:5

**walking**
16:25

**wanted**
40:11

**Washingt
on**
6:23,25
7:1
36:2,8

**websites**
20:17
41:9,19

**Whatsapp**
34:17

**When's**
41:22

**widely**
30:23
31:4
32:16,24

**wording**
5:3

**work**
5:13

13:11

**worked**
23:10

**works**
21:24
22:2

**Wrightsm
an**
4:11,12,
13

**wrote**
28:9

---

**X**

**Xi**
4:20
10:23
12:5,21
13:7,12,
18,23
14:9,16,
24 15:6,
18 16:1,
7,19
17:20
18:17
19:3,11,
20 20:2,
12
21:10,
17,25
22:12
23:16
24:7,11
25:5
26:18
27:5,14
28:5,23
29:6,15
30:6,13,
19
31:14,23

33:16,25
34:11
35:1,9,
25 36:5,
19 37:2,
9 38:6
40:4,10,
14,21,23
41:15
42:7,9

---

**Y**

**years**
30:22
32:3
38:2

**Youtube**
19:8
22:2
23:8,18,
19,20,
21,25
24:6,10,
20,23
25:4,7,
19,23
30:5,12,
17,23
31:4,8,
12 32:8,
15,20,23
33:23
34:5
36:15
38:25
41:10

**Youtube'
s**
35:7

---

**Z**

**Zoom**
4:7 8:8