## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

COMPUTER & COMMUNICATIONS
INDUSTRY ASSOCIATION, et al.,

      Plaintiffs,

v.

                                    Case No. 4:24-cv-00438-MW-MAF

JAMES UTHMEIER, in his official
capacity as Attorney General of the
State of Florida,

      Defendant.

_____/

## MOTION TO DISMISS IN PART PLAINTIFFS' AMENDED COMPLAINT

Plaintiffs' Section 1983, Fourteenth Amendment, and preemption claims must

be dismissed. *See* Fed. R. Civ. P. 12(b)(6). First, Plaintiffs' Section 1983 claims fail

because Section 1983 does not provide a cause of action to sue for violations of

others' rights, and Plaintiffs allege only that HB3 violates tech companies' and

social-media users' rights—not their own. Second, Plaintiffs fail to allege a facial

vagueness challenge because HB3 is not impermissibly vague in any—let alone

all—applications. Last, Plaintiffs' preemption claims must be dismissed because

Plaintiffs lack a cause of action, and HB3's data-retention provisions are consistent with the Child Online Privacy Protection Act (COPPA) in any event.[1]

## BACKGROUND

The Florida Legislature passed HB3 in 2024. The law regulates addictive design features on internet platforms to protect children's mental health. HB3 limits the ability of platforms that use the features to "contract" with children. Fla. Stat. § 501.1736(2)(a), (3)(a). It also requires such platforms to "[a]llow" a child's "parent . . . to request that the [child]'s account be terminated." *Id.* § 501.1736(2)(b)3, (3)(b)3, (4)(b)3. After the account is terminated, the platform must "[p]ermanently delete all [of the child's] personal information." *Id.* § 501.1736(2)(b)4, (3)(b)4, (4)(b)4 (HB3's data-retention provisions).

Plaintiffs are "trade association[s]" that purport to "represent[] a broad cross-section of [internet] companies." DE74 ¶¶ 7-8. They "bring[] this action" challenging HB3 on their "members' behalf to vindicate [their] . . . rights and the . . . rights of their users." *Id.* Plaintiffs contend that HB3 conflicts with the First Amendment (Count I), the Fourteenth Amendment (Count II), and COPPA (Count

---

[1] Florida has not yet answered Plaintiffs' amended complaint because "a party need not file an answer as to the unchallenged claims while a partial motion to dismiss" is pending. *Taylor v. Pekerol*, No. 14-cv-96-RH-GRJ, 2016 WL 7985259, at *1 (N.D. Fla. Mar. 10, 2016). Therefore, unless the Court instructs otherwise, Florida intends to refrain from answering Plaintiffs' individual allegations until after this motion is resolved.

III). They assert that "42 U.S.C. § 1983" and equity provide them causes of action, DE74 at 39, 55, 59; and they request injunctive and declaratory relief, as well as "attorneys' fees . . . under 42 U.S.C. § 1988." DE74 at 63-64.

This Court dismissed Plaintiffs' initial complaint "for lack of standing." DE73 at 1. In Florida's motion to dismiss that complaint, it argued not only that Plaintiffs lacked standing but also that they "do not have a cause of action under Section 1983 to assert the rights of others," DE50 at 24; that they "fail[ed] to state a Fourteenth Amendment claim," DE50 at 34; and that their COPPA "preemption claims fail." DE50 at 36. But because the Court dismissed the complaint for lack of standing, it did not pass on those legal arguments. DE73 at 6.

## STANDARD OF REVIEW

A claim should be dismissed "pursuant to Federal Rule of Civil Procedure 12(b)(6) when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

# ARGUMENT

## I. PLAINTIFFS HAVE NO CAUSE OF ACTION UNDER SECTION 1983 TO SUE FOR ALLEGED VIOLATIONS OF OTHERS' FIRST AMENDMENT, FOURTEENTH AMENDMENT, OR STATUTORY RIGHTS.

