# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

COMPUTER & COMMUNICATIONS
INDUSTRY ASSOCIATION, et al.,

    *Plaintiffs*,

v.

JAMES UTHMEIER, in his official
capacity as Attorney General of the
State of Florida,

    *Defendant*.

Case No. 4:24-cv-00438-MW-MAF

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
## TO STAY SUMMARY JUDGMENT BRIEFING

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................1

BACKGROUND ..............................................................................................4

LEGAL STANDARD........................................................................................7

ARGUMENT ...................................................................................................8

I.     Florida Has Not Demonstrated Why It Needs Discovery On Whether HB3 Applies To All Social Media Websites Or Bars Children From Accessing Social Media....................................................................................8

II.    Florida Has Not Explained Why It Needs Discovery On Existing Parental Controls ........................................................................................10

III.    Florida Has Not Explained Why It Needs Discovery On Purported "Targeting" Of Children Or On Whether Social Media "Addiction" Is A Social Problem ........................................................................................12

IV.    Florida's Other Asserted Discovery Needs Are Meritless ............................14

CONCLUSION ..............................................................................................20

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Brown v. Ent. Merchs. Ass'n*,
    564 U.S. 786 (2011) ...................................................................................12

*Burns v. Town of Palm Beach*,
    999 F.3d 1317 (11th Cir. 2021)................................................. *passim*

*City of Miami Gardens v. Wells Fargo & Co.*,
    931 F.3d 1274 (11th Cir. 2019)...................................................................8

*Edgewater House Condo. Ass'n v. City of Fort Lauderdale*,
    825 F. App'x 658 (11th Cir. 2020)........................................................7

*Elrod v. Burns*,
    427 U.S. 347 (1976) ..............................................................................16

*FEC v. Cruz*,
    596 U.S. 289 (2022) ................................................................................9

*Fed. Election Comm'n v. Wisc. Right To Life, Inc.*,
    551 U.S. 449 (2007) ................................................................. 1, 10, 20

*FF Cosms. FL, Inc. v. City of Miami Beach*,
    866 F.3d 1290 (11th Cir. 2017)................................................................11

*Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*,
    647 F.3d 1296 (11th Cir. 2011)................................................................15

*Free Speech Coal., Inc. v. Paxton*,
    145 S.Ct. 2291 (2025) ......................................................... 10, 14, 16

*NetChoice, LLC v. Fitch*,
    2025 WL 2350189 (U.S. Aug. 14, 2025)............................................18

*NetChoice, LLC v. Griffin*,
    2024 WL 1262476 (W.D. Ark. Mar. 24, 2024)...............................1, 19

*Packingham v. North Carolina*,
    582 U.S. 98 (2017) ....................................................................................9

*Reflectone, Inc. v. Farrand Optical Co.*,
862 F.2d 841 (11th Cir. 1989) .................................................................7

*Socialist Workers Party v. Leahy*,
145 F.3d 1240 (11th Cir. 1998) ............................................................15

*Solantic v. City of Neptune Beach*,
410 F.3d 1250 (11th Cir. 2005) ...........................................................2, 6

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011) .............................................................................10

*United States v. Playboy Ent. Grp., Inc.*,
529 U.S. 803 (2000) .............................................................................12

## Statutes and Rules

Fla. Admin. Code r.2-43.002(3)(b) ..........................................................16

Fla. Stat. §501.1736(1)(e) ........................................................................9

Fed. R. Civ. P. 30(d)(1) .............................................................................5

Fed. R. Civ. P. 56(b) .................................................................................7

Fed. R. Civ. P. 56(d) ..............................................................................2, 7

## Other Authority

Opp. to App., *NetChoice, LLC v. Fitch*,
2025 WL 2243667 (U.S. July 30, 2025) ................................................ 19

**INTRODUCTION**

First Amendment claims "must entail minimal if any discovery, to allow parties to resolve disputes quickly without chilling speech through the threat of burdensome litigation." *Fed. Election Comm'n v. Wisc. Right To Life, Inc.*, 551 U.S. 449, 469 (2007) (controlling plurality op. of Roberts, C.J.). Even when *some* discovery is permitted out of "an abundance of caution," that discovery must be "winnowed … to a minimal process" to avoid undue hardship to the plaintiff. *NetChoice, LLC v. Griffin*, 2024 WL 1262476, at \*3-\*4 (W.D. Ark. Mar. 24, 2024).

This case is an object lesson in why. The state has already taken more discovery at the preliminary-injunction stage of this case than any other state has in challenges to similar laws across the country—indeed, more discovery than some courts have found necessary to *permanently enjoin* enforcement of such laws. Florida deposed each of Plaintiffs' declarants twice, for a total of six hours per declarant, on an essentially unbounded list of topics. While some of those topics track the state's Rule 56(d) topics, many have no discernible connection to this case, much less those Rule 56(d) topics. *See, e.g.*, Dkt.34 at 11 ("Google's operation of an applications store, and its market power toward device manufacturers"); *id.* at 31 ("NetChoice's lobbying activities") Then, the same day that this Court entered a scheduling order contemplating summary judgment briefing "at the earliest appropriate time"—a time that it noted "rarely" falls after the completion of

discovery, Dkt.116 at 2—Florida subpoenaed Plaintiffs' members for 114 categories of documents that, like the state's deposition topics, range far beyond the categories of discovery Florida now claims to need. And just yesterday, Florida noticed eight additional third-party subpoenas (some to Plaintiffs' members, and some to non-members), seeking all manner of information that has nothing to do with the topics listed in its Rule 56(d) affidavit, or any of the relevant issues raised in Plaintiffs' summary judgment motion. *See* Ex.A at 2a-128a.

Whether propounded to throw sand in the gears or to punish Plaintiffs and their members for having the temerity to challenge HB3, that discovery is wholly unwarranted. First Amendment cases that, like this one, raise only questions of law are well-suited to summary judgment with no discovery; Florida has received more than enough already. *See Solantic v. City of Neptune Beach*, 410 F.3d 1250, 1274 (11th Cir. 2005). If the state wants to put off summary judgment and subject Plaintiffs to even more costly and time-consuming discovery, then it must "specifically demonstrate" how that discovery would yield facts "essential to justify its opposition." *Burns v. Town of Palm Beach*, 999 F.3d 1317, 1334 (11th Cir. 2021); Fed. R. Civ. P. 56(d). Florida cannot come close to doing that.

The state identifies seven categories of discovery that are purportedly "essential" to opposing summary judgment. In truth, none bears on the arguments that Plaintiffs have made in their motion for partial summary judgment. Whether

HB3 covers all social media or just a subset, or "bars" minors from social media or merely restricts their access, are not relevant to the First Amendment arguments Plaintiffs make in their summary judgment motion. Similarly, it is the mere existence of parental and supervision tools—not the effectiveness of any particular tool—that underscores HB3's lack of tailoring. Even if the existence or effectiveness of any particular tool were relevant to HB3's lack of tailoring, HB3 fails heightened scrutiny for many reasons apart from the existence or effectiveness of those tools, as this Court explained in its preliminary injunction decision. Whether allowing minors to hold accounts makes it easier to "target" them, and whether social media "addiction" is a bona fide societal problem, are likewise questions on which Plaintiffs' summary judgment motion does not turn. Even if one assumes that Florida is right about those questions, HB3 remains unconstitutional— again, for reasons explained by the Court in its preliminary injunction decision. And the discovery Florida claims to need on standing, burdens on adult access, and irreparable harm goes to questions that have already been asked and answered. Indeed, it takes remarkable chutzpah for the state to suggest that Plaintiffs lack Article III standing when it has already sued one of their members under HB3 and has threatened (on the record, in this courtroom) to sue another.

The Court should deny the state's motion and proceed with briefing on Plaintiffs' summary judgment motion. There is no need to stay summary judgment

briefing until after discovery ends. And having successfully resisted Plaintiffs' request to stay proceedings in this Court pending the Eleventh Circuit's decision on the state's appeal of the preliminary injunction order, *see* Dkt.112, the state cannot now request a stay of summary judgment briefing pending proceedings in the Eleventh Circuit.

## BACKGROUND

Florida has already sought and received substantial discovery to resist Plaintiffs' two motions for a preliminary injunction. In response to Plaintiffs' initial preliminary injunction motion, the state sought to depose Plaintiffs' declarants on a wide-ranging list comprising 110 topics. Dkt.34 at 4-45. Over Plaintiffs' objections, this Court permitted that expansive discovery—including five hours of depositions per declarant. Dkt.35 at 3. The Court gave Florida "great latitude to explore" the topics "listed in [the parties'] amended joint report," *id.*, including some topics that overlap with the state's Rule 56(d) motion topics—like "[h]ow HB3 affects minors' access to members' platforms"; "[h]ow HB3 affects adult access to members' platforms"; "Florida's interest in regulating minor accounts on the platforms"; "[w]hether HB3 is sufficiently tailored"; and "the status quo for the members and users," Dkt.34 at 4-7—and others that are far afield of those Rule 56(d) topics, like Google's "market power toward device manufacturers," *id.* at 11; the "use of Snapchat by bad actors," *id.* at 25; and "NetChoice's lobbying activities," *id.* at 31.

4

After the Court dismissed for lack of standing and after Plaintiffs renewed their preliminary-injunction motion pursuant to their amended complaint, Florida sought and received another hour of depositions per declarant, Dkt.81, for a grand total of six hours per declarant (just one hour less than Fed. R. Civ. P. 30(d)(1)'s default for merits discovery).

On August 12, 2025, the parties filed an amended Rule 26(f) report of their July 31, 2025 conference. Dkt.115. Unsurprisingly, the parties disagreed on the need for further discovery. Defendants argued that discovery was needed on at least 11 topics (roughly tracking the topics now listed in the state's Rule 56(d) declaration). *See id.* at 4-5. Plaintiffs, for their part, explained that no discovery was necessary and that "Plaintiffs plan to file a summary judgment motion in short order based on facts that are widely known and not open to reasonable dispute." *Id.* at 3. The following day (August 13), this Court entered a scheduling order directing that "[t]he deadline for filing summary-judgment motions is 21 days after the discovery deadline, May 11, 2026, but the motions should be filed at the earliest appropriate time." Dkt.116 at 2 (emphasis omitted). The Court further noted that "[i]t is rarely necessary that such motions await the completion of all discovery." *Id.* (emphasis omitted).

That same day, Florida served third-party subpoenas on Plaintiffs' members Google, Snap, and Meta. Dkt.123-2. Those subpoenas contain 114 requests for

production spanning topics far broader and more varied than the 11 topics listed in the state's Rule 26(f) submission (not to mention the seven topics Florida lists in its Rule 56(d) declaration)—from whether using social media causes "depression, anxiety, body image issues (eating disorders)," *id.* at PDF.15, to the use of "machine learning and artificial intelligence to moderate, arrange, or curate content," *id.* at PDF.17.

As previewed weeks earlier during the July 31 Rule 26(f) conference (and in the parties' joint amended report of that conference), Plaintiffs moved for partial summary judgment on their First Amendment claim on September 2, 2025. Plaintiffs explained that "'First Amendment questions' of a 'purely legal' nature"— like those presented here—"can be resolved on the merits without discovery." Dkt.122 at 14 (quoting *Solantic*, 410 F.3d at 1274). Florida responded by filing a motion to stay summary judgment briefing ("Motion") and a declaration ("Declaration") under Rule 56(d). Dkts.123,123-1.

Then, just yesterday, Florida issued eight additional third-party subpoenas to Bluesky, ByteDance, Reddit, Roblox, X Corp., and several TikTok entities. *See* Ex.A at 2a-128a. These subpoenas demand documents across a wide range of categories, many of which (like Florida's subpoenas to Plaintiffs' members) are wholly unmoored from the topics the state cites in its Rule 56(d) motion and declaration. *Y*at 72a ("Documents showing the demographics and statistics of usage

of Your social media platforms that you share with advertisers seeking to advertise on Your social media platforms").

## LEGAL STANDARD

A party may move for summary judgment "at any time," Fed. R. Civ. P. 56(b), including "without the parties having conducted discovery." *Edgewater House Condo. Ass'n v. City of Fort Lauderdale*, 825 F.App'x 658, 664 (11th Cir. 2020) (quoting *Reflectone, Inc. v. Farrand Optical Co.*, 862 F.2d 841, 844 (11th Cir. 1989) (per curiam). While Rule 56(d) provides a mechanism for the opposing party to try to seek discovery before a summary-judgment motion is resolved, to obtain discovery the opposing party "must specifically demonstrate how postponement of a ruling on the motion will enable him, by discovery or other means, to rebut the movant's showing of the absence of a genuine issue of fact." *Burns*, 999 F.3d at 1334; *see* Fed. R. Civ. P. 56(d) (permitting discovery only "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition"). "Failure to satisfy this burden is fatal to an argument that the district court granted summary judgment prematurely by failing to order or await the results of further discovery." *City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1286 (11th Cir. 2019).

**ARGUMENT**

I.    **Florida Has Not Demonstrated Why It Needs Discovery On Whether HB3 Applies To All Social Media Websites Or Bars Children From Accessing Social Media.**

A party seeking to delay summary judgment must show how the sought-after "facts would create a genuine issue of *material* fact." *Burns*, 999 F.3d at 1334 (emphasis added). Florida's plea for discovery on "whether HB3 applies to all commonly understood social-media platforms" and "whether HB3 has the effect of barring kids from accessing social media" flunks that standard.

1. Florida argues that it needs discovery into whether HB3 covers all "commonly understood social-media platforms." Dec.2; *see* Mot.3. But Plaintiffs' summary judgment arguments do not turn on whether HB3 covers all "commonly understood social-media platforms." As Plaintiffs have argued, and this Court appreciated in its preliminary injunction opinion, HB3 flunks heightened First Amendment scrutiny regardless of which particular services it covers. Dkt.122 at 24-30. Indeed, HB3's definition of "social media platform" makes clear that HB3 covers *only* websites that facilitate users' ability to engage in protected expression, thereby implicating the First Amendment in *all* of its applications. Dkt.122 at 16; Dkt.94 at 26-27; Fla. Stat. §501.1736(1)(e) (covering only websites that "[a]llow[] users to upload content or view the content or activit[ies] of other users").

Even assuming that HB3 covers only the most popular "social media" websites like Instagram, Snapchat, Facebook, and YouTube, HB3 would still restrict, "with one broad stroke," access to a wealth of protected speech. *Packingham v. North Carolina*, 582 U.S. 98, 107 (2017); *see* Dkt.94 at 42-43; Dkt.122 at 24-30. And it would still fail narrow tailoring because it (1) applies to covered websites "under any circumstances, even if … the site only sends push notifications if users opt in … or the site does not auto-play video for account holders who are known to be youth," Dkt.94 at 47; (2) sweeps in websites regardless of whether minors "are 'addicted' or because they simply wish[] to engage with speech for more than two hours per day," *id.* at 48, and (3) does all of this as a "prophylaxis-upon-prophylaxis" on HB3's separate requirement that services terminate minors' accounts at their parents' behest (a requirement that Plaintiffs do not challenge under the First Amendment and that Florida has not shown inadequate, *FEC v. Cruz*, 596 U.S. 289, 306 (2022)); *see also* Dkt.122 at 24-30. In short, Florida cannot show that discovery into whether HB3 covers all "commonly understood social-media platforms" (whatever that means) might turn up information that would address a genuine issue of material fact.

2. There is no need, either, for discovery into "whether HB3 has the effect of barring kids from accessing social media." Dec.2. It is unsurprising that Florida barely defends this category of discovery in its supporting brief, because it is

blackletter law that "burden[s]" on protected speech trigger First Amendment scrutiny just as much as "bans." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 565-66 (2011); *see also Free Speech Coal., Inc. v. Paxton* (*FSC*), 145 S.Ct. 2291, 2309 (2025). It therefore matters not that HB3 restricts "the creation of accounts used to access speech," Dkt.94 at 31, rather than "access[ing] social media" outright. *See id.* at 46-47. While Florida has argued that users can still engage in *some* activity on *some* websites without an account, it has never disputed that many forms of interaction on "social media" can happen *only* with an account. *See id.* at 46. After all, people do not just use "social media" to browse content anonymously. They use it to engage in *social* interaction possible only with an account—e.g., commenting on a friend's Instagram post or sending videos to classmates on Snapchat. And there is no dispute that HB3 restricts minors' ability to do so. In short, neither the scope of HB3's coverage nor the severity of its restrictions on minor children's First Amendment rights furnishes any sound reason to defer summary judgment. That Florida would seek burdensome discovery on even these basic questions underscores why First Amendment cases must be decided with "minimal if any discovery" at the summary-judgment stage. *Wisc. Right To Life*, 551 U.S. at 469.

## II. Florida Has Not Explained Why It Needs Discovery On Existing Parental Controls.

Florida argues that it needs discovery into "[w]hether parental and supervision tools are an effective, less-restrictive alternative to HB3" and "whether a public

campaign promoting the tools would be effective." Dec.2-3. This argument fails for several reasons. First, as a threshold matter, whether parental and supervision tools are "an effective, less-restrictive alternative" is a legal question. *See FF Cosms. FL, Inc. v. City of Miami Beach*, 866 F.3d 1290, 1297 (11th Cir. 2017). Florida has not even identified a "general categor[y]" of fact discovery that it needs to respond to Plaintiffs' motion, much less the "specific facts" that it must show "discovery would reveal." *Burns*, 999 F.3d at 1334. Put differently, it does not suffice under Rule 56(d) to rephrase the narrow-tailoring standard as a discovery request.

Second, the existence of parental controls (whether effective and publicized or not) is not remotely necessary to hold that HB3 fails narrow tailoring. Either way, HB3 fails any form of heightened scrutiny. Dkt.122 at 24-30. HB3 still restricts access to a wide swath of speech "in one stroke"; it still applies "under any circumstances," even when so-called "addictive" features are opt-in only or disabled for youth; it still applies regardless of whether minors are "addicted" or just want to "engage with speech for more than two hours per day"; and it still operates as an unjustified double prophylaxis. While the tools that Plaintiffs' members and others provide help illustrate the menu of less restrictive alternatives that Florida has eschewed, HB3's unconstitutionality in no way turns on their existence, let alone their efficacy.

Third, in any event, it is not the precise mechanics of existing parental-control tools, but the undisputed availability of such tools generally, that condemns HB3 under heightened scrutiny. To be sure, the existence of parental controls underscores that the state has much more narrowly tailored means of addressing its asserted interests. *See Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 803 (2011); *cf. United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813-17 (2000). But even assuming those tools were deficient, or were underutilized, the state would still have at its disposal the far more narrowly tailored approach of exploring how to improve the utilization and efficacy of such tools, rather than going straight to the draconian means of restricting access to all protected speech on covered services. Nothing about the "effectiveness" of "the companies' 'parental control and supervision tools'" or of a "public campaign promoting" those tools (Dec.2-3) could create a genuine issue of material fact.

## III. Florida Has Not Explained Why It Needs Discovery On Purported "Targeting" Of Children Or On Whether Social Media "Addiction" Is A Social Problem.

Florida argues that it is entitled to discovery on whether account-holding makes it easier to "target" children with so-called "addictive" features, and on whether the notion of social-media "addiction" is a real problem in the first place. There is no basis for that discovery: Plaintiffs have not staked any argument for

summary judgment on these propositions, and Florida cannot show that establishing either of them would defeat summary judgment.

1. The state argues that it needs discovery to determine whether "'becoming an account holder makes it … easier for a platform to 'target' a youth with 'addictive features.'" Mot.2 (quoting Dkt.94 at 46 n.28). Florida does not explain why the answer to that question could preclude summary judgment. *Contra Burns*, 999 F.3d at 1334 (requiring that explanation). Florida instead seems to think that it should be able to delay summary judgment and subject Plaintiffs' members to burdensome discovery simply because the Court noted its failure to show that restricting minors' access to accounts would make it more difficult to so "target" youth. *See* Dkt.94 at 46 n.28. But, once again, none of the arguments that Plaintiffs make in their summary judgment motion turns on that premise. Dkt.122 at 24-30. Even if it were true that "becoming an account holder makes it any easier for a platform to 'target' a youth with 'addictive features'" (a proposition that just confirms that the state's concerns are really about content, not the features themselves), that would be no answer to the myriad other tailoring problems that plague HB3. *See supra* p.9. Florida gives no reason why discovery on this subject could preclude summary judgment.

2. Florida next claims that it needs discovery into whether "addiction to social media is only an 'alleged' problem." Dec.3. But Florida "may not simply rely on

vague assertions that additional discovery will produce needed, but unspecified facts." *Burns*, 999 F.3d at 1334. And while Plaintiffs certainly do not concede that the problem the state identifies is a genuine one, they have not argued in their summary judgment motion that HB3 fails heightened scrutiny because "addiction to social media is only an 'alleged' problem." Dkt.122 at 24-30. Plaintiffs instead make purely legal arguments that HB3 fails heightened scrutiny because the state's addiction concerns are not an interest "unrelated to the suppression of free speech," *FSC*, 145 S.Ct. at 2302; Dkt, 122 at 24-26, and because HB3 is not a narrowly tailored means of achieving the state's professed interest in preventing "addiction to social media." Dkt.122 at 26-30. Because nothing in Plaintiffs' motion for summary judgment turns on whether "addiction to social media is only an 'alleged' problem," Dec.3, Florida does not need discovery into that question to respond to Plaintiffs' motion.

## IV. Florida's Other Asserted Discovery Needs Are Meritless.

The state's remaining grounds for deferring consideration of Plaintiffs' motion for summary judgment are weaker still. Florida plainly has no need for discovery going to Article III standing; the state cannot dispute, after all, that at least one of Plaintiffs' members has standing. Nor can it seriously deny that adults must "surrender personal information" to verify their ages. And Florida has no need for

(or entitlement to) discovery into the irreparable harm that Plaintiffs' members face "twice over." Dkt.94 at 54.

1. Incredibly, Florida argues that it needs discovery on Plaintiffs' standing. That takes some audacity: After this Court dismissed the original complaint for lack of standing, Florida sought and received another round of depositions of Plaintiffs and their members, *sued* Snap under HB3 based on assertions in its revised declaration, and threatened (in this Court) to sue Meta too. Dkt.86-1; Dkt.82 at 9-13. Florida accordingly cannot seriously dispute that Snap and Meta face a credible threat of enforcement sufficient for Article III standing. *See, e.g.*, *Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1245 (11th Cir. 1998). The state just insists that it needs to test "Plaintiffs' 'somewhat vague' evidence that Google would have standing." Mot.3 (quoting Dkt.94 at 20).[1] It does not. "[U]nder the doctrine of associational standing only one of [an organizational plaintiff's] members needs to satisfy the case-or-controversy requirement." *Fla. Wildlife Fed'n, Inc. v. S. Fla. Water Mgmt. Dist.*, 647 F.3d 1296, 1302 n.4 (11th Cir. 2011). Florida's desire to probe Google's standing—in the midst of an enforcement action against another of Plaintiffs' members—is no reason to defer consideration of Plaintiffs' summary judgment motion.

---

[1] Florida could, of course, have probed Google's standing in its second deposition of Google's declarant.

2. Florida's purported need to probe whether age verification "forces adults to surrender personal information," Dec.3 (alteration omitted) (quoting Dkt.122 at 18), is puzzling. Of course it does. As the Supreme Court just explained, "submitting to age verification is a burden on the exercise" of the right to access the restricted information. *FSC*, 145 S.Ct. at 2309. It is a burden precisely because it requires an adult to submit personal information before she can access the protected speech. *See id.* at 2317 (discussing a Texas law that "allows for verification using government-issued identification or transactional data" either "on the covered website itself or through a third-party service"). Indeed, it is unclear how Florida thinks an adult could verify her identity *without* supplying any personal information. *See* Fla. Admin. Code r.2-43.002(3)(b) (no violation of HB3 if a social-media website "utilized a reasonable age verification method with respect to all who access the social media platform"). This category of discovery furnishes no ground to defer summary judgment—especially because HB3 would remain unconstitutional even without the burdens it imposes on adults' speech.

3. Finally, Florida claims that it needs discovery into "[w]hether HB3 irreparably harms internet platforms and children." Dec.3. There is no such need. For one, the state ignores that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Dkt.94 at 53 (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality op.)). Plaintiffs'

members and their users alike suffer that irreparable harm. *See* Dkt.94 at 24, 53-54. That alone is enough to justify permanent relief if Plaintiffs prevail on the merits. Indeed, the state points to no case in which a court has made a final determination that a law violates the First Amendment yet nevertheless refused to permanently enjoin its enforcement.

And there is, of course, more. If HB3 is not permanently enjoined, then Plaintiffs' members will face the choice of coming into compliance (with the attendant costs) or being sued. As Plaintiffs explained in their motion for a preliminary injunction, complying with HB3's burdensome requirements would require significant changes to existing services and impose significant costs that cannot be recouped at the conclusion of this lawsuit. Dkt.76 at 33 (citing declarations). And Snap has already incurred unrecoverable costs defending against Florida's enforcement action. Whether Plaintiffs' members incurred compliance costs during the very brief period when HB3 was in effect (from the Court's March 17, 2025 dismissal of the initial complaint until the Court's June 3, 2025 preliminary injunction) is entirely beside the point, as there can be no serious dispute that it would cost them *something* to comply, which is all that matters. (Florida, moreover, had every opportunity to ask about these harms, which were described in Plaintiffs' declarations, in deposition. *See, e.g.*, Dkt.76-4 at ¶¶48-50). Indeed, the only evident reason the state has for seeking discovery on members' compliance efforts to date is

to try to obtain evidence of noncompliance that it could use in an enforcement action if the law were not permanently enjoined.

Florida cites Justice Kavanaugh's brief concurrence in the denial of motion to vacate stay in *NetChoice, LLC v. Fitch*, 2025 WL 2350189 (U.S. Aug. 14, 2025), but that opinion is no help to the state. Mot.6-7. For one, Eleventh Circuit precedent is clear that once Plaintiffs have established a First Amendment violation, "the remaining requirements necessarily follow." *Honeyfund.com Inc. v. Governor*, 94 F.4th 1272, 1283 (11th Cir. 2024). What is more, Justice Kavanaugh opined only that the application there had not "sufficiently demonstrated that the balance of harms and equities favors [Supreme Court intervention] *at this time*." 2025 WL 2350189, at *1 (emphasis added). The opinion did not disentangle irreparable harm from the public interest or the balance of the equities.[2]

And to the extent it is possible to draw any conclusion on irreparable harm in isolation (and as applied to *permanent* relief), *Fitch* involved a distinct record with facts not present here. Mississippi argued there that its law had "for a year … been

---

[2] And in its haste to embrace the parts of the opinion that it likes, the state glosses over Justice Kavanaugh's conclusion that laws like HB3 are likely unconstitutional under Supreme Court precedent. *Fitch*, 2025 WL 2350189, at *1 (Kavanaugh, J., concurring) ("it is no surprise that the District Court in this case enjoined enforcement of the Mississippi law and that seven other Federal District Courts have likewise enjoined enforcement of similar state laws").

in full effect for most covered platforms—all those that are not NetChoice members." Opp. to App., *NetChoice, LLC v. Fitch*, 2025 WL 2243667, at \*39 (U.S. July 30, 2025). Mississippi had not even tried to enforce it against Plaintiffs' members. HB3, by contrast, was in effect for less than three months. And Florida has sued one member and threatened another. Moreover, Mississippi argued that the applicant did not seek equity with clean hands because it "urged the district court to defy the Fifth Circuit's mandate." *Id.* That charge is meritless, but in any event there is no similar accusation here. In short, Justice Kavanaugh's concurrence says nothing about Plaintiffs' irreparable harm here. That harm is well established under binding precedent, has been recognized by this Court, and does not require any additional discovery to substantiate.

\*     \*     \*

For all of these reasons, the Court should deny Florida's Rule 56(d) motion and order the state to respond to Plaintiffs' motion for partial summary judgment. If, however, the Court is inclined to grant Florida some further discovery into the categories listed in its Rule 56(d) declaration, the Court should follow the *Griffin* court's lead and limit that discovery to the specific topics that the Court finds relevant to rebutting Plaintiffs' summary-judgment arguments. *See Griffin*, 2024 WL 1262476, at \*3-5. At a minimum, the Court should clarify that Florida is not permitted to take discovery on the additional 100-plus topics listed in its third-party

19

subpoenas to Plaintiffs' members (topics that the state tellingly does not include in its Rule 56(d) submissions). While the Court could address some of those disputes on a motion to compel, that would be a waste of the parties' and the Court's time and resources—especially when the Court has before it Plaintiffs' motion for partial summary judgment, which lays out the precise First Amendment arguments Plaintiffs have made in support of summary judgment. Cases like this one "must entail minimal if any discovery, to allow parties to resolve disputes quickly without chilling speech through the threat of burdensome litigation." *Wisc. Right To Life*, 551 U.S. at 469. Especially now that it has held that HB3 is likely unconstitutional, this Court should not permit Florida to chill the exercise of First Amendment rights through protracted discovery disputes.

## CONCLUSION

The Court should deny Florida's motion.

Respectfully submitted,

Douglas L. Kilby
Florida Bar No. 0073407
Hannah E. Murphy
Florida Bar No. 1032759
STEARNS WEAVER MILLER
WEISSLER ALHADEFF & SITTERSON,
P.A.
Highpoint Center
106 East College Avenue, Suite 700
Tallahassee, FL 32301
(850) 580-7200
dkilby@stearnsweaver.com
hmurphy@stearnsweaver.com

s/ Erin E. Murphy
Paul D. Clement
Erin E. Murphy
James Y. Xi
Kevin Wynosky
Mitchell K. Pallaki
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com
erin.murphy@clementmurphy.com
james.xi@clementmurphy.com
kevin.wynosky@clementmurphy.com
mitchell.pallaki@clementmurphy.com

*Counsel for Plaintiffs CCIA and NetChoice*

September 12, 2025

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

This response in opposition to defendants' motion to dismiss Plaintiffs' amended complaint complies with Local Rule 7.1(F) because it has 4700 words.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was electronically served on all counsel of record via the CM/ECF system on this 12th day of September, 2025.

<u>s/ Erin E. Murphy</u>
Erin E. Murphy