# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA
## TALLAHASSEE DIVISION

COMPUTER & COMMUNICATIONS
INDUSTRY ASSOCIATION, et al.,

     *Plaintiffs*,

v.

JAMES UTHMEIER, in his official
capacity as Attorney General of the
State of Florida,

     *Defendant*.

Case No. 4:24-cv-00438-MW-MAF

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S
## <u>MOTION TO DISMISS IN PART</u>

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................... ii

INTRODUCTION ..................................................................................1

BACKGROUND ....................................................................................2

    A.   Factual Background ................................................................2

    B.   Procedural History ................................................................3

ARGUMENT ..........................................................................................5

    I.     Plaintiffs May Vindicate Their Members' Rights Under Section 1983......5

    II.    The Amended Complaint States A Void For Vagueness Claim................11

    III.   The Amended Complaint States A COPPA Preemption Claim. ..............12

    A.   Plaintiffs May Enforce COPPA's Express Preemption Provision in Equity. ................................................................12

    B.   COPPA Expressly Preempts HB3's Prohibition on Retaining Personal Information. ........................................................14

CONCLUSION ......................................................................................15

CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases**

*Aguayo v. Richardson*,
   473 F.2d 1090 (2d Cir. 1973) ...............................................................8

*Barrows v. Jackson*,
   346 U.S. 249 (1953)...........................................................................7

*Bonner v. City of Prichard*,
   661 F.2d 1206 (11th Cir. 1981) ...........................................................5

*Borrero v. United Healthcare of N.Y., Inc.*,
   610 F.3d 1296 (11th Cir. 2010) ........................................................5, 8

*Centro de la Comunidad Hispana de Locust Valley v.
   Town of Oyster Bay*, 868 F.3d 104 (2d Cir. 2017) ..............................8

*Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*,
   364 F.Supp.3d 253 (S.D.N.Y. 2019) ...................................................9

*Church of Scientology of Cal. v. Cazares*,
   638 F.2d 1272 (5th Cir. 1981) ....................................................... 5, 10

*Craig v. Boren*,
   429 U.S. 190 (1976)...........................................................................6

*Doe v. Stincer*,
   175 F.3d 879 (11th Cir. 1999) .............................................................5

*Ex Parte Young*,
   209 U.S. 123 (1908)...................................................................... 4, 13

*FAIC Sec., Inc. v. United States*,
   768 F.2d 352 (D.C. Cir. 1985)............................................................7

*Fla. Immigrant Coal. v. Att'y Gen.*,
   No. 25-11469, 2025 WL 1625385 (11th Cir. June 6, 2025) ........ 13, 14

*Greater Birmingham Ministries v. Sec'y of State*,
992 F.3d 1299 (11th Cir. 2021) ..............................................6

*Haitian Refugee Ctr. v. Gracey*,
809 F.2d 794 (D.C. Cir. 1987) ...........................................7, 8

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977)............................................ 4, 6, 8, 10

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016) ...................................... 14, 15

*Jacobson v. Sec'y of State*,
974 F.3d 1236 (11th Cir. 2020) ......................................10

*Johnson v. United States*,
576 U.S. 591 (2015)......................................................11

*Jones v. Google LLC*,
73 F.4th 636 (9th Cir. 2023) .................................... 14, 15

*Kalina v. Fletcher*,
522 U.S. 118 (1997)........................................................6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014)........................................................7

*Moms for Liberty - Brevard Cnty. v. Brevard Pub. Schs.*,
118 F.4th 1324 (11th Cir. 2024) ....................................6

*People Organized for Welfare & Emp. Rts. (P.O.W.E.R.) v. Thompson*,
727 F.2d 167 (7th Cir. 1984) ..........................................9

*Rehberg v. Paulk*,
566 U.S. 356 (2012)........................................................6

*S. Ill. Carpenters Welfare Fund v. Carpenters Welfare Fund of Ill.*,
326 F.3d 919 (7th Cir. 2003) ..........................................7

*Sessions v. Dimaya*,
    584 U.S. 148 (2018)............................................................11

*Shaw v. Garrison*,
    545 F.2d 980 (5th Cir. 1977) ...........................................9

*United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*,
    517 U.S. 544 (1996).........................................................7

*Virginia v. Am. Booksellers Ass'n*,
    484 U.S. 383 (1988).........................................................6

*Vote.org v. Byrd*,
    700 F.Supp.3d 1047 (N.D. Fla. 2023) ..............................9

*Vote.org v. Callanen*,
    39 F.4th 297 (5th Cir. 2022) .............................................9

*Vote.org v. Callanen*,
    89 F.4th 459 (5th Cir. 2023) ......................................6, 10

*Warth v. Seldin*,
    422 U.S. 490 (1975).............................................1, 6, 8, 10

*Wollschlaeger v. Governor*,
    848 F.3d 1293 (11th Cir. 2017) ......................................12

**Statutes**

15 U.S.C. §6502 *et seq.*.......................................................3

15 U.S.C. §6502(d) ......................................................14, 15

29 U.S.C. §1132(a)(1)...........................................................8

Fla. Stat. §501.1736(1)(e) ....................................................2

Fla. Stat. §501.1736(2)(a) ...................................................3

Fla. Stat. §501.1736(2)(b) ...........................................................14

Fla. Stat. §501.1736(3)(a) ...........................................................3

Fla. Stat. §501.1736(3)(b) ...................................................... 3, 14

Fla. Stat. §501.1736(4)(b) ...........................................................14

**Regulation**

16 C.F.R. §312.5(a) ...................................................................14

**Other Authorities**

Order Denying Motions to Dismiss and to Compel Discovery,
*NetChoice, LLC v. Uthmeier*, No. 4:21-cv-00220 (May 22, 2025),
Dkt.209 ....................................................................................11

Order Granting in Part and Denying in Part Motion to Dismiss,
*United Fac. of Fla. v. Lamb*, No. 1:24-cv-00136 (N.D. Fla. Apr. 11,
2025), Dkt. 39 ..................................................................... 12, 13

## INTRODUCTION

Florida's partial motion to dismiss should be denied. Florida renews its argument that CCIA and NetChoice lack a cause of action under §1983 to sue on behalf of their members. But that is just another thinly veiled attack on long-settled associational standing principles that courts have repeatedly rejected. As this Court explained, "associations are often better positioned" than individual plaintiffs to litigate industry-wide constitutional and statutory issues like those raised in this case. Dkt.94 at 23. Indeed, one of the Supreme Court's seminal associational standing cases arose under §1983. *See Warth v. Seldin*, 422 U.S. 490 (1975). And both the Supreme Court and the Eleventh Circuit have permitted associations to assert their members' rights under §1983 in innumerable cases since. Florida's renewed plea for dismissal brushes that pedigree aside; according to the state, every single one of those courts overlooked that §1983 implicitly precludes associations from asserting the rights of their members. That is wrong.

Florida's other arguments for dismissal fare no better. The state argues that Plaintiffs have not alleged that HB3 is impermissibly vague in ***all*** applications. But Supreme Court precedent does not require any such allegation, and Florida still offers nothing more than its say-so that HB3 is supposedly clear "in context." As for preemption, Florida argues that the Children's Online Privacy Protection Act ("COPPA") does not create a right of action enforceable in equity. But, as this Court

has held, no such right is required. And Florida's argument on the merits of COPPA preemption ignores that HB3 proscribes what COPPA permits; the cases Florida cites, by contrast, involve state laws that either track COPPA's prohibitions or punish conduct that COPPA does not address.

For all these reasons, the state's motion should be denied.

## BACKGROUND

### A. Factual Background

Plaintiffs CCIA and NetChoice are Internet trade associations whose members operate many online services, including Facebook, Instagram, YouTube, and Snapchat. Dkt. 74 ("Compl.")¶¶7-8. In March 2024, Florida enacted HB3 to restrict minors' access to "social media platforms." HB3 defines a "social media platform" as an online service that "[a]llows users to upload content or view the content or activit[ies] of other users." Fla. Stat. §501.1736(1)(e). A website qualifies as a "social media platform" if "[t]en percent or more of the daily active users who are younger than 16 years of age spend on average 2 hours per day or longer" on the service "on the days when using" the service, and only if it "[e]mploys algorithms that analyze user data or information on users to select content for users" and has one or more "addictive features." *Id.* HB3's list of so-called "addictive features" covers "[i]nfinite scrolling," "[p]ush notifications," "personal interactive metrics," "[a]uto-play" functions, and "[l]ive-streaming" functions. *Id.*

Section 1 of HB3 imposes restrictions based on the age of minor users. HB3 prohibits minors under the age of 14 from creating accounts on "social media platforms" and requires "social media platforms" to terminate existing accounts held by minors under 14. *Id.* §501.1736(2)(a). And HB3 prohibits 14- and 15-year-olds from creating accounts on "social media platforms" "unless the minor's parent or guardian provides consent for the minor to become an account holder," and requires "social media platforms" to terminate existing accounts held by 14- and 15-year-olds." *Id.* §§501.1736(3)(a), (3)(b)(1).

## B. Procedural History

Soon after Florida passed HB3, Plaintiffs filed this lawsuit. This Court dismissed Plaintiffs' initial complaint, with leave to replead, on March 17, 2025. Dkt.73. Plaintiffs filed their First Amended Complaint on March 28, 2025. Dkt.74. Count I alleges that HB3's provision prohibiting minors under 14 from creating accounts on "social media platforms," and its provision requiring 14- and 15-year-olds to obtain parental consent before doing so, violate the First Amendment. Compl.¶¶92-123. Count II alleges that Section 1 of HB3 is unconstitutional because its coverage definition is unconstitutionally vague. Compl.¶¶124-33. Count III alleges that COPPA, 15 U.S.C. §6502 *et seq*., preempts the provisions of HB3 that require covered websites to delete information related to terminated accounts. Compl.¶¶134-40. Count IV seeks equitable relief under *Ex Parte Young*, 209 U.S.

123 (1908).  Compl.¶¶141-44.  And Count V seeks a declaration that Section 1 of HB3 violates the Constitution on its face and as applied to Plaintiffs' members that operate "social media platforms."  Compl.¶¶145-48.

On June 3, 2025, this Court granted Plaintiffs' motion for a preliminary injunction, concluding that Plaintiffs are likely to prevail on the merits of their First Amendment claims and satisfy the other requirements for injunctive relief.  Dkt.94. As relevant here, the Court found the Plaintiffs established associational standing under *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977).  First, Plaintiffs provided evidence that "at least two of their members are likely covered by the law."  Dkt.94 at 17.  Second, Florida did not contest, and the Court held, that this suit is germane to Plaintiffs' organizational purposes.  *Id.* at 22.  Finally, the Court held that the issues raised by this suit "can all be answered without reference to the intricacies of each individual platform's operation."  *Id.* at 24.  Rejecting Florida's argument that deciding the merits would entail a fact-intensive inquiry requiring the participation of individual members as parties, the Court observed that Florida's "argument ignores that … the Supreme Court itself has recognized that associations are often better positioned to answer the kind of industry-wide factual questions that were implicated in *Moody* and could be implicated here."  *Id.* at 23. The Court concluded that Plaintiffs may assert the rights of its members and its members' users.  *Id.* at 22-25.

4

Florida now moves to dismiss the Complaint in part, arguing that (1) Plaintiffs may not assert their members' rights under §1983; (2) the Complaint fails to state a void-for-vagueness claim; and (3) COPPA neither permits affirmative preemption suits nor preempts HB3 on the merits.

## ARGUMENT

### I.    Plaintiffs May Vindicate Their Members' Rights Under Section 1983.

Plaintiffs may sue to vindicate their members' rights under §1983.  To begin, the state does not dispute that Plaintiffs' members have a cause of action under §1983.  And "[i]t has long been settled that an organization has standing to sue to redress injuries suffered by its members without a showing of injury to the association itself and without a statute explicitly permitting associational standing." *Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1305 (11th Cir. 2010) (quoting *Doe v. Stincer,* 175 F.3d 879, 882 (11th Cir. 1999)).

It should therefore come as little surprise that courts routinely permit associations to sue on behalf of their members in §1983 cases.  In *Church of Scientology of California v. Cazares*, for example, the Fifth Circuit reversed a denial of associational standing, holding that a church could sue under §1983 to vindicate its members' First Amendment rights.  638 F.2d 1272, 1276-80 (5th Cir. 1981).[1]

---

[1] *Church of Scientology*, decided on March 9, 1981, is binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

That result followed directly from *Warth*, a §1983 case explaining that "an association may have standing solely as the representative of its members," 422 U.S. at 511, and *Hunt*, which cited *Warth* in establishing the modern tripartite test for associational standing, 432 U.S. at 341-46. And the Supreme Court and the Eleventh Circuit have approved third-party standing in a raft of subsequent §1983 cases. *See, e.g.*, *Virginia v. Am. Booksellers Ass'n*, 484 U.S. 383, 392-93 (1988); *Craig v. Boren*, 429 U.S. 190, 195 (1976); *Moms for Liberty - Brevard Cnty. v. Brevard Pub. Schs.*, 118 F.4th 1324, 1330 (11th Cir. 2024); *Greater Birmingham Ministries v. Sec'y of State*, 992 F.3d 1299, 1316 (11th Cir. 2021); Dkt.62 at 21-22 (collecting cases). In short, it is well established that "Section 1983 is an appropriate vehicle for third-party claims." *Vote.org v. Callanen*, 89 F.4th 459, 473 (5th Cir. 2023).

Confronted with this mountain of authority, Florida protests that none of these cases addressed whether §1983's plain text "give[s] trade associations a derivative action to assert the rights of others who have been deprived of their rights." Dkt. 117 ("Mot.") at 4. But "Congress intended [§1983] to be construed in the light of common-law principles." *Rehberg v. Paulk*, 566 U.S. 356, 362-63 (2012) (quoting *Kalina v. Fletcher,* 522 U.S. 118, 123 (1997)). And associational standing "rests on the premise that in certain circumstances, particular relationships (recognized either by common-law tradition or by statute) are sufficient to rebut the background presumption (in the statutory context, about Congress's intent) that litigants may not

assert the rights of absent third parties." *United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc.*, 517 U.S. 544, 557 (1996); *see Barrows v. Jackson*, 346 U.S. 249, 257 (1953) (collecting cases, from 1872 on, that declined to "deny[] standing to raise another's rights"). So while "Congress can withdraw the right to sue," courts do not presume that it has vitiated associational standing merely because it declines to expressly recognize it when specifying who may invoke a cause of action. *S. Ill. Carpenters Welfare Fund v. Carpenters Welfare Fund of Ill.*, 326 F.3d 919, 922 (7th Cir. 2003) ("we do not think that by confining the right to sue under section 1132(a)(1) to plan participants and beneficiaries Congress intended to prevent unions from suing on behalf of participants").

Whether a cause of action exists—and what class of plaintiffs it covers—is thus an entirely separate question from whether an association may vindicate that right on behalf of its members. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127 n.3 (2014) (noting that "[t]his case does not present any issue of third-party standing"); *Haitian Refugee Ctr. v. Gracey*, 809 F.2d 794, 812 n.15 (D.C. Cir. 1987). That is likely why there is no "case in which the Supreme Court has relied upon the plaintiff's failure independently to meet the zone of interests test [for statutory standing] as the basis for its refusal to accord standing for the assertion of third-party rights." *FAIC Sec., Inc. v. United States*, 768 F.2d 352, 358 (D.C. Cir. 1985) (Scalia, J.). "If the litigant asserts only the rights of third parties, then he may

satisfy the zone of interests requirement by reference to the third parties' interests if the court determines both that the litigant has third party standing and that the third parties' interests fall within the relevant zone of interests." *Haitian Refugee Ctr*., 809 F.2d at 811-12. Plaintiffs here check both boxes. *See* Dkt.70 at 21-24 (holding that Plaintiffs satisfy *Hunt* test for third-party standing).

Florida's reading of §1983 is also impossible to reconcile with Eleventh Circuit precedent interpreting other statutes. Consider, for example, ERISA, which creates a cause of action that may be raised "by a participant or beneficiary." 29 U.S.C. §1132(a)(1). The Eleventh Circuit had no trouble concluding that associations could raise such claims on behalf of their members. *Borrero*, 610 F.3d at 1305-06. Other courts of appeals agree. *Id.* at 1305 (collecting cases).

Florida's authorities do not persuade otherwise. *See* Mot.4-5. Only one of them, *Aguayo v. Richardson*, 473 F.2d 1090 (2d Cir. 1973), actually holds that associations may not bring §1983 claims on behalf of their members. *See id.* at 1099. But, as Judge Jacobs has since persuasively explained, *Aguayo* was questionable when it was decided and is completely untenable after the Supreme Court's later decisions in *Warth* and *Hunt*. *See Centro de la Comunidad Hispana de Locust Valley v. Town of Oyster Bay*, 868 F.3d 104, 122 (2d Cir. 2017) (Jacobs, J., dissenting). To be sure, the Second Circuit "has adhered to *Aguayo* without ever expressly considering the impact of *Warth* or *Hunt*." *Id*. at 123. But "[t]his limitation on

associational standing appears to be unique to the Second Circuit," *Christa McAuliffe Intermediate Sch. PTO, Inc. v. de Blasio*, 364 F.Supp.3d 253, 272 n.17 (S.D.N.Y. 2019), and the state identifies no reason why this Court should embrace that outlier approach.

Florida's other cases are even less persuasive. *Shaw v. Garrison*, 545 F.2d 980 (5th Cir. 1977), and *People Organized for Welfare & Emp. Rts. (P.O.W.E.R.) v. Thompson*, 727 F.2d 167 (7th Cir. 1984), contain a sum total of four sentences of *dicta* questioning whether associations may bring §1983 claims on behalf of their members. *Shaw*, 545 F.2d at 983 n.4; *P.O.W.E.R.*, 727 F.2d at 170. That sentiment was *dictum* in *Shaw* because the case was "instituted by a plaintiff on his own behalf before his death, seeking damages to redress a violation of his civil rights." 545 F.2d at 983. And it was *dictum* in *P.O.W.E.R.* because the association there failed to plead deprivation of its members' rights. 727 F.2d at 170. As for *Vote.org v. Byrd*, the court alluded to the "argument that §1983 gave the organizational plaintiffs no right to sue on behalf of voters," but it focused largely on statutory standing under the Voting Rights Act before resolving the case based on "more straightforward" merits issues. 700 F.Supp.3d 1047, 1052-53 (N.D. Fla. 2023). Finally, Florida cites *Vote.org v. Callanen*, 39 F.4th 297 (5th Cir. 2022), which made a preliminary determination, for purposes of a stay pending appeal, that an association likely could not assert its members' §1983 rights. *Id.* at 304-05. (Along the way, the court

dubiously marginalized its *Church of Scientology* precedent, which held that associations may assert their members' rights under §1983, as lacking "substantive discussion," *id.* at 305 n.4.) But the Fifth Circuit corrected course on the merits, rightly concluding that "Section 1983 plaintiffs … often have been allowed to vindicate the rights of others" and that §1983 is "an appropriate vehicle for third-party claims." *Vote.org*, 89 F.4th at 473.[2]

\* \* \*

To sum up: Modern associational standing doctrine *started* in a §1983 case, and courts have permitted associational standing in countless §1983 cases since then. That settled approach is well-supported by the text of §1983, which is presumed to incorporate traditional, common-law principles. And both precedent and logic confirm that whether a third party has statutory standing is a different inquiry from whether an association has standing to vindicate that party's rights. The authority Florida marshals to the contrary—a lone outlier decided before *Warth* and *Hunt*, a few passages of breezy *dicta*, and a preliminary decision expressly reversed by the same court—is unpersuasive.

---

[2] Apart from the *Vote.org* merits panel's reversal of the motion panel's preliminary determination, and as this Court appreciated when the state previously raised this same authority in its motion to dismiss the initial complaint, *see* Dkt.71 at 18-19, the Eleventh Circuit has directly questioned the precedential authority of motions panel decisions. *See Jacobson v. Sec'y of State*, 974 F.3d 1236, 1256 (11th Cir. 2020).

## II.  The Amended Complaint States A Void For Vagueness Claim.

Florida argues next that the Amended Complaint fails to state a vagueness claim, either because HB3 is not impermissibly vague in all applications or because the broad, undefined terms HB3 incorporates are clear enough in context.  Neither argument has merit.  First, a complaint need not plead that a statute is impermissibly vague in *all applications* to state a void-for-vagueness claim.  *See Sessions v. Dimaya*, 584 U.S. 148, 157 (2018); *Johnson v. United States*, 576 U.S. 591, 603 (2015).  Indeed, Florida made the same argument to Judge Hinkle in another case brought by Plaintiffs, and Judge Hinkle squarely rejected it.  *See* Order Denying Motions to Dismiss and to Compel Discovery at 37, *NetChoice, LLC v. Uthmeier*, No. 4:21-cv-00220 (May 22, 2025), Dkt.209.  As he explained, "[t]he Supreme Court has explicitly rejected" the vague-in-all-applications formulation.  *Id.* *Johnson* teaches that this formulation "is not a requirement at all, but a tautology:  If [a court] hold[s] a statute to be vague, it is vague in all its applications." *Johnson*, 576 U.S. at 603; Order at 37, *NetChoice*, No. 4:21-cv-00220, *supra*.

Second, Florida offers only *ipse dixit* for its contention that key terms like "upload content," "algorithms," and "push notifications" are made clear by the "statutory context."  Mot.8.  That an algorithm—here, a computer program—must "analyze user data or information on users to select content for users" to qualify hardly clarifies that impossibly broad term.  What kind of user data, and what kind

11

of content?  The same problems plague the term "upload content"—which could

sweep in data entry ranging from credit-card information to the favorite sports teams

a user might select from a suite of options—and "push notifications," which might

include routine alerts like scores from those teams' games or notices to update the

app's software version.  "[S]tandards of permissible statutory vagueness are strict in

the area of free expression," *Wollschlaeger v. Governor*, 848 F.3d 1293, 1320 (11th

Cir. 2017) (quoting *NAACP v. Button*, 371 U.S. 415, 432 (1963)), and HB3 does not

satisfy them.

### III.  The Amended Complaint States A COPPA Preemption Claim.

Finally, Florida argues that Plaintiffs fail to state a claim for COPPA

preemption because they lack a cause of action and because COPPA does not

expressly preempt HB3.  Mot.9-13.  Wrong on both counts:  COPPA does not

foreclose a preemption suit in equity, and HB3 forbids what COPPA permits.

### A.  Plaintiffs May Enforce COPPA's Express Preemption Provision in Equity.

Florida argues that Plaintiffs lack a cause of action to enforce COPPA's

express preemption provision under §1983.  Mot.9-10.  But Florida ignores that

Plaintiffs may enforce a preemption provision under *Ex Parte Young*—as this Court

has elsewhere held.  *See* Order Granting in Part and Denying in Part Motion to

Dismiss at 23-26, *United Fac. of Fla. v. Lamb*, No. 1:24-cv-00136 (N.D. Fla. Apr.

11, 2025) (Walker, J.), Dkt. 39.

The state acknowledges this Court's holding that a preemption claim in equity does not require an affirmative grant of a cause of action. But it argues that COPPA forecloses such equitable actions because it grants enforcement authority to the FTC and state attorneys general. Mot.10-11. The state is confused. While it is true that a "statute's 'express provision of one method of enforcing a substantive rule,' [ ] 'suggests that Congress intended to preclude others,'" Order at 26, *United Fac.*, No. 1:24-cv-00136, *supra* (quoting *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 328 (2015)), Plaintiffs are not attempting to enforce any substantive rule that COPPA entrusts to government enforcers. Instead, Plaintiffs assert preemption occasioned by the statute.

The Eleventh Circuit rejected an argument much like Florida's in *Florida Immigrant Coalition v. Attorney General*, No. 25-11469, 2025 WL 1625385 (11th Cir. June 6, 2025). There, as here, plaintiffs sued under *Ex Parte Young* to enjoin a state statute as preempted by federal law. *Id.* at *3. And there, as here, the federal statute provided for enforcement by the government: "the Immigration and Nationality Act is enforced by the Secretary of Homeland Security." *Id.* But there, as here, the plaintiffs were not trying to enforce any substantive rule that the statute assigned to government enforcers. "[T]he plaintiffs [did] not seek to enforce immigration laws; instead, they argue[d] that, by way of the Supremacy Clause *and* the Immigration and Nationality Act, SB 4-C is unconstitutional." *Id.* Plaintiffs

could do so because Congress had not "established any 'one' method for enforcing federal preemption occasioned by the Immigration and Nationality Act." *Id.*

This case is on all fours: Plaintiffs seek not to enforce COPPA's substantive rules (which, as Florida notes, "*regulate*[ ] them," Mot.10), but rather to assert preemption "occasioned by" the statute. And COPPA does not provide for any "one method" of enforcing that preemption. Plaintiffs may therefore proceed in equity.

**B. COPPA Expressly Preempts HB3's Prohibition on Retaining Personal Information.**

COPPA expressly prohibits any state from "impos[ing] any liability for commercial activities or actions by operators in interstate or foreign commerce in connection with an activity or action described in [COPPA] that is inconsistent with the treatment of those activities or actions under" §6502 and the FTC regulations promulgated under it. 15 U.S.C. §6502(d). And COPPA permits website operators to retain "personal information from children" if they first "obtain verifiable parental consent." 16 C.F.R. §312.5(a). But HB3 proscribes that same data retention. By imposing liability for retaining "personal information held by the social media platform relating to the terminated account," Fla. Stat. §501.1736(2)(b)(4), (3)(b)(4), (4)(b)(4), HB3 squarely conflicts with COPPA's statutory and regulatory "treatment of those [same] activities," 15 U.S.C. §6502(d).

Florida invokes *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262 (3d Cir. 2016), and *Jones v. Google LLC*, 73 F.4th 636 (9th Cir. 2023), to argue that

14

HB3's "treatment" of this data retention is not inconsistent with, but merely "supplements," COPPA and its implementing regulations. But those cases are inapposite. Mot.12-13. *Nickelodeon* involved conduct far beyond the data collection and retention permitted by COPPA: The defendant allegedly committed the state-law tort of intrusion on seclusion by "creat[ing] an expectation of privacy on its websites and then obtain[ing] the plaintiffs' personal information under false pretenses." *Nickelodeon*, 827 F.3d at 292. Nothing in COPPA or its regulations blessed that conduct. And in *Jones*, the court assessed whether "COPPA preempts state law claims based on underlying conduct that also violates COPPA's regulations." 73 F.4th at 641. The court held that state laws that "supplement, or require the same thing" as, COPPA are not preempted. *Id.* at 642 (quotation marks omitted). HB3, again, is not such a law; it proscribes conduct that COPPA allows. That is a quintessential example of "impos[ing] … liability for commercial activities … that is inconsistent with the treatment of those activities" under COPPA and its implementing regulations. 15 U.S.C. §6502(d).

## CONCLUSION

The Court should deny Florida's motion.

Respectfully submitted,

Douglas L. Kilby
Florida Bar No. 0073407
Hannah E. Murphy
Florida Bar No. 1032759
STEARNS WEAVER MILLER
WEISSLER ALHADEFF & SITTERSON,
P.A.
Highpoint Center
106 East College Avenue, Suite 700
Tallahassee, FL 32301
(850) 580-7200
dkilby@stearnsweaver.com
hmurphy@stearnsweaver.com

s/Erin E. Murphy
Paul D. Clement
Erin E. Murphy
James Y. Xi
Kevin Wynosky
Mitchell K. Pallaki
CLEMENT & MURPHY, PLLC
706 Duke Street
Alexandria, VA 22314
(202) 742-8900
paul.clement@clementmurphy.com
erin.murphy@clementmurphy.com
james.xi@clementmurphy.com
kevin.wynosky@clementmurphy.com
mitchell.pallaki@clementmurphy.com

*Counsel for Plaintiffs NetChoice and CCIA*

September 18, 2025

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

This response in opposition to defendants' motion to dismiss Plaintiffs' amended complaint complies with Local Rule 7.1(F) because it has 3,566 words.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing document was electronically served on all counsel of record via the CM/ECF system on this 18th day of September, 2025.

s/Erin E. Murphy

Erin E. Murphy