Plaintiffs lack a cause of action under Section 1983 because they do not allege a deprivation of their own rights. *See* DE74 ¶¶ 7-8 (asserting the rights of their members and social-media users). To enjoy a cause of action under Section 1983, a plaintiff must belong to the "particular class of persons" on which the statute confers a "right to sue." *Lexmark Int'l v. Static Control Components*, 572 U.S. 118, 127 (2014). But the only class of persons on which Section 1983 confers a right to sue is those who have personally suffered a deprivation of federal rights.

Section 1983 states: "Every [state actor who] subjects . . . any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights . . . secured by [federal law], shall be liable to *the party injured* in an action." 42 U.S.C. § 1983 (emphasis added). The statute thus grants only "the party injured" the right to bring "an action." *Id.* It does not give trade associations a derivative action to assert the rights of others who have been deprived of their rights. "Neither [Section 1983's] language nor [its] history . . . suggests that an organization may sue under [it] for the violation of rights of members" or others. *Aguayo v. Richardson*, 473 F.2d 1090, 1099 (2d Cir. 1973) (Friendly, J.); *see also Shaw v. Garrison*, 545 F.2d 980, 983 n.4 (5th Cir. 1977) (Wisdom, J.) (noting that the case was "not an

4

attempt to sue under the civil rights statutes for deprivation of another's constitutional rights" and that "[s]uch suits are impermissible"), *rev'd on other grounds*, 436 U.S. 584 (1978); *People Organized for Welfare & Emp. Rts. v. Thompson*, 727 F.2d 167, 170 (7th Cir. 1984) (Posner, J.) ("[S]ection 1983 contains no suggestion that Congress wanted to allow an association to sue to enforce not only its own civil rights but those of its members."); *Vote.org v. Callanen*, 39 F.4th 297, 304-05 (5th Cir. 2022) (association lacked "statutory standing" because Section 1983's text "precludes an action premised on the deprivation of another's rights"); *Vote.org v. Byrd*, 700 F. Supp. 3d 1047, 1052-53 (N.D. Fla. 2023) (finding this textual analysis of Section 1983 "persuasive"); David P. Currie, *Misunderstanding Standing*, 1981 Sup. Ct. Rev. 41, 45 (1982).

Plaintiffs cannot rewrite Section 1983 to confer on associations a cause of action to sue for non-parties whenever "relief [will ultimately] flow from the state actors sued to the [non-]party injured.'" DE62 at 21. Section 1983 permits suit only to hold a state actor "liable to the party" that has suffered a "deprivation of rights." 42 U.S.C. § 1983. That cannot occur when an association sues for alleged violations of its members' and their customers' rights, both because the entity that suffered the alleged "deprivation" is not a "party," and because the state actor cannot be held "liable to" the injured non-party—it can be held liable at final judgment only to the uninjured association. *See* Fed. R. Civ. P. 54(b) ("judgment[s]" are "direct[ed]" at

"parties"); *Taylor v. Sturgell*, 553 U.S. 880, 884 (2008) (Generally, "one is not bound by a judgment [when] he is not designated as a party[.]").

The cases Plaintiffs cited in response to Florida's first motion to dismiss do not refute that analysis. DE62 at 21-22. None but *Vote.org v. Callanen*, 89 F.4th 459 (5th Cir. 2023) even addressed whether Section 1983 bars associations from pursuing members' rights. *See Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions . . . neither brought to the attention of the court nor ruled upon[] are not to be considered as having been so decided as to constitute precedents.").[2] And *Callanen* grappled with none of the above textual arguments. It determined that "Section 1983 is an appropriate vehicle for third-party claims" simply because such claims "have been allowed" in other cases that also did not address the cause-of-action problem. 89 F.4th at 473. That is no reason to neglect statutory text.

Nor is it "unnecessary to" resolve this issue—as Plaintiffs argued in *NetChoice v. Uthmeier*—simply because Plaintiffs bring claims under both Section 1983 and equity. No. 21-cv-220-RH-MAF, slip op. 28 (N.D. Fla. May 22, 2025),

---

[2] The Eleventh Circuit has passed on Section 1983 claims alleging a violation of others' rights without considering whether the text affords a cause of action. *See, e.g.*, *Young Apartments v. Town of Jupiter*, 529 F.3d 1027, 1032 (11th Cir. 2008); *Moms for Liberty v. Brevard Pub. Schs.*, 118 F.4th 1324, 1330 (11th Cir. 2024). Those "drive-by" decisions are not controlling, especially since courts ordinarily do not consider non-jurisdictional questions like the existence of a cause of action unless raised by the parties. *Cf. Kondrat'yev v. City of Pensacola*, 949 F.3d 1319, 1325 n.2 (11th Cir. 2020).

ECF No. 209. For starters, whether Plaintiffs have equitable claims that overlap with their Section 1983 claims is legally irrelevant: If their Section 1983 claims are not "plausible," they "must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In any event, Plaintiffs' Section 1983 claims are not merely duplicative of their equitable claims. Plaintiffs seek "attorney's fees . . . under 42 U.S.C. 1988," DE74 at 64, which are available only if Plaintiffs succeed on a Section 1983 claim. 42 U.S.C. § 1988(b). So even though Plaintiffs also assert a cause of action in equity, the purely legal question whether their Section 1983 claims must be dismissed bears directly on their requested relief and Florida's potential liability. *Cf. City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 123 (2005) (observing that "[l]iability for attorney's fees" under Section 1983 can have a "severe impact" on government entities).

## II.    PLAINTIFFS FAIL TO STATE A FOURTEENTH AMENDMENT CLAIM.

Plaintiffs claim that Section 501.1736(2), (3), and (4) are unconstitutionally vague on their face because the phrases "upload content," "algorithms," and "push notifications . . . about specific activities or events related to the user's account" contain "ambiguities." DE74 ¶¶ 126-30. But Plaintiffs offer no allegations suggesting that those phrases are "impermissibly vague in all . . . applications." *Stardust, 3007 LLC v. City of Brookhaven*, 899 F.3d 1164, 1176 (11th Cir. 2018). They do not allege that all their members suffer from a hopeless lack of clarity about

whether HB3 would apply to them. Indeed, the very premise of their First Amendment claims is that some of their members engage in conduct proscribed by HB3. *See, e.g.*, DE74 ¶¶ 12-23. The vagueness claims fail for that reason alone.

Even so, the purportedly "ambiguous" phrases are not "so vague that persons of ordinary intelligence must necessarily guess at [their] meaning." *DA Mortg., Inc. v. City of Miami Beach*, 486 F.3d 1254, 1271 (11th Cir. 2007). Plaintiffs' principal gripes are that the phrases are "undefined" and that HB3 "does not answer" every hypothetical they can dream up. DE74 ¶ 127. But the Florida Legislature "is not required to define each and every word in a piece of legislation," and Plaintiffs' hypotheticals ignore the statutory context, attempting to manufacture vagueness by reading the phrases in a vacuum. *Catalyst Pharms., Inc. v. Becerra*, 14 F.4th 1299, 1307 (11th Cir. 2021). Plaintiffs object to the term "algorithms" because "*all* computer code can be considered an algorithm at some level," DE74 ¶ 128, but the statute does not use "algorithms" in isolation—it describes "algorithms that analyze user data or information on users to select content for users." Fla. Stat. § 501.1736(1)(e)3; *see also Moody v. NetChoice*, 603 U.S. 707, 734-35, 736 n.5 (2024) (repeatedly using the term "algorithm" without defining it). Nor do "upload content" and "push notifications" require anyone to guess at their meaning: They are common concepts across platforms.

For those reasons, this Court has already all but rejected Plaintiffs' vagueness arguments. In its order granting Plaintiffs' "renewed" preliminary-injunction motion, the Court referenced Plaintiffs' "vagueness challenge" and explained that it "does not agree that [HB3] sweeps" as "broadly" as Plaintiffs contend. DE94 at 27 n.11.

## III. PLAINTIFFS FAIL TO STATE A COPPA PREEMPTION CLAIM.

Plaintiffs allege that COPPA's regulations "expressly" preempt HB3's data-retention provisions, DE74 ¶ 140, but Plaintiffs have no cause of action for COPPA preemption, and even if they did, COPPA does not preempt the provisions.

### A. Plaintiffs lack a cause of action for COPPA preemption.

Neither Section 1983 nor equity provide Plaintiffs a cause of action for their COPPA preemption claims because COPPA confers no rights on internet platforms, and it forecloses private enforcement.

**1.** Even assuming that Plaintiffs can use Section 1983 to assert the rights of others, Section 1983 provides no "right of action" for COPPA preemption. *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 107-08 (1989). Section 1983 can serve as the vehicle for a preemption claim only if the allegedly preemptive statute "unambiguously secures rights" and Congress "intend[ed] that [Section] 1983 be available to enforce those rights." *Health & Hosp. Corp. v. Talevski*, 599 U.S. 166, 186 (2023). But COPPA neither secures individual rights for tech companies nor

"authorize[s] a private right of action." *Jones v. Google*, 73 F.4th 636, 641 (9th Cir. 2023). Far from conferring rights on tech companies, COPPA *regulates* them by limiting their ability to collect children's data. *See* 15 U.S.C. § 6502(a), (b). And COPPA's text shows that Congress "inten[ded] to foreclose" private enforcement. *Armstrong v. Exceptional Child Ctr.*, 575 U.S. 320, 326-29 (2015); *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 n.4 (2002). COPPA "confers enforcement authority" exclusively "on the [Federal Trade Commission]" (FTC) and "state attorneys general." *Jones*, 73 F.4th at 641. The statute expressly provides that it "shall be enforced by the" FTC, 15 U.S.C. § 6505(a), and state "attorney[s] general." *Id.* § 6504(a)(1); *see also Jones*, 73 F.4th at 641 ("COPPA does not authorize a private right of action."); *Hartman v. Meta Platforms*, No. 23-cv-02995-NJR, 2024 WL 4213302, at *13 (S.D. Ill. Sept. 17, 2024) (same); *Croy v. Google*, No. 23-12106, 2024 WL 4251907, at *5 (E.D. Mich. Aug. 21, 2024) (same), *report and recommendation adopted*, No. 23-12106, 2024 WL 4349185 (E.D. Mich. Sept. 30, 2024).

**2.** That forecloses not only a Section 1983 action but also an equitable action. Equity—like Section 1983—provides no path to relief when a statute's text shows that Congress "inten[ded] to foreclose" private enforcement. *Armstrong*, 575 U.S. at 326-29; *United Transp. Union v. Lewis*, 699 F.2d 1109, 1113 (11th Cir. 1983) (Because the statute "provides that penalties for violations . . . can be recovered in

an action brought by the U.S. attorney[, n]o mechanism for private enforcement of [it] exists[.]"); *Upside Foods v. Simpson*, No. 24-cv-316-MW-MAF, slip op. 12-14 (N.D. Fla. Apr. 25, 2025), ECF No. 85. Nor can a plaintiff bring an action in equity unless it "has been given a federal right." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 261 n.8 (2011); *see also Safe Sts. All. v. Hickenlooper*, 859 F.3d 865, 899-904 (10th Cir. 2017).[3]

**B.      Even if Plaintiffs had a cause of action, COPPA does not expressly preempt HB3.**

According to Plaintiffs, COPPA's regulations "expressly" preempt HB3's data-retention provisions, DE74 ¶ 140, which require a covered platform to "[p]ermanently delete all [of a child's] personal information" after the platform "terminate[s]" the child's account. Fla. Stat. § 501.1736(2)(b)4, (3)(b)4, (4)(b)4. That argument has no merit. "Express preemption arises when the text of a federal statute explicitly manifests Congress's intent to displace state law," yet COPPA manifests no intent to prevent States from regulating platforms' data-retention

---

[3] Florida acknowledges that this Court recently determined that a statute need not confer rights to be enforced by private plaintiffs in equity. *See United Fac. of Fla. v. Lamb*, No. 24-cv-136-MW-MAF, slip op. 23-25 (N.D. Fla. Apr. 11, 2025), ECF No. 39. Florida respectfully maintains its position to the contrary and raises it here for preservation. But this issue ultimately does not matter "because Plaintiffs' claim in equity still cannot proceed [since] it has been foreclosed by Congress." *Id.* at 26.

practices. *Carson v. Monsanto Co.*, 72 F.4th 1261, 1266-67 (11th Cir. 2023) (en banc).

COPPA requires internet platforms to obtain "parental consent" before "collecting personal information from" children under 13 years old. 15 U.S.C. § 6502(a)(1), (b)(1)(A); *id.* § 6501(1). It has an express-preemption provision, which states: "No State . . . may impose any liability for commercial activities or actions by operators in interstate or foreign commerce in connection with an activity or action described in this chapter that is inconsistent with the treatment of those activities or actions under this section." *Id.* § 6502(d).

Nothing about HB3's data-retention provisions is "inconsistent" with COPPA or its regulations. *Id.* The regulations implement COPPA's provision that generally makes it "unlawful for [internet platforms] to collect personal information from a child" without parental consent. *Id.* § 6502(a), (b). Under the regulations, platforms are "required to obtain verifiable parental consent before any collection, use, or disclosure of personal information from children," unless an enumerated exception applies. 16 C.F.R. § 312.5(a), (c). "COPPA" thus "regulates whether personal information can be collected from children [and used] in the first instance," providing them protections against platforms' sophisticated data-collection efforts. *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 292 (3d Cir. 2016). HB3's data-retention provisions impose no "obstacle" to such regulation—rather, they

merely "supplement" COPPA's protections by limiting for how long platforms can keep children's sensitive personal information. *Jones*, 73 F.4th at 642.

Plaintiffs say that HB3's data-retention provisions conflict with COPPA because the FTC's regulations "*permit*[]" platforms to forever "retain 'personal information from children'" if the platforms "first" comply with COPPA's parental-consent requirements. DE74 ¶¶ 138-39 (relying on 16 C.F.R. § 312.5(a), (c)). But COPPA "says nothing about whether" platforms can permanently "retain" collected information. *Nickelodeon Consumer Priv. Litig.*, 827 F.3d at 292 (first quote); DE74 ¶ 138 (second). A platform's data-retention practices are not shielded from State regulation under COPPA simply because the platform complied with COPPA when it first collected the data. *See Jones*, 73 F.4th at 643 (In enacting COPPA, "Congress did not intend to wholly foreclose state protection of children's online privacy.").

## CONCLUSION

This Court should dismiss all of Plaintiffs' Section 1983 claims and Counts II and III of the amended complaint.

Dated: August 21, 2025

Respectfully submitted,

JAMES UTHMEIER
  *Attorney General of Florida*

*/s/ Kevin A. Golembiewski*
Jeffrey Paul DeSousa (FBN 110951)
  *Acting Solicitor General*
Kevin A. Golembiewski (FBN 1002339)
  *Senior Deputy Solicitor General*
Darrick W. Monson (FBN 1041273)
  *Deputy Solicitor General*
Anita J. Patel (FBN 0070214)
James Waczewski (FBN 0154989)
  *Special Counsels*
Sara E. Spears (FBN 1054270)
  *Assistant Attorney General*

Office of the Attorney General
PL-01, The Capitol
Tallahassee, Florida 32399
(850) 414-3300

*Counsel for Defendant*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

This motion complies with Local Rule 7.1(F) because it has 2,922 words. And because this motion will "determine the outcome of a . . . claim," no attorney conference was required. L.R. 7.1(D).

*/s/ Kevin A. Golembiewski*
Counsel for Defendant


## CERTIFICATE OF SERVICE

I certify that on this August 21, 2025, the foregoing motion was served on all counsel of record through the Court's CM/ECF Notice of Electronic Filing System.

*/s/ Kevin A. Golembiewski*
Counsel for Defendant